IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 5 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ELENA TORRUCO REYES, On Behalf of HORACIO DIAZ TORRUCO | § § § | |
| and | § § | |
| OLIVER HERRERA GOMEZ, Individually *Plaintiffs*, | § § § | |
| vs. | § § | CIVIL ACTION NO.: 04-CV-43 JURY |
| FORD MOTOR COMPANY *Defendant*. | § § § | |

---

## FORD MOTOR COMPANY'S BRIEF IN SUPPORT OF ITS PREVIOUSLY FILED MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

---

Ford Motor Company ("Ford"), respectfully moves to dismiss this action based on the doctrine of *forum non conveniens*. Ford filed its Motion to Dismiss under the doctrine of *forum non conveniens* as part of defendant's state court answer on February 13, 2004. Ford now files this brief in support of the previously filed motion. Ford also files, contemporaneously with this brief, a choice-of-law motion and brief for the application of Mexican law. Ford's choice-of-law briefing is incorporated herein by reference.

The plaintiffs are residents and citizens of Mexico. They are seeking damages as a result of a vehicle accident near the town of Perote in the Mexican State of Puebla. Their efforts to utilize the resources of this Court, sitting in the Southern District of Texas, Brownsville Division, to resolve their claims are contrary to established principles of law. Dismissal is the appropriate remedy.

## I.  **INTRODUCTION**

The present case involves a single vehicle accident that occurred in Mexico on January 24, 2002. This case has no connection to Texas. *See* Plaintiffs' Original Petition. Plaintiffs admit that they are residents of Mexico. *See id.* at page 1. The accident was investigated by Mexican authorities. *See* Accident Report attached hereto as **Exhibit "1"**. The product that allegedly failed has no connection to Texas. *See* Declaration of Roger Chen, attached hereto as **Exhibit "2"**. (The 1994 Ford Explorer involved in the accident was not designed or manufactured in Texas.)

It simply makes no sense for this case to remain in Texas. What is more, permitting this case to remain in Texas raises serious public policy concerns. First, Texas has no interest in litigating disputes arising in a foreign country, involving foreign plaintiffs and products with no connection to the forum state. Second, all of the fact witnesses to the events surrounding this accident reside in Mexico, and are beyond the compulsory powers of this Court. Third, every potential third-party defendant or otherwise responsible third party are similarly beyond the compulsory power of this Court. Fourth, allowing foreign plaintiffs with foreign matters to avail themselves of American courts will invite forum shopping with a vengeance, further clog U.S. courts, and force those courts and jurors to expend valuable resources for a case from which there is no personal or legal connection to plaintiffs' chosen forum.

The Fifth Circuit agrees. Recently, that Court dismissed a similar case involving foreign plaintiffs and foreign matters. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003) (affirming the district court's decision to dismiss a lawsuit brought by Mexican plaintiffs for an accident that occurred in Mexico). Likewise, a number of federal district courts, including sister courts in this division, have followed the holding of *Vasquez*, and declined to open the floodgates to litigation involving foreign plaintiffs and foreign matters. *See Morales v. Ford Motor Company*,

2

2004 WL 825641 (S.D. Tex. March 31, 2004) ___ F.Supp.2d ___ opinion attached hereto as **Exhibit "3"**; *see also Gonzalez v. Ford Motor Company*, No. P-02-CA-016 (W.D. Tex. September 23, 2003) opinion attached hereto as **Exhibit "4"**; *Guedez v. Ford Motor Company,* No. P-03-CA-032 (W.D. Tex. September 23, 2003) opinion attached hereto as **Exhibit "5"**; *Rodriguez v. Ford Motor Company*, No. P-03-CA-057 (W.D. Tex. September 23, 2003), opinion attached hereto as **Exhibit "6"**; *Hange v. Ford Motor Co.*, No. P-02-CV43, slip op. (W.D. Tex. Sep. 23, 2003) opinion attached hereto as **Exhibit "7"**; *Zamudio v. Michelin North American, Inc.*, No. 4:02-CV-0929-A (N.D. Texas August 2003), opinion attached hereto as **Exhibit "8"**; *Taylor v. Daimler Chrysler Corp.*, 196 F.Supp.2d 428 (E.D. Tex. 2001); *Seguros Comercial Ans. S.A. de C.V. v. Am. President Lines Ltd.*, 933 F.Supp. 1301 (S.D. Tex. 1996); and *Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. 139, 145 (E.D. Tex. 1992).

The matter at bar warrants the same result.

## II.    ARGUMENT AND AUTHORITIES

A.    **The *forum non conveniens* doctrine permits the Court to dismiss this case so it may be filed in Mexico where the accidents occurred, where the plaintiffs reside, and where all accident-specific evidence is located.**

Federal courts have discretion to dismiss civil actions, such as this one, under the common-law doctrine of *foreign non conveniens*. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 721, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A Court, sitting in diversity, applies the federal *foreign non conveniens* law. *See Seguros Commercial America S.A. de C.V. v. American President Lines, Ltd.*, 105 F.3d 198, 199 (5th Cir. 1996).

In evaluating a motion to dismiss for *forum non conveniens*, this Court must first consider whether an adequate alternative forum is available to hear the case. *See Vasquez,* 325 F.3d at 671. This requirement has two parts; the alternative forum must be both "available" and "adequate":

> An alternative forum is considered available if the entire case and all parties can come within its jurisdiction.
>
> *****
>
> An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court."

*Id.* at 672 (citations omitted).

Once this Court finds that the alternative forum is both available and adequate, it must then weigh various private and public interest factors to determine whether that forum is the most appropriate. The "private interest" factors to be considered are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of [the] premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839 (1947). The "public interest" factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct 252 (1981) n. 6. (citing *Gulf Oil Corp.*, 330 U.S. at 509.)

**B.    Mexico is an "available" alternative forum.**

"An alternative forum is considered available if all parties can come within its jurisdiction." *Vasquez*, 305 F.3d at 671. "A defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis." *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). Here, Ford makes itself available to the courts

of Mexico. *See* Consent to Jurisdiction Clause *infra* at Page 9. Mexico, therefore, is an "available" forum.

Nevertheless, even if Ford did not make itself available to the courts of Mexico, that country would still have jurisdiction over this defendant. As Professor Serna de la Garza explains, the laws of Puebla, Mexico would apply, and the courts of that state would have jurisdiction over this case, because the accident occurred in Puebla. *See* Declaration of Professor Jose M. Serna de la Garza, attached hereto as **Exhibit "9"**. Additionally, a Mexican court in Puebla would have jurisdiction over a non-resident defendant such as Ford. *See id.*

## C. Mexico is an "adequate" alternative forum.

"An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Vasquez*, 325 F.3d at 671. Mexico is an "adequate" forum because it provides a personal injury and a wrongful death cause of action to the plaintiffs in this case. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002), *cert. denied*, 538 U.S. 1012, 123 S.Ct. 1928, 155 L.Ed.2d 848 (2003). A foreign forum is "adequate" so long as, "the remedy provided by the alternative forum is [not] so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254-55.

That Mexico does not recognize strict products liability in the same capacity as the United States is of no consequence. As held by the Supreme Court:

> The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry.
>
> *****
>
> Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.

*Piper Aircraft*, 454 U.S. at 261 and 265, n.22.

Likewise, that Mexico may not afford plaintiffs exactly the same benefits that they would receive in an American court fails to demonstrate inadequacy. *See id.* Indeed, the court in *Neo Sack, Ltd v. Vinmar Impex*, held that "it would be the height of presumption [for the U.S.] to insist on the 'parochial concept that all disputes must be resolved under our laws and in our courts' and that anything short of American justice is inadequate." *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 834 (S.D. Tex. 1993)(internal citation omitted).

Recently, the Fifth Circuit addressed this issue in *Gonzalez*, where a Mexican plaintiff brought an automotive products liability action, in this very Court, claiming that a defective air bag killed plaintiff's wife. *See Gonzalez*, 301 F.3d at 379. The accident occurred in Mexico and was witnessed by Mexican citizens. *See id.* Chrysler moved for dismissal under the *forum non conveniens* doctrine. The plaintiffs objected, arguing that Mexico did not provide an adequate forum because: (1) Mexican tort law does not provide for a strict liability theory of recovery, and (2) Mexican law caps the maximum award of damages. *See id.* at 380-81. This Court disagreed with the plaintiffs and ultimately dismissed the case. The Fifth Circuit affirmed, and, citing *Piper Aircraft*, "quickly dismissed" plaintiffs' contentions. *See id.* at 384. (In *Piper Aircraft*, the United States Supreme Court held that Scotland's failure to recognize strict liability did not, as a result, render Scotland an inadequate alternative forum.) As to the second argument, the Fifth Circuit noted that:

> we find troublesome and lacking in guiding principle the fact that the adequacy determination could hinge on constantly varying and arbitrary differences underlying the 'economic viability' of a lawsuit

and that,

> the adequacy inquiry under Piper Aircraft does not include an evaluation of whether it makes economic sense for Gonzalez to file this lawsuit in Mexico.

*Id.* at 383.

The same is true here for Mexico.  In sum, Mexico is an adequate alternative forum.

**D.    The private interest factors weigh heavily in favor of Mexico**

The next step in the *forum non conveniens* analysis is to consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of view of [the] premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *See Gulf Oil Corp*, 330 U.S. at 508.

All of these factors weigh in favor of dismissal of this case.  First, since the accident that is the subject of the present litigation occurred in Mexico, that country's system has better access to sources of proof.  The accident investigation occurred in that country and the majority of the witnesses with knowledge of relevant facts, and all of the eyewitnesses to the accident, reside in Mexico.  Furthermore, it is safe to assume that all of the witnesses speak only Spanish, and the relevant reports are written in Spanish.  The Mexican courts are certainly more capable of handling the presentation of proof that will be in their native tongue.  In addition, Ford will be unable to compel many key witnesses who reside outside United States jurisdiction.  *See* FED. R. CIV. P. 45 (limiting subpoena power to area within the state in which the court sits).  Even those witnesses, if any, who are willing to submit to examination in United States courts can only be presented at a tremendous cost to the parties.  Lastly, the accident site is in Mexico, and so a view of the premises will be more readily available to a Mexican court.  Because of the numerous practical problems involved in litigating this case in Texas--a state where no part of the underlying action occurred-- the private interest factors balance heavily in favor of dismissal.

It is expected that plaintiffs will maintain that Texas is an appropriate forum because the vehicle was designed in the United States.  Of course, plaintiffs will be unable to allege that the

vehicle, or any component part(s), were designed in Texas. Regardless, the fact that the vehicle

was designed in the United States is of no consequence to this Court's *forum non conveniens*

analysis.

> The linchpin of plaintiff's argument--that the alleged wrongful acts was the original
> design of the vehicle and tires--reaches back too far in the accident's causal chain.
> Identifying the situs of the wrongful conduct at an American designer's drawing
> board ignores the production, sale, and alleged failure of the product, which all
> occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of
> foreign governments to regulate their internal economies and threaten to engulf
> American courts with foreign claims.

*Gonzalez*, 325 F.3d at 674.

In any event, defendant hereby agrees to cooperate with the courts of Mexico in plaintiffs

efforts to obtain relevant evidence.[1] However, it is impossible for the plaintiffs to provide the same

easy access to relevant sources of proof, since a United States court cannot compel the production

of documents or persons not in either parties' control. *See Lueck v. Sundstrand Corp.*, 236 F.3d

1137, 1146-47 (9th Cir. 2001).

In sum, access to sources of proof will be easier if this case is tried in Mexico, where the

accident occurred, and all of the plaintiffs and all accident-specific witnesses reside.

**E.    The public interest factors also weigh heavily in favor of Mexico**

Although this court need not consider the public interest factors because the private interest

factors alone weigh heavily in favor of dismissal, the public interest factors strongly favor

dismissal of this case as well. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-

Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir. 1992). The public interest factors the court must

weigh are:

---

[1] Discovery obtained in the United States can be used in a Mexican court. *See* **Exhibit "9"**.

> the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws; or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241, n.6.

Again, all of these factors weigh in favor of dismissal of the matter at bar. First, there is no reason to burden Texas courts, or for that matter any American court, with such controversies when an adequate alternative forum exists. This is exactly what the Supreme Court was concerned with when it stated the doctrine of *forum non conveniens* should work to decrease "[t]he flow of litigation into the United States" and to decongest "already crowded courts." *Piper Aircraft*, 454 U.S. at 252.

Second, the local interest in Mexico far outweighs any local interest in the United States, and specifically any local interest in the Brownsville Division. The action in question occurred in the foreign jurisdiction. Ford strains to find any basis to support the notion that the communities which comprise the Brownsville Division have any interest in the outcome of this litigation.

Third, this case is more properly tried in the jurisdiction whose substantive law should be applied. Certainly a Mexican court is better equipped to apply Mexican law than a court in the United States is. Allowing Mexico to adjudicate this claim will give the necessary deference to the courts of that country, as well as avoid the unnecessary conflict of law problems that will arise by trying the case in the United States.

Fourth, and most importantly to the public policy interests of Texans, it is altogether unreasonable to burden Texas residents with the duty of adjudicating the claims of Mexican residents and citizens when those claims have no connection whatsoever with Texas.

9

This Mexican accident claim was brought by foreign citizens and residents. They have chosen to litigate, not in the courts of their home country where the accidents occurred and where all of the evidence regarding this specific case is located, but in a Court in the United States sitting in a division with absolutely no connection to the accident giving rise to the lawsuit. Therefore, plaintiffs' choice of forum is accorded substantially less deference than that of a domestic plaintiff litigating in his or her home forum. *See Piper Aircraft*, 454 U.S. at 256.

### III.    CONSENT TO JURISDICTION

Defendant hereby consents to the jurisdiction of all the Mexican courts. Defendant further agrees to abide by any judgment entered into by a Mexican court.

### IV.    CONCLUSION AND PRAYER

As was the case in *Gonzalez v. Chrysler Corp.* decided by this Court, Mexico is an available and adequate forum, and all of the public and private interest factors weigh heavily in favor of Mexico as the appropriate forum to adjudicate this Mexican accident claim. Defendant, Ford Motor Company, respectfully requests this Court to dismiss this action on the grounds of *forum non conveniens*.

Respectfully submitted

By

Evan N. Kramer
Attorney in Charge
SDTX No.: 12346
Texas Bar No.: 11704650

OF COUNSEL:
William R. Moye
SDTX No.: 34007
Texas Bar No.: 24027553
BROWN McCARROLL, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110; Fax: (713) 525-6295

COUNSEL FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Ford Motor Company's Brief to Support Motion to Dismiss for *Forum Non Conveniens* has been forwarded by U.S. Certified Mail, Return Receipt Requested, to all known counsel of record as shown below on this ⅃⅃ day of ⏀⏀⏀⏀⏀, 2004.

_____
WILLIAM R. MOYE

Juan Gonzalez
THE LAW OFFICES OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, TX 78501

*Elena Torruco Reyes*

# FEDERAL POLICE

| C. CHIEF OF THE STAFF OF THE FEDERAL POLICE | Accident Report No. 027 / 02 |
|---|---|

**GRAL. ING. FAUSTINO V. RUIZ TAVIEL DE ANDRADE, CHIEF OF POLICE**
**BOULEVARD ADOLFO RUIZ CORTINES No. 3648, 7mo. PISO.**
**JARDINES DEL PEDREGRAL, DEL ALVARADO OBREGON**       PAGE No. THE ONLY ONE
**MEXICO D.F. C.P. (IILEGIBLE)**

**ATTN. GENERAL COORDINATOR OF THE REGIONAL SECURITY**
**CHIEF OF POLICE ARTURO JIMENES MARTINEZ**

| Police Station | | | | State | | | Region | | District | |
|---|---|---|---|---|---|---|---|---|---|---|
| **PEROTE** | | | | **PUEBLA** | | | **XXX** | | **III** | |

| A | Time | Day | Month | Year | Day of the week | K.M. | National Road (Num. And Name) | | Stretch | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **17:05** | **24** | **01** | **02** | **THURSDAY** | **067+ 650** | **(140) Mexico - Veracruz** | | **El Seco- Zalayeta** | |

| B | Trajectory before accident | Victims | Veh. | M³ | 02 | Veh. | M | Pedestrian | M | Total Participants |
|---|---|---|---|---|---|---|---|---|---|---|
| | **El Seco, Pue.** | **Yes** | **1** | **L⁴** | **01** | **2** | **L** | | **L** | **01** |

| Veh # | Heading Towards | On the road (crossed out word) | Veh. | Heading Towards | On the road or on the Street |
|---|---|---|---|---|---|
| **01** | **Zalayeta, Ver.** | **(140) Mexico- Veracruz** | | | |

| C | Veh # 1 Unidentified Pedestrian | Type | Make | Model | Color | Identification Number | License Plates |
|---|---|---|---|---|---|---|---|
| | | **Small Wagon** | **Ford** | **1993** | **Beige** | **IFMDV34X4PUC62682** | **PJU7240** |

| State- Force and Effect | Capacity | Loaded with | Way Bill | Eco. Num. | Company |
|---|---|---|---|---|---|
| **Mich. - 2002** | **5 persons** | **Empty** | | | |

| Type of Service | Authorization Num. | Issued by (D.G.T.T.) | Expiration Date | Insurance Policy Number |
|---|---|---|---|---|
| **Personal Vehicle** | | | | **Without** |

| Owner | Domicile |
|---|---|
| **FELIX GONZALEZ RINCON** | **V. Riva Palacio Fte. 1730 Nueva Italia, Mujica, Mich.** |

| Driver | Domicile | Dead | Taken to |
|---|---|---|---|
| **Unknown (The vehicle was abandoned)** | **Unknown (The vehicle was abandoned)** | Injured | |

| Sex | Nationality | Age | D.O.B. | License Type and Number | State | Force and Effect | Veh. Picked up by | Towed |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | **Gruas Perote ⁵** | Driven |

**(Fields D & E were left blank and therefore are not translated)**

## F  Accident Classification

| | | | | |
|---|---|---|---|---|
| ☐ | Steering | ☐ | Shoulder | **Lighting** |
| | Suspension | ☐ | Expressway | |
| ☐ To go Off the Road | Lights | ☐ | Toll Road | ☐ Daylight |
| ☐ Flip over / Roll Over | Axle | ☐ | Farm Road | ☐ Dawn |
| ☐ Passenger Falling out | Transmission | ☐ | Gravel | ☐ Night |
| ☐ Fire | Engine | ☐ | Road Undergoing Construction | ☐ Public Lights |
| ☐ Collision | Overload | | | |
| ☐ Other | Larger than standard Measurement | | | |

### On the Road Collision

| | |
|---|---|
| ☐ | Pedestrian (Run Over) |
| ☐ | Motor Vehicle in movement |
| ☐ | Motor Vehicle by reach |
| ☐ | Parked Motor Vehicle |
| ☐ | Train |
| ☐ | Bicycle |
| ☐ | Stationary Object |
| ☐ | Semi-Moving Object |
| ☐ | Other Objects |

### On the Road

| | |
|---|---|
| ☐ | Cattle Crossing |
| ☐ | Imperfections |
| ☐ | No traffic signals |
| ☐ | Objects on the road |
| ☐ | Wet |
| ☐ | Slippery |
| ☐ | Other |

### Vertical Alignment

| | |
|---|---|
| ☐ | Slope |
| ☐ | Hill |
| ☐ | Bump |
| ☐ | To Level |

### Horizontal

| | |
|---|---|
| ☐ | Tangent |
| ☐ | Open Curve |
| ☐ | Closed Curve/Sharp Curve |
| ☐ | Roads Connecting |
| ☐ | Bridge or Tunnel |
| ☐ | Intersection |
| ☐ | Cul de Sac |

### I  What the vehicle was doing

| | |
|---|---|
| ☐ | Traveling Forward |
| ☐ | Passing |
| ☐ | Turning Right |
| ☐ | Turning Left |
| ☐ | U turn |
| ☐ | Braking |
| ☐ | Slowing down or temporarily stationary |
| ☐ | Beginning to move in lane |
| ☐ | Entering or exiting lane |
| ☐ | Backing up |
| ☐ | Parked correctly |

---

³ M stands for **"Muerto"** which means "Dead"
⁴ L stands for **"Lesionado"** which means "Injured"
⁵ Proper name no translation.



EXHIBIT

3

| | Train Crossing |
| | Port |
| | Other |

| | Parked incorrectly |
| | Crossing |
| | Other |

| **G** | **Circumstances that Contributed: by the Driver** |
|---|---|

| | Imprudence or Intention |
| ■ | Excessive Speed |
| | Invaded the Opposite Lane |
| | Passing Incorrectly |
| | Did not observe stop sign |
| | Did not observe traffic light |
| | Did not grant right of way |
| | Did not keep correct distance |
| | Made incorrect turn |
| | Parked wrong |
| | Under the influence of alcohol |
| | Under the influence of drugs |
| | Slumbering |
| | Blinded by lights |

**Natural Agent**

| | Rain |
| | Snow or Hail |
| | Fog or Smoke |
| | Dust Clouds |
| | Strong Winds |
| | Other |

**Of the vehicle**

| | Tires |
| | Brakes |

| **H** | **Data of the Place of the Accident** |
|---|---|

| 1 | | |
| 2 | | |
| 3 | | | Lanes |
| 4 | | ■ |
| 5 or More | | |

| | ■ | Median Strip |
| 1 | ■ | One |
| 2 | ■ | Way |
| 3 | | Lane(s) |
| 4 | | |
| 5 or More | | |

**Traffic Control**

| ■ | Informative Sign |
| | Warning Sign |
| | Speed Limit Signs |
| | Traffic Light |
| | Traffic Officer |
| | Barrier or Median strip |
| | Lateral Lines Painted |
| | Central Line Painted |
| | Dip |
| | Flags/Cones |
| | Flag Carrier |
| | Other Control |
| | No Control |

| **J** | **What the Pedestrian or Passenger were doing** |
|---|---|

| | Crossing |
| | Getting in or out of vehicle |
| | Walking in same direction as traffic |
| | Walking opposite of direction of traffic |
| | Standing |
| | Playing |
| | Pushing or working on vehicle |
| | Performing Other Activity |
| | On top of load |
| | In place designated for load |
| | Inside vehicle |
| | Outside vehicle |
| | On the road |
| | Off the road |

| K | DETERMINING FACTORS |
|---|---|
| | (The following description of the accident can not be clearly read) The vehicle was traveling ….heading towards to Zalayeta, Veracruz.  It went off the road …road of four lanes with two traffic lanes for each direction, dashed central line and the lateral ones are continuous…; central median strip…, speed limit sign of …Km/ H, without shoulders; … the driver was exceeding the speed limit allowed …it went off the road to the right…loosing control of the vehicle, rolling over…diagonal to the center line of the road, on its (wheels ?) |

| L | VICTIMS | | | TOTAL | | [6]M: 2 | [7]L: 1 |
|---|---|---|---|---|---|---|---|
| Veh. | Name | Sex | Age | Address | | M/L | Taken to: |
| 1 | Concepcion Mancias Rivera | F | (Illegible) | (Illegible) | | M | U[8] |
| | Horacio (Illegible) | M | 15 | (Illegible) | | M | U |
| | Oliver (Illegible) Gomez | M | 17 | (Illegible) | | L | V |

| M | MATERIAL DAMAGES (Approximated Estimate) | |
|---|---|---|
| Veh. 1 | $35,000 | ROAD: No |
| Veh. 2 | | OTHER PROPERTIES: NO |
| Total: | $35,000 | LOAD: NO |

| N | VEH. | Violation Folio Num. | Reason | Violated Articles | Guarantee | Occurring in (D.G.A.F.) |
|---|---|---|---|---|---|---|
| | 1 | 48(Not legible) | Excessive Speed | 119 (illegible) | Veh. | (Illegible) |
| | | | Abandonment of the vehicle | 183 (illegible) | | |
| | | | Abandonment of the victims | 184 (illegible) | | |

| O | Judicial Venue | |
|---|---|---|
| | The Police Report of these events is made before the C. Agent of the Public Department of the General Jurisdiction, in Libres, Pue. | |
| Time | Another Official Authority present at the scene of the accident (beginning of the report) | |
| 17:50 | Lia Jose Joaquin Lutrillo Alvarez, Public Department (not legible) who certified the events and ordered the picking up and transport of the bodies. | |
| | Persons and objects under the charge of the Public Department of the General Jurisdiction.    And/or Other Authorities D.A. (illegible) | |
| | The subject vehicle is in the impoundment lot of Gruas Perote its office is located at (Illegible) (What follows is illegible). | |

| P | ADDITIONAL |
|---|---|
| | It is attached an illustrative sketch, the vehicle inventory, the Violation Ticket Number (Illegible) It was used the services of a tow truck of Perote.   It is recorded that the corpses were transported to the morgue of (Illegible) in a municipal patrol of that place (illegible). |

[6] M stands for **"Muerto"** which means **"Dead"**

[7] L stands for **"Lesionado"** which means **"Injured"**

[8] U stands for **"Urgencia (s)"** which means **"Emergency(ies)"**

5

| Emergency Service – Transport | Taken to: | | Information Source | | Time |
|---|---|---|---|---|---|
| I  (Illegible) | U  (Illegible) | X | Firsthand █ | 1A News | 17:05 |
| II  (Illegible) | V  (Illegible) | Y | Order | Hr. of Contact | 17:05 |
| III | W | Z | Notice | Wrote Report | 23:00 |

| Respectfully (It follows an illegible signature and an official Stamp) | Known by (It follows an illegible signature and an official Stamp) | Verified by: (It follows two illegible signatures and two official stamps) | The O.K. by: It follows two official stamps the first one says:  Chief of the operative unit of the Com. Reg. XXX "Veracruz" The second one says: Chief Inspector Carlos H. Berdon R. (Illegible). |
|---|---|---|---|
| | | | |

6

## ILLUSTRATIVE SKETCH

### Accident Report No. (Illegible)

| Classification of the Accident: **To Go Off The Road** | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Police Station**<br>**PEROTE** | | | **State**<br>**PUEBLA** | **Time**<br>**17:05** | **Day**<br>**24** | **Month**<br>**01** | **Year**<br>**02** |
| **Km.**<br>**067 + 650** | **National Road (Number and Name)**<br>**MEXICO – VERACRUZ** | | | | **Stretch**<br>**EL SECO – ZALAYETA** | | |

**Illustration**

| Previous Trajectory | | References and/or Distances | | Final Position | |
|---|---|---|---|---|---|
| 1 | The subject vehicle was coming from El Seco, Pue. | A | It went off the road | D | Final Position of the subject vehicle. |
| | | B | It lost the control of the vehicle | | |
| | | C | Roll Over | | |

| Respectfully<br>(It follows an illegible signature and an official Stamp) | Known by<br>(It follows an illegible signature and an official Stamp) | Verified by:<br>(It follows one illegible signature and an official stamps) | The O.K. by:<br>It follows one official stamp which legend is note very clear.  Chief Inspector of the Federal Police Carlos...<br>(Be – 181269). |
|---|---|---|---|

POLICIA FEDERAL PREVENTIVA

C. JEFE DEL ESTADO MAYOR DE LA P.F.P.
COMISARIO GRAL. FAUSTINO V. RUIZ TAVNEL DE ANDRADE.
BOULEVARD ADOLFO RUIZ CORTINES No. 3648 7° PISO
JARDINES DEL PEDREGAL, DEL. ALVARO OBREGON
MEXICO D.F.   C.P. 01900

ATN.: COORDINADOR GRAL. DE SEGURIDAD REGIONAL
COMISARIO JEFE. P.F.P. ARTURO JIMENEZ MARTINEZ

REPORTE DE ACCIDENTE No. 017/03

HOJA No. Unica

| DESTACAMENTO | PEROTE | ENTIDAD PUEBLA | REGION XXX | DISTRITO III |
|---|---|---|---|---|

**A** | HORA 17:05 | DIA 27 | MES 01 | AÑO 02 | DIA DE LA SEMANA. JUEVES | KM 067+650 | CAMINO NAL. (NUM. Y NOMBRE) (14) Mexico-Veracruz | TRAMO El Seco-Zalajeta

**B** TRAYECTORIA ANTERIOR AL ACCIDENTE  El Seco, Pue.

| VICTIMAS | VEH M 2 | VEH M | PEATON 1 | TOTAL DE PARTICIP. 01 |
| Zalajeta, Ver. | S1 | L 1 | L 2 | |

VEH. No. 1 | CON DIRECCION A Zalajeta, Ver. | EN EL CAMINO (14) Mexico-Veracruz | VEH. No. | CON DIRECCION A | EN EL CAMINO O CALLE

PEATON | IBA DESDE (LADO O ESQUINA) | HACIA (LADO O ESQUINA) | HOJAS EXTRAS DE REPORTE DE ACCIDENTE

**C** | VEH. No. 1 | TIPO Vagoneta | MARCA Ford. | MODELO 1993 | COLOR Beige | No. DE IDENTIFICACION 1FMDU34XVUC62682 | PLACAS PJUJ2VO

ENTIDAD-VIGENCIA Mich-2002 | CAPACIDAD 5 Personas | CARGADO CON Vacio | CARTA-PORTE | No. ECO | EMPRESA

TIPO DE SERVICIO Particular | AUTORIZACION-NUM. | EXPEDIDA POR(D.G.T.) | VIGENCIA | POLIZA SEGURO DEL VIAJERO O DEL VEH. (NUM. Y CIA.) S/D

PROPIETARIO Felix Gonzalez Rincon | DOMICILIO V. Riva Palacio Pte. 1730 Nueva Italia, Mpio. Nueva. Mich.

CONDUCTOR Se ignora vehiculo abandonado | DOMICILIO Se ignora vehiculo abandonado | MUERTO | LLEVADO A

SEXO | NACIONALIDAD | EDAD | FECHA NAC. | LIC. TIPO Y No. | ENTIDAD | VIGENCIA | VEH. RECOGIDO POR Grúas Yarte | REMOLCADO MANEJADO

**D** | VEH. No NO IDENTIFICADO | PEATON | TIPO | MARCA | MODELO | COLOR. | No. DE IDENTIFICACION | PLACAS

ENTIDAD-VIGENCIA | CAPACIDAD | CARGADO CON | CARTA-PORTE | No. ECO | EMPRESA

TIPO DE SERVICIO | AUTORIZACION NUM. | EXPEDIDA POR(D.G.T.) | VIGENCIA | POLIZA SEGURO DEL VIAJERO O DEL VEH. (NUM. Y CIA.)

PROPIETARIO | DOMICILIO

CONDUCTOR O PEATON | DOMICILIO | MUERTO | LLEVADO A

SEXO | NACIONALIDAD | EDAD | FECHA NAC. | LIC. TIPO Y No. | ENTIDAD | VIGENCIA | VEH. RECOGIDO POR | REMOLCADO MANEJADO

**E** DATOS DE LOS SEMIRREMOLQUES

| VEH | TIPO | MARCA | No. IDENTIFICACION | PLACAS | ENTIDAD VIG. | CAPACIDAD |
|---|---|---|---|---|---|---|

**F** CLASIFICACION DEL ACCIDENTE
- Salida del camino
- Volcadura
- Caída de pasajeros
- Incendio
- Choque
- Otro

COLISION SOBRE EL CAMINO
- Peatón (atropellamiento)
- Vehículo motor en tránsito
- Vehículo motor sin alcance
- Vehículo motor estacionado
- Tren
- Bicicleta
- Objeto fijo
- Semoviente
- Otros objetos

**G** CIRCUNSTANCIAS QUE CONTRIBUYERON DEL CONDUCTOR
- Imprudencia o atención
- Velocidad excesiva
- Invadió carril contrario
- Rebaso indebidamente
- No respeto señal de alto
- No respeto semáforo
- No cedió el paso
- No guardo distancia
- Viro indebidamente
- Mal estacionado
- Estado de ebriedad
- Bajo efecto de drogas
- Dormitando
- Deslumbramiento
- DEL VEHICULO
- Llantas
- Frenos

- Dirección
- Suspensión
- Luces
- Ejes
- Motor
- Sobrecupo o sobrecarga
- Exceso de dimensiones

DEL CAMINO
- Irrupción de ganado
- Desperfectos
- Falta de señales
- Objetos en el camino
- Mojado
- Resbaloso
- Otros

AGENTE NATURAL
- Lluvia
- Nieve o granizo
- Niebla o humo
- Vientos fuertes

**H** DATOS DEL LUGAR DEL ACCIDENTE
- Carril(es)

Carril(es) 1 2 3 4 5 o mas

Espacio divisorio
Carril(es) en un sentido

- Acotamiento(s)
- Vía rápida
- De cuota
- Brecha
- Terracería
- Tramo en construcción

ALINEAMIENTO VERTICAL
- Pendiente
- Cima

A Nivel

HORIZONTAL
- Tangente
- Curva abierta
- Curva cerrada
- Entronque
- Puente o túnel
- Intersección
- Callejón
- Acceso privado
- Cruce de FFCC
- Zonas Portuaria
- Otro

CONTROL DE TRANSITO
- Señal informativa
- Señal preventiva
- Señal restrictiva
- Semáforo
- Agente o guardavía
- Barrera o isleta
- Rayas laterales
- Raya central
- Vibradores
- Abanderamiento
- Banderero
- Otro control
- Sin control

LUZ
- De día
- Crepúsculo
- De noche
- Alumbrado público

**I** QUE SE HACIA CON EL VEHICULO
- Seguía de frente
- Rebasaba
- Viraba a la derecha
- Viraba a la izquierda
- Viraba en "U"
- Frenaba
- Despacio o parada momentánea
- Iniciaba marcha en carril
- Entraba o salía de la vía
- Retrocedía
- Estacionado correctamente
- Estacionado incorrectamente
- Cruzaba
- Otro

**J** QUE HACIA EL PEATON O PASAJERO
- Atravesaba
- Subía o bajaba del vehículo
- Caminaba en sentido del tránsito
- Caminaba opuesto al tránsito
- Estaba parado
- Jugaba
- Empujaba o trabajaba en el veh.
- Hacía otra actividad
- Sobre la carga
- En el lugar destinado a la carga
- Dentro del vehículo
- En el exterior del vehículo
- Sobre el camino
- Fuera del camino

FORMA PFP001

**K  CAUSAS DETERMINANTES:** Transitado el vehículo de referencia de sur a norte con dirección a Zalayeta, Ver., en tangente a nivel, vía de cuatro carriles con circulación de dos para cada sentido, rayas centrales discontinuas y laterales continuas delimitadoras de carriles, espacio dividido central. Se conducían su conductor a velocidad de 80 km/h, sin acatar... navegando su conductor a mayor velocidad de la permitida en tramo saliéndose del camino a la derecha realizando acción... por abusar... por circular el conductor del vehículo volcándose...

**L  VICTIMAS**                                              TOTAL

| VEH | NOMBRE | SEXO | EDAD | DOMICILIO | M/L | LLEVADO A |
|-----|--------|------|------|-----------|-----|-----------|
| 1 | Concepción Mancías Rivera | F | 44 | Av. Benito Juárez #3 4/o col. Rev. de Ayala, Orizaba, Ver. | H | U |
| ✓ | Horacio Díaz Toledo | M | 15 | Prov. conocido 1/o loc. Prov. de Ayala, Orizaba, Ver. | H | U |
| ✓ | Oliver Herrera Gómez | M | 17 | Ignacio Zaragoza 1/o loc. Prov. de Ayala, Orizaba Ver. | L | V |

**M  DAÑOS MATERIALES (ESTIMACION APROXIMADA)**

| | | | |
|---|---|---|---|
| VEH 1 | $35,000 | CAMINO | No |
| VEH 2 | | OTRAS PROPIEDADES | No |
| TOTAL | $35,000 | CARGA | No |

**N**

| VEH | INFRACCION FOLIO No. | CONCEPTO | ARTICULOS VIOLADOS | GARANTIA | RADICACION (O.G.A.F.) |
|-----|---------------------|----------|--------------------|----------|------------------------|
| 1 | 486345 | Velocidad inadecuada | 119 LTCF | VEH | Xalapa |
| | | Abandono de vehículo | 183 LTCF | ✓ | |
| | | Abandono de victimas | 184 LTCF | ✓ | |

**O  COMPETENCIA JUDICIAL** PROCEDE LA _Denuncia_ DE ESTOS HECHOS ANTE EL C. AGENTE DEL MINISTERIO PUBLICO DEL FUERO _Común_ EN _Lindos, Pue._ ...

**HORA** 17:30  **OTRA AUTORIDAD PRESENTE EN EL LUGAR DE LOS HECHOS: (INICIO ACTUACION)** Lic. José Joaquín Lutrillo Alvarez, Ministerio Público subalterno de Oriental, Ver., quien dio fe de los hechos y ordenó el levantamiento y traslado de los cuerpos.

**PERSONAS Y OBJETOS A DISPOSICION DEL MINISTERIO PUBLICO DEL FUERO** Y/U OTRAS AUTORIDADES D.F.P.F. El vehículo de referencia en el local de encierro de grúas "Peñate" con oficinas en su número Sur #52 a disposición de la autoridad correspondiente y de la Delegación de Autotransporte Federal en Xalapa, Ver.

**P  COMPLEMENTARIAS** Se anexa croquis ilustrativo, inventario del vehículo, folio de infracción #486345. Se utilizó grúa del servicio "Peñate". Se hace notar que los cuerpos fueron trasladados hacia el anfiteatro de Oriental, Pue. a bordo de la patrulla municipal de ese lugar #Eco. 01.

| PRIMEROS AUX. | TRASLADO | LLEVADO A | | FUENTE DE INFORMACION | HORA |
|---|---|---|---|---|---|
| Ninguno | | U Anfiteatro Oriental, Pue. | X | DIRECTA | 17:05 |
| B Ambulancia Cruz Roja Palma | | V Hospital Civil Perote, Pue. | Y | ORDEN | HR. DE CONTACTO 17:05 |
| NP | | W | Z | AVISO | RINDE REPORTE 23:00 |

**RESPETUOSAMENTE**                    **TOMO CONOCIMIENTO.**   **SUPERVISO:**            V / o.     B/ o.

*[signatures]*

ENCARGADO DE LA COMPAÑIA DE DESTACAMENTO "PEROTE"   JEFE DE LA UNIDAD OPERATIVA DE LA COM. REG. XXX "VERACRUZ"

SUB-OFICIAL P. F.C.   INSP. P.F.P. SIXTO H. ORTEGA REYES   INSP. JEFE CARLOS H. BERDON R.
EDIN SALAS TESCUILAN        CB-330783                          BE-191298.

# CROQUIS ILUSTRATIVO

REPORTE DE ACCIDENTE No. 012/03

| | | | |
|---|---|---|---|
| CLASIFICACION DEL ACCIDENTE | SALIDA DEL CAMINO | | |
| COMISARIA DE DESTACAMENTO | PEROTE | ENTIDAD PUEBLA | HORA 17:05 DIA 24 MES 01 AÑO 03 |
| KM. 067+650 | CAMINO NAL. (NUM. Y NOMBRE) MEXICO - VERACRUZ | TRAMO EL SECO - ZALAYETA | |



ZALAYETA, VER.

EL SECO, PUE.

| TRAYECTORIA ANTERIOR | | REFERENCIAS Y/O DISTANCIAS | | POSICION FINAL | |
|---|---|---|---|---|---|
| 1 | VEHICULO DE REFERENCIA PROCEDENTE DE EL SECO, PUE. | A | SALIDA DEL CAMINO | D | DEL VEHICULO DE REFERENCIA. |
| | | B | PERDIDA DEL CONTROL DE LA DIRECCION | | |
| | | C | VOLCADURA | | |

RESPETUOSAMENTE       TOMO CONOCIMIENTO       SUPERVISO       Vo. Bo.

Miguel Angel Lima Reyes
POLICIA FEDERAL DE CAMINOS

SUBOFICIAL P. F. C.
EDIL ZARAGOSA CASTELAN

ENCARGADO DE LA COMISARIA DE DESTACAMENTO "PEROTE"
INSPECTOR P. F.
SERGIO ORTEGA JR.
(OE - 338734)

JEFE DE LA UNIDAD OPERATIVA
DE LA ZONA XVII, DE "VOLCANES"
INSPECTOR JEFE P. F. P.
CARLOS R. RENDON R.
(IE - 181269)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ELENA TORRUCO REYES, On Behalf of | § | |
| HORACIO DIAZ TORRUCO | § | |
| | § | |
| and | § | |
| | § | |
| OLIVER HERRERA GOMEZ, Individually | § | |
| *Plaintiffs,* | § | CIVIL ACTION NO.: 04-CV-43 |
| vs. | § | JURY |
| | § | |
| FORD MOTOR COMPANY | § | |
| *Defendant.* | § | |

## DECLARATION OF ROGER CHEN

My name is Roger Chen. I am over the age of 18 years, of sound mind, have never been convicted of a felony, and am fully competent to make this declaration. I have personal knowledge of the facts stated herein, which are true and correct.

I am a Design Analysis Engineer for defendant, Ford Motor Company, in the above-styled cause of action. I am familiar with the vehicle made the basis of this suit bearing VIN 1FMDU34XPUC62684 (the "vehicle"). Based on the corresponding VIN the vehicle was not manufactured or designed in Texas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June *8th*, 2004 before a duly authorized officer of the State of Michigan.

ROGER CHEN

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 8th DAY OF JUNE, 2004

DOROTHY A. MEHALL
Notary Public, Wayne County, Michigan
My Commission Expires April 5, 2005

HOU:304372.1
13486.95897



EXHIBIT
2

Westlaw.

2004 WL 825641                                                          Page 1
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Only the Westlaw citation is currently available.


United States District Court,
S.D. Texas,
Brownsville Division.

Jorge Enrique Pineda MORALES et al., Plaintiffs,
v.
FORD MOTOR CO., Defendant.

No. CIV.A. B-03-061.

March 31, 2004.


**Background:** Venezuelan plaintiffs brought products liability action against American automobile manufacturer. After removal to federal court, manufacturer moved to dismiss.

**Holdings:** The District Court, Hanen, J., held that:
(1) courts of Venezuela were available alternative forum, and
(2) dismissal on forum non conveniens grounds was warranted.

Motion granted.


**[1] Federal Courts** ⬤⟞45

170Bk45 Most Cited Cases

Provided that applicable circumstances exist, federal courts may dismiss any given case on forum non conveniens grounds, even though jurisdiction and proper venue are established, but only when there is alternative forum abroad.

**[2] Federal Courts** ⬤⟞417
170Bk417 Most Cited Cases

Even in diversity action, federal court applies federal law of forum non conveniens rather than any state-law counterpart.

**[3] Federal Courts** ⬤⟞45
170Bk45 Most Cited Cases

For purposes of forum non conveniens analysis, alternative forum is available if it has ability to assert jurisdiction over entire case and all parties.

**[4] Federal Courts** ⬤⟞45
170Bk45 Most Cited Cases

For purposes of forum non conveniens analysis, courts of Venezuela were available alternative forum in Venezuelan plaintiffs' products liability action against American manufacturer, even if Venezuelan court would not assert jurisdiction over dispute unless both parties willingly submitted to its jurisdiction, and plaintiffs did not wish to adjudicate their claims in Venezuela, where manufacturer was willing to submit to jurisdiction of Venezuelan courts.

**[5] Federal Courts** ⬤⟞45
170Bk45 Most Cited Cases

Dismissal on forum non conveniens grounds was warranted in Venezuelan plaintiffs' design-oriented products liability action against American automobile manufacturer, despite plaintiffs' contentions that documentary evidence relating to design was located in United States, and that political and judicial situation in Venezuela was such that Venezuelan courts were less convenient, where action arose out of single-vehicle accident in Venezuela, vehicle's sole occupant and owner was Venezuelan resident who received medical treatment only in Venezuela, vehicle was manufactured and sold in Venezuela, accident was investigated by Venezuelan authorities, plaintiffs failed to provide any expert opinion regarding current state of Venezuelan judiciary, and Venezuelan law was likely to govern plaintiffs' claims.

**[6] Federal Courts** ⬤⟞44
170Bk44 Most Cited Cases

Where case involves foreign plaintiffs attempting to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

litigate accident that occurred on foreign soil in United States courts, plaintiffs' choice of forum deserves less deference.

Mr. Mark A. Cantu, Mr. Juan Antonio Gonzalez, Office of Mark Cantu, McAllen, for Petitioner.

Mr. Jaime Arturo Saenz, Rodriguez, Colvin, Chaney, Saenz, L.L.P., Brownsville, Mr. Ronald D. Wamsted, Brown, McCarroll and Oaks Hartline, Austin, for Respondents.

## MEMORANDUM OPINION

HANEN, District J.

*1 The Defendant removed this suit from the 107th Judicial District Court, Cameron County, Texas, to this court on March 21, 2003. *Docket No. 1.* Subsequently, the Defendant filed a "Motion to Dismiss on *Forum Non Conveniens* Grounds." *Docket No. 13.* The parties have presented arguments concerning the said motion over an extended period of time in multiple filings. *See Docket Nos. 19, 21, 34, 42.* For the reasons elaborated below, the court GRANTS the Defendant's motion and DISMISSES this case subject to the conditions enumerated in the conclusion of this memorandum opinion.

## I. FORUM NON CONVENIENS DOCTRINE

[1][2] "[F]ederal courts have discretion to dismiss ... actions, in certain narrow circumstances, under the common-law doctrine of *forum non conveniens.* " *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("The doctrine leaves much to the discretion of the court to which the plaintiff resorts ..."). Provided that the applicable circumstances exist, federal courts may dismiss any given case even though "jurisdiction and proper venue are established," but only when there is an alternative forum abroad. *Am. Dredging Co. v. Miller,* 510 U.S. 443, 448- 49 & n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). In general, "the central focus of the *forum non conveniens* inquiry is convenience" and "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to offer

any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). More particularly, federal courts consider *forum non conveniens* motions under the analytical framework established in *Gulf Oil Corp.* and its progeny. [FN1]

The Fifth Circuit Court of Appeals has essentially distilled the *Gulf Oil Corp.* standard into a tripartite test. *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 835 (5th Cir.1993), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993). In order to obtain dismissal on the ground of *forum non conveniens,* a defendant must first demonstrate "the existence of an available and adequate alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 671 (5th Cir.2003). If the existence of such a forum has been demonstrated, the court must then proceed to examine a host of "private interest factors." *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 380 (5th Cir.2002), *cert. denied,* 538 U.S. 1012, 123 S.Ct. 1928, 155 L.Ed.2d 848 (2003). These private factors include, but are not limited to, the following:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained.

*2 *Baumgart,* 981 F.2d at 835-36 (citing *Gulf Oil Corp.,* 330 U.S. at 508). If these factors counsel dismissal, then the court need not proceed further. *Id.* at 837; *see also Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.,* 955 F.2d 368, 376 (5th Cir.1992) ("Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors."). However, if the private interest factors do not weigh in favor of dismissal, then the court proceeds to examine a series of "public interest factors." *Gonzalez,* 301 F.3d at 380. These public interest factors include, but are not limited to, the following:

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Baumgart*, 981 F.2d at 837 n. 14 (citing *Gulf Oil Corp.*, 330 U.S. at 508). These lists of private and public interest factors are "by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). Considered in conjunction with one another, these factors provide for a flexible inquiry; accordingly, no one factor is dispositive. *Piper Aircraft Co.*, 454 U.S. at 249-50.

## II. AVAILABILITY AND ADEQUACY OF THE ALTERNATIVE FORUM

[3] The first step in the *forum non conveniens* inquiry entails two distinct determinations. *See Vasquez*, 325 F.3d at 671 ("Forum availability and adequacy are separate inquiries."); *In re Air Crash Disaster Near New Orleans, Louisiana On July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir.1987) (en banc) ("The district court must first decide whether an available and adequate foreign forum exists. This is a two-part inquiry: availability and adequacy."), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *reinstated on remand save as to damages*, 883 F.2d 17 (5th Cir.1989) (en banc) (per curiam). A forum is "available" if it has the ability to assert jurisdiction over "the entire case and all parties." *Vasquez*, 325 F.3d at 671. "An alternative forum is adequate if 'the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.' " *Id.* (quoting *Gonzalez*, 301 F.2d at 379- 80).

[4] Notwithstanding some confusion over terminology, the parties do not dispute the adequacy of Venezuelan courts to hear this matter. [FN2] Instead, the issue is availability. Based on the opinion of one of Plaintiffs' experts, Plaintiffs assert that a Venezuelan court would not exercise jurisdiction over this matter. *Docket No. 19* at 7-10. Although another United States District Court has accepted the analysis advanced by the Plaintiffs and their expert, *see In re Bridgestone/Firestone, Inc.,*

*Tire Products Liability Litigation,* 190 F.Supp.2d 1125, 1130-32 (S.D.Ind.2002), this court cannot agree with the aforesaid analysis. Boiled down to its essence, the Plaintiffs maintain that, because the Plaintiffs are unwilling to submit their case to the Venezuelan judiciary, it is "unavailable" as that term is understood in the law of *forum non conveniens.* The Plaintiffs write:

*3 Article 40(4) of the [Venezuelan] Statute of Private International Law provides that "Venezuelan Courts shall have jurisdiction to hear trials resulting from the filing of actions in property when the *parties* should expressly or tacitly submit to their jurisdiction." EXHIBIT B (emphasis added). Dr. deMaekelt states that, a plain reading of Article 40(4) in conjunction with the provision of Article 44 which provides that express submission shall be evidenced in writing, means that a Venezuelan court would not exercise jurisdiction over the actions at issue here unless Plaintiffs and the Defendant submit a writing executed by *both* parties that *expressly* submits to the jurisdiction of a Venezuelan court. deMaekelt Aff. II ¶¶ 9-10. For purposes of *forum non conveniens* analysis, a Venezuelan court will not be available as an alternative forum unless both parties submit to their jurisdiction. deMaekelt Aff. II ¶¶ 9-10. In the case at bar, because Plaintiffs brought their case in the United States, they are not expressly submitting to the jurisdiction of Venezuelan courts.

*Docket No. 19* at 9-10 (emphasis in original).

The Plaintiffs, however, have confused their willingness to avail themselves of the Venezuelan forum for its availability. Only the latter concern is relevant to the *forum non conveniens* inquiry. Supreme Court and the Fifth Circuit case law makes it clear that a foreign forum is available to plaintiffs hailing from the forum's country if the defendant submits itself to the foreign jurisdiction. *See Piper Aircraft Co.*, 454 U.S. at 254 n. 22 ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."); *Gonzalez*, 301 F.3d at 380 ("It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts."); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir.1983) ("We hold instead that defendant's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis."); *Vaz Borralho v. Keydrill Co.*, 696 F.2d 379, 393 (5th Cir.1983) (stating that "an agreement by a defendant to submit to the jurisdiction of the foreign forum will satisfy the doctrine's requirement of two forums in which the defendant is amenable to process"), *abrogated on other grounds, In re Air Crash*, 821 F.2d at 1163 n. 25. The Defendant has made it clear that it will submit itself to the jurisdiction of the Venezuelan courts. *Docket No. 13* at 7 ("Here, Ford makes itself available to the courts of Venezuela. Further, should this case be dismissed to Venezuela, Ford agrees to abide by any judgment entered into by a Venezuelan court."); *Docket No. 21* at 5 (reiterating willingness to submit to the jurisdiction of the Venezuelan courts).

*4 The Plaintiffs attempt to sidestep the foregoing case law and Defendant's submission by asserting that, "[u]nlike the alternate jurisdictions in those [other] cases, Venezuelan jurisdictional provisions require submission of both parties to that jurisdiction and the mere unilateral submission of the Defendant herein to Venezuelan jurisdiction is insufficient to create jurisdiction." *Docket No. 19* at 10; *see also Docket No. 34* at 10-12 (advancing the same notion). As previously noted, Plaintiffs' argument elides the distinction between their willingness to avail themselves of the Venezuelan forum and its availability. Indeed, the Plaintiffs' argument turns the *forum non conveniens* inquiry on its head. The *forum non conveniens* doctrine exists to provide federal courts an opportunity to reconsider a foreign Plaintiff's choice of forum in light of convenience. As conceptualized by the Plaintiffs, no such reconsideration may take place. Under the construction proposed by Plaintiffs, a Venezuelan plaintiff's choice of forum may never be reconsidered by the courts of this country, because Venezuelan plaintiffs have the option of rendering their home courts unavailable simply by bringing suits such as this one outside of their own country. Plaintiffs vociferously protest the Defendant's "unilateral submission to Venezuelan jurisdiction" as illegitimate, but evince no awareness that their own proposed construction of the *forum non conveniens* doctrine would empower themselves with unilateral authority regarding choice of forum. Nor do Plaintiffs indicate awareness that their own brand of unilateralism amounts to an utter

abrogation of the *forum non conveniens* doctrine in cases of this nature where Venezuelan plaintiffs are concerned. This court rejects the Plaintiffs availability-related arguments and finds that the Venezuelan courts are an available and adequate alternative forum. *Cf. Gonzalez*, 301 F.3d at 382-83 & n. 8 (rejecting notion that plaintiffs' unwillingness to bring suit in foreign forum due to its economic non-viability therein had any bearing on whether an alternative forum existed); *but cf. Canales Martinez v. Dow Chemical Co.*, 219 F.Supp.2d 719, 727-28 (E.D.La.2002) (arriving at the opposite conclusion reached by this court in the context of somewhat different Costa Rican jurisdictional provisions). [FN3]

III. PRIVATE INTEREST FACTORS

The Defendant argues that "[t]his case has absolutely no connection to Texas, pointing out that the "single-vehicle accident [at issue] ... occurred in Venezuela," the vehicle's "sole occupant" and owner "was a Venezuelan citizen and resident who received medical treatment only in Venezuela," the vehicle itself was manufactured and sold in Venezuela, and the accident was investigated by Venezuelan authorities. *Docket No. 13* at 3. Similarly, the Defendant notes that all of the Plaintiffs are Venezuelan citizens and residents. *Id.* Accordingly, the Defendant argues that the private interest factors "[a]ll ... weigh heavily in favor of dismissal." *Id.* at 9. More specifically, the Defendant argues that (1) "all of the case-specific evidence will originate in Venezuela," (2) "this Court will not be able to compel the attendance of key [Venezuelan] witnesses," (3) Ford will be unable "to join any non-parties since they would not be subject to personal jurisdiction in Texas," and (4) the accident site will be inaccessible should this matter be tried outside of Venezuela. *Id.* at 9-13.

*5 The Plaintiffs, of course, disagree with the Defendant's assessment. Regarding the case-specific evidence, the Plaintiffs argue that, as a design-oriented products liability suit, the voluminous documentary evidence (*i.e.*, "documents related to the development, design, testing summaries, evaluation, failure rates, fatal vehicle rates, inspections, NHTSA reports, Critical Concerns Review Group Reports") is located within the United States. *Docket No. 19* at 12. Moreover, the Plaintiffs note that the "millions" of relevant

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                    Page 5
— F.Supp.2d —
(Cite as: 2004 WL 825641 (S.D.Tex.))

documents "will need to be translated into Spanish" in order for this action to proceed in Venezuela. *Id.* at 13. Contrariwise, Plaintiffs argue that there are "a mere handful" of relevant Venezuelan documents, which will be translated into English and provided to the Defendant at the Plaintiffs' expense. *Id.* In addition, Plaintiffs maintain that "witness testimony" that has been obtained in this suit thus far would not be admissible in Venezuelan proceedings. *Id.* at 13-14. Regarding the accident site and joinder of non- parties, the Plaintiffs argue that the accident site is largely irrelevant to the disputed issues and that the Defendant has not adduced any evidence that any potential third parties exist. *Id.* at 14-15. Finally, the Plaintiffs maintain that the political and judicial situation in Venezuela is such that "Venezuelan courts are less convenient for this trial." *Id.* at 15-16.

[5]   Notwithstanding the Plaintiffs' counter-arguments, case law decisively resolves the private interest factors against the Plaintiffs' choice of forum in this case. The Plaintiffs' most plausible and compelling argument in favor of this forum is the one regarding the nature, extent, and location of documents relevant to their products liability cause of action. Unfortunately, this very argument has already been rejected by the Fifth Circuit. Of similar claims, the court of appeals has recently written:

> Plaintiffs point out that documents relating to the design and manufacture of the vehicle's tires are located in the United States and must be translated into Spanish....
>
> * * *
>
> Assuming *arguendo* that all information relating to the design and manufacture of the tires and vehicle is located in the United States, we still find the [district] court's analysis correct. The tires and vehicle were manufactured and sold in Mexico; the vehicle's servicing records--both vital to plaintiffs' alternative theories of liability--are also located there....
>
> * * *
>
> The linchpin of plaintiffs' argument--that the alleged wrongful act was the original design of the vehicle and tires--reaches back too far in the accident's causal chain. Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and

alleged failure of the product, which all occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims....

*6 *Vasquez,* 325 F.3d at 673-74. The vehicle at issue in this case was similarly manufactured and sold in Venezuela. *Docket No. 13* at 3 (citing affidavit of Roger Chen, which notes that the vehicle was "primarily designed in [the] USA and assembled in Venzuela" and sold by the Defendant to "an independent authorized [Venezuelan] dealer"); *id.* at Exhibit 3 (Plaintiffs' Original Petition at ¶ 4) (noting purchase of vehicle "by Jorge Enrique Pineda Carvajal at Auto Torovega, C.A., Carrera 8, Edif. Torovega, La Concordia, Apdo. 358, San Cristobal, Estado Tachira, Venezuela"). Like the plaintiffs in *Vasquez,* the instant Plaintiffs' rationale for selecting this forum simply "reaches back too far in the accident's causal chain." *See Docket No. 19* at 12 ("Fundamentally this case involves a determination of the circumstances surrounding the design of the Ford Explorer, the reasons for the failure of the vehicle, and the damages associated therewith and all of the evidence originates in the United States.").

This court finds Plaintiffs' contention regarding the purported inability of the parties to employ witness testimony procured in this proceeding in any future Venezuelan lawsuit to be similarly unpersuasive as a counter-argument to the Defendant's motion to dismiss. Initially, it is important to note the limited nature of Plaintiffs' argument. They do not contend that all discovery obtained thus far will be unusable in Venezuelan proceedings. Plaintiffs, relying on expert testimony propounded in another case, *see In re Bridgestone/Firestone,* 190 F.Supp.2d at 1149-50, argue only that Venezuelan law provides that " 'witness testimony obtained abroad shall have no value whatsoever if it was not taken under order issued by the Venezuelan judge hearing the case." ' *Docket No. 19* at 14. The Defendant disputes this contention altogether. *Docket No. 21* at 9.

However, the court finds it unnecessary to resolve this disagreement, as the sole discovery that has been conducted in this case to date has revolved around the *forum non conveniens* inquiry and a dispute concerning the applicable law in the event that this court declined to dismiss the suit. [FN4] The Plaintiffs themselves filed an unopposed

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                    Page 6
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

motion to extend the time for discovery on the merits pending this court's ruling on the *forum non conveniens* issue. *See Docket No. 37* ("To date, neither party has named any experts nor conducted written discovery as to the merits of the case because Defendant's motion to dismiss on grounds of *forum non conveniens* remains pending before the Court. As a practical matter, neither party wishes to expend time and resources on experts or written discovery until Defendant's motion is ripe for hearing and the Court issues its ruling."). The court granted this motion. *Docket No. 38.* The witness testimony procured thus far has been obtained over the Defendant's objection for the primary purpose of aiding the Plaintiffs' ability to respond to the Defendant's motion to dismiss this case. *See Docket Nos. 20, 25-26, 31, 33, 36.* It would be perverse to say the least to allow the Plaintiffs to now convert discovery allowed for their benefit over Defendant's objection on the issue of *forum non conveniens* into a basis for rejecting the very *forum non conveniens* motion that prompted the discovery. *Cf. Empresa Lineas Maritimas Arentinas, S.A.,* 955 F.2d at 372-73 (rejecting argument that completion of "substantial discovery" precluded *forum non conveniens* dismissal in case that had been pending before district court for eight years prior to filing of motion to dismiss).

*7 While the court is not unsympathetic to the Plaintiffs' premises-related counter-argument (*i.e.,* that "it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident"), *Docket No. 19* at 14, the court's sympathies are somewhat constrained by contrary case law. "Possibility of view of premises, if view would be appropriate to the action" is one of the private interest factors explicitly enumerated by the Supreme Court. *See Piper Aircraft Co.,* 454 U.S. at 241 n. 6 (quoting *Gulf Oil Co.,* 330 U.S. at 508). An accident such as the one at issue is, of course, of the sort that potentially renders a view of the accident scene appropriate. Potential defenses may include, for example, driver error or highway conditions, both of which necessitate a clear understanding of the scene. As another district court has observed:

Viewing the location of the [single car] accident could be appropriate, if unlikely, to a determination of this action. Although courts and juries in these type[s] of cases are usually informed of the circumstances of vehicular

accidents by photographs, modules and animations, physical viewing of the locale of the accident does occur. If it were necessary in this case, such a viewing would be virtually impossible due to the time and cost it would take to transport all court personnel and the jury to the location ....

*Urena-Taylor v. Daimler Chrysler Corp.,* 196 F.Supp.2d 428, 433 (E.D.Tex.2001); *cf. Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.,* 933 F.Supp. 1301, 1312-13 (S.D.Tex.1996) (finding that potential to view "the condition of the highway" in a case not involving personal injuries weighed in favor of dismissal).

In addition, although such a viewing of the scene may be relatively rare as a rule, the rule may be less pertinent in the context of trials involving foreign accidents. The need for local juries to personally view accident scenes located abroad may be higher due to Texas juries' unfamiliarity with road conditions abroad. That is, the reason accident scenes are infrequently viewed may have something to do with jurors' presumed familiarity with conditions in the locale in which they sit in judgment. *Cf. Piper Aircraft Co.,* 454 U.S. at 242 (noting district court's finding that trial concerning airplane crash "would be aided by familiarity with Scottish topography"). If this court retained the instant case, local jurors would, of course, lack such familiarity with the location of the accident. Accordingly, while the court considers this factor to be of limited import, particularly given the existence of modern technologies that would assist the parties in presenting a distant scene to otherwise unfamiliar jurors, it nonetheless also points toward dismissal of this case in favor of trial in Venezuela, if only slightly so.

The court also finds the Plaintiffs' counter-argument pertaining to potential third-parties unpersuasive. The Plaintiffs argue that the Defendant's purported concerns regarding the potential necessity of impleading third-parties who would be beyond the jurisdictional reach of this court are belied by its failure to identify any such parties. *Docket No. 19* at 14-15. Plaintiffs further contend that, having "allowed the parties to conduct discovery as to ... *forum non conveniens,*" the Defendant's failure to identify any such necessary third-parties constitutes a waiver of the issue. *Id.* The Defendant strenuously objects to the Plaintiffs'

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

line of argument on the basis that, "[i]f Ford had to provide a detailed catalog of potentially liable third-parties, it would have to conduct a full investigation and discovery in a foreign country under the Hague Convention." *Docket No. 21* at 10.

*8 Case law supports the Defendant's position. Regarding witnesses beyond the reach of a United States court's subpoena power, the Supreme Court has specifically rejected the contention that "defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Piper Aircraft Co.,* 454 U.S. at 258. Such witnesses would be difficult to identify and interview precisely because they are located "beyond the reach of compulsory process." *Id.* Indeed, "[r]equiring extensive investigation would defeat the purpose of" the *forum non conveniens* inquiry. *Id.; see also In re Air Crash,* 821 F.2d at 1165 n. 28 ("As one court has stated, however, 'a motion to dismiss for *forum non conveniens* does not call for a detailed development of the entire case." '). The Court's observations in *Piper Aircraft Co.* concerning individual witnesses are likewise applicable to potential third-parties. Hence, this court feels it inappropriate to construe the Defendant's failure to identify potential third-parties with specificity as a waiver of the issue.

Nonetheless, defendants are at least required to suggest in general terms who such third-parties might be. *See Piper Aircraft Co.,* 454 U.S. at 258 (holding that defendants must "provide enough information to enable the District Court to balance the parties' interests"). The Defendant has stated that, "[a]t a minimum," it may need to join those "entities or individuals responsible for maintaining the subject vehicle." *Docket No. 13* at 11. This is sufficient to meet the Defendant's burden on this motion. *See id.* at 259 n. 27 (defendants submitted affidavits identifying witnesses in general terms who were beyond the reach of compulsory process, including "the persons responsible for servicing and maintaining the aircraft"). Given the nature of the case, this representation is credible. In addition, it is bolstered by the fact that, even if such potential third-parties never materialize, there are undeniably witnesses who are beyond this court's jurisdiction ( *e.g.,* the officer who investigated the scene in the immediate aftermath of the accident). [FN5] *See*

*Docket No. 13* at Exhibit 4 ("Translated Accident Report" of Venezuelan officer who investigated the accident scene). "Such difficulties in obtaining testimony and evidence located in foreign jurisdictions is a strong factor favoring *forum non conveniens* dismissal." *Torreblanca de Aguilar v. Boeing Co.,* 806 F.Supp. 139, 144 (E.D.Tex.1992), *aff'd,* 11 F.3d 55 (5th Cir.1993).

Finally, the Plaintiffs maintain that the political situation in Venezuela is such that trial would be more convenient in this country. *Docket No. 19* at 15-16. The Defendant has failed to address this matter. Nevertheless, this court is nonetheless unpersuaded by the Plaintiffs' contention. No actual evidence appears to have been submitted in support of this contention. Instead, the Plaintiffs appear to be relying principally on the testimony of an expert witness in another case in another federal forum. *See In re Bridgestone/Firestone,* 190 F.Supp.2d at 1153 (citing expert's written evaluation of Venezuelan judiciary and citing other documents not provided to this court). The Plaintiffs have provided this court with at least one other expert report from the *In re Bridestone/Firestone* litigation in the Southern District of Indiana. *See Docket No. 18* at Exhibit B ("Foreign Law Affidavit of James Otis Rodner"). However, the Plaintiffs have failed to provide this court with a copy of the relevant written report of the expert who opined in that case on the state of the Venezuelan judiciary, which renders it impossible for the court to independently assess the expert's opinion and its relevance to this case.

*9 Moreover, this court notes that, even if it is taken at face value, much of the information relied on by the Plaintiffs concerning the political and judicial situation in Venezuela is somewhat dated. For example, Plaintiffs rely on events that occurred or information that dates from 1997, 1999, and 2001. *Docket No. 19* at 15-16. None of these say anything about the state of the nation, its government, or its judicial branch at present. *Cf. Delgado,* 890 F.Supp. at 1357 (noting that political conditions bearing on the judiciary in Nicaragua had since changed for the better "since plaintiffs briefed the issue"). The most recent information alluded to by the Plaintiffs--the court uses the phrase "alluded to" because Plaintiffs have not actually provided the court with any of the documents that it references in this portion of their

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                                    Page 8
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

briefing--is a press release from the Venezuelan embassy that purportedly relates that "confidence in the Venezuelan judicial system is 59%, amid accusations by the private media that the court follows government orders." *Id.* at 16.

Frankly, this court is at a loss as to how to meaningfully evaluate such generalizations, particularly in light of the overall lack of specific evidence on this point. Although the Fifth Circuit has indicated that it might consider political unrest and delays resulting therefrom in assessing the private interest factors, *see Vasquez,* 325 F.3d at 673 (distinguishing *In re Bridgestone/Firestone* on the basis that the district court therein "believed that political unrest could make trial ... difficult"), this court has been unable to locate a single opinion from this circuit that has done so. The sole court from within this circuit to address a like argument rejected it on the evidence submitted. *See Delgado,* 890 F.Supp. at 1357 (addressing and rejecting the more ambitious argument that "the courts of Nicaragua are unavailable because they are not functioning"). Given the paucity of evidence and information submitted to this court on the issue, this court likewise rejects the instant Plaintiffs' similar contentions.

Finally, as pertains to this subject, it is worth noting that even in *In re Bridgestone/Firestone,* in which the court accepted the plaintiffs' political unrest argument concerning Venezuela, it "accord[ed] this factor only slight weight in favor of retaining jurisdiction" due to a dearth of evidence. *In re Bridgestone/Firestone,* 190 F.Supp.2d at 1153. The district court in that case went on to note that a (convincing) argument against *forum non conveniens* dismissal premised on delay due to political unrest and the like should involve "exact evidence for the length of the delay and a delay of many years." *Id.* (citing *Bhatnagar v. Surrendra Overeas Ltd.,* 52 F.3d 1220, 1227-29 (3d Cir.1995), in which credible expert testimony established that litigation in India could take up to twenty-five years to complete). [FN6] Such evidence is lacking in this case, and the Plaintiffs may not simply rely on materials discussed in an opinion from another jurisdiction in a case that also involved Venezuelan plaintiffs. [FN7] *Bhatnager,* 52 F.3d at 1230.

*10 The preceding presentation of this court's consideration of private interest factors might give the (mistaken) impression that the court placed the burden of persuasion on the Plaintiffs. Nothing could be further from the truth. The court has focused principally on the Plaintiffs' counter-arguments regarding the private interest factors due to the fact that the Defendant has demonstrated that the factors otherwise uniformly point toward dismissal. As the Defendant states in the opening paragraph of the introduction of its *forum non conveniens* motion:

> This case has absolutely no connection to Texas. This suit arose out of a single-vehicle accident that occurred in Venezuela. All of the Plaintiffs are citizens of Venezuela. The sole occupant of the vehicle was a Venezuelan citizen and resident who received medical treatment only in Venezuela. The vehicle at issue was manufactured in Venezuela. It was originally sold in Venezuela. It was owned by a Venezuelan resident and citizen. The accident was investigated by Venezuelan authorities.

*Docket No. 13* at 3. The evidence supports these contentions. *See id.* (citing Plaintiffs' Original Petition, Translated Accident Report, and Affidavit of Roger Chen). The Plaintiffs do not dispute these facts. Indeed, the Plaintiffs have tacitly acknowledged their accuracy. *See Docket No. 34* (attaching as "Exhibit C" the Defendant's responses to *forum non conveniens*- related interrogatories and requests for admissions); *see also Docket No. 42* (attaching as "Exhibit B" Defendant's responses to supplemental interrogatories and requests for admissions). [FN8] Plaintiffs merely maintain instead that the foregoing facts are irrelevant. *See, e.g., Docket No. 34* at 13 ("That the vehicle was 'finally assembled' and purchased in Venezuela is of no import ...."). Fifth Circuit case law and case law from within the circuit contradicts the Plaintiffs' position. *See Gonzalez,* 301 F.3d at 379 ("Texas, however, has a tenuous connection to the underlying dispute. Neither the car nor the airbag module was designed or manufactured in Texas. The accident took place in Mexico, involved Mexican citizens, and only Mexican citizens witnessed the accident. Moreover, Gonzalez purchased the Chrysler HLS in Mexico ...."); *Urena-Taylor,* 196 F.Supp.2d at 433 ("The decedent was a Mexican citizen; the plaintiffs are all Mexican citizens ...; the accident occurred in Mexico in a vehicle that was maintained in Mexico. All medical and law enforcement personnel and physical evidence are in Mexico.... Under these

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

circumstances, Mexico is the most appropriate forum available."); *see also Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 804 (7th Cir.1997) ( "Here, we do not even have an American plaintiff. Instead, we have a foreign plaintiff who was injured in a foreign land filing suit against an American defendant with extensive foreign dealings. The district court thus made a permissible inference that Indiana residents have a mere passing interest in this case."). [FN9]

## IV. PUBLIC INTEREST FACTORS

*11 The parties have likewise devoted considerable efforts contending that the public interest factors support their respective forum preferences. *See Docket No. 13* at 13-18 (Defendant's arguments); *Docket No. 19* at 16-20 (Plaintiffs' arguments); *Docket No. 34* at 16-18 (same); *Docket No. 42* at 7-9 (same). As the private interest factors strongly and uniformly point toward trial in a Venezuelan forum, *see supra* Part III, this court need not, and does not, discuss these arguments in detail. *Baumgart*, 981 F.2d at 835-36; *Empresa Lineas Maritimas Argentinas, S.A.*, 955 F.2d at 376. However, given the time expended on these factors by counsel, the court feels obligated to comment that the public interest factors mostly appear to favor trial abroad as well.

With the exception of the first factor concerning docket congestion--this court's current civil docket is quite manageable and thus poses no obstacle to the instant suit--the factors all indicate that trial in Venezuela would be more appropriate and convenient. Contrary to the Plaintiffs' assertion of a public safety policy interest in this suit on the part of the United States, *Docket No. 42* at 8-9, the locality of interest in this case is Venezuela. *See Vasquez*, 325 F.3d at 673 (stating that "Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there"). The Supreme Court has already indicated that domestic public policy concerns regarding consumer safety are insufficient to establish a local interest on the part of American courts in favor of retaining jurisdiction. *See Piper Aircraft Co.*, 454 U.S. at 260-61 (rejecting argument that trial in the United States would serve "an interest in ensuring that American manufacturers are deterred from producing defective products"). Although the court finds it unnecessary to definitively resolve the issue, a recent Fifth Circuit case with a substantially similar fact pattern suggests that Venezuelan law would apply to this suit if it remained in this court. *See Vasquez*, 325 F.3d at 674 ("Even if the design of the tires and vehicles is characterized as the conduct causing injury, the aggregate of other specific contacts favors application of Mexican law."). Accordingly, the third public interest factor counseling trial in a forum familiar with the governing law likely points abroad. The parties voluminous and contentious wrangling concerning the contours of Venezuelan law, *see Docket Nos. 14, 18, 22, 35*, reinforces this impression. As previously noted, *see supra* note 4, the desirability of avoiding the complexity of choice of law inquiries in general and an unfamiliarity with Venezuelan law that necessarily adds to such complexity weighs in favor of trial abroad as well under the fourth public interest factor. Finally, the fifth public interest factor--the unfairness of burdening citizens in an unrelated forum with jury duty--heavily weighs in favor of dismissal in this instance. *See Urena Taylor*, 196 F.Supp.2d at 434 ("Given the limited contacts this case has with Texas, it would be an injustice to impose the burden of jury duty upon the people of this state having no relation to this litigation.").

## V. BURDEN OF PERSUASION

*12 The Plaintiffs in this case seek to alter the court's foregoing analysis of the balance of private interest factors by arguing that the Defendant is saddled with a heavier burden of persuasion than that which normally obtains in a *forum non conveniens* motion involving foreign plaintiffs. In general, a defendant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum" and its "burden of persuasion runs to all the elements of the *forum non conveniens* analysis." *In re Air Crash*, 821 F.2d at 1164. The particular weight of this burden varies somewhat, however, depending on the circumstances of the case.

[6] In *Gulf Oil Co.*, the Supreme Court indicated that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Co.*, 330 U.S. at 508. However, the parties in *Gulf Oil Co.* were both citizens of the United States litigating a dispute that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 10

stemmed from an accident that took place in the United States. *Id.* at 502-03; *see also id.* at 512 (Black, J., dissenting). Where, as here, a case involves foreign plaintiffs attempting to litigate an accident that occurred on foreign soil in United States courts, plaintiffs' "choice deserves less deference." *Piper Aircraft Co.,* 454 U.S. at 256; *see also Baumgart,* 981 F.2d at 836 n. 12 (citing *Piper Aircraft Co.* for the foregoing proposition); *Great Prize, S.A. v. Mariner Shipping Pty., Ltd.,* 967 F.2d 157, 160 (5th Cir.1992) ("The strong presumption in favor of the plaintiff's choice of forum applies with less force when the plaintiff is a foreign national."). Indeed, in *Piper Aircraft Co.,* the Court indicated that, when a "plaintiff is unable to offer any specific reasons of convenience supporting his choice" of forum and said choice imposes "a heavy burden" on a defendant, "dismissal will ordinarily be appropriate," which suggests, perhaps, that foreign plaintiffs bear some persuasive obligations as well once the *forum non conveniens* issue has been credibly raised by a defendant. *Piper Aircraft Co.,* 454 U.S. at 249; *see also Empresa Lineas Maritimas Argentinas, S.A.,* 955 F.2d at 373 ("When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice.").

The Plaintiffs in this case seek to avoid the aforementioned judicial skepticism concerning suits by foreigners brought in United States federal courts by effectively disclaiming their status as foreigners. Specifically, Plaintiffs argue that they are entitled by rights conferred in a treaty between the United States and Venezuela to be treated as if they were United States citizens in this lawsuit. *Docket No. 19* at 10-11 (citing and discussing the **Treaty** of **Peace, Friendship,** Navigation, and Commerce, Jan. 20, 1836, U.S.- Venez., art. 13, 8 Stat. 466, *available at* 1836 WL 3643). On the basis of this treaty, the Plaintiffs argue that they should be accorded the same treatment that would be afforded to American citizens in the court's *forum non conveniens* analysis, and they likewise contend that "the existence of this Treaty makes it reasonable to assume that the forum choice of the Plaintiffs herein is convenient in spite of the fact that they are foreigners." *Id.* at 11.

**\*13** At least one federal appellate court has adopted the very position advocated by the Plaintiffs. *See Blanco v. Banco Industrial de*

*Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir.1993) ("Because such a treaty exists between the United States and Venezuela ... no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because Proyecfin is a foreign corporation."). The Second Circuit Court of Appeals decision was premised on the notion "that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts." *Id.* However, it is not altogether clear that the Second Circuit has properly construed the relevant treaty provision. The provision in question provides that:

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, *who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein,* leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens *of the country in which they may be;* for which they may employ in defence [sic] of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals, in all cases which may concern them; and likewise at the taking of all examinations and evidence which may be exhibited on the said trials.

**Treaty of Peace, Friendship,** Navigation, and Commerce, Jan. 20, 1836, U.S.- Venez., art. 13, 8 Stat. 466, *available at* 1836 WL 3643 (emphasis added). By its express terms, this treaty provision requires that the signatories' courts be open to foreign nationals who happen to be located within the territory of the other. In other words, this treaty applies to Venezuelans present in the United States and citizens of the United States present in Venezuela. Nothing within this provision suggests that Venezuelan plaintiffs not located in the territory of the United States may bring suit within the latter's courts for events that took place abroad on equal footing with citizens of the United States or *vice versa.*

Furthermore, the Second Circuit nonetheless engaged in the traditional *forum non conveniens*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 11

analysis even after having interpreted the treaty in the manner proposed by the instant Plaintiffs. *Blanco,* 997 F.2d at 980-84. In fact, the *Blanco* court went on to find that Venezuela provided an adequate and available forum and that the public and private interest factors favored dismissal. *Id.* Indeed, the court of appeals affirmed the district court's dismissal, notwithstanding the fact that the parties had a contractual provision establishing mutual consent to trial in New York. *Id.* at 979-80.

*14 The Fifth Circuit has elsewhere acknowledged the Plaintiffs' argument, but it has not decided whether to accept the position embraced by the Second Circuit. *See James v. Gulf Int'l Marine Corp.,* 777 F.2d 193, 194 & n. 2 (5th Cir.1985) (addressing a somewhat similar provision in a treaty between the United States and Honduras but failing to decide the issue because it was not raised in the trial court). The Fifth Circuit Court of Appeals has indicated that, at a minimum, it will not construe general jurisdictional language in treaty provisions as casting aside the *forum non conveniens* doctrine. *See In re Air Crash,* 821 F.2d at 1160-62 (rejecting assertion that signing of Warsaw Convention suspended "a federal court's power to apply the doctrine of *forum non conveniens* in a case governed by the Convention"). However, it is one thing to hold that treaty provisions will not be construed as abrogating a longstanding legal doctrine in the absence of a more explicit statement to that effect and quite another to hold that a treaty provision will have no impact whatever on a federal court's *forum non conveniens* analysis.

At least one lower court within this circuit has reviewed a motion to dismiss on the basis of the *forum non conveniens* doctrine "under the higher standard that requires defendants to overcome the presumption accorded the plaintiffs' chosen forum by proving that the balance of interests points clearly toward trial in the alternative forum." *Delgado,* 890 F.Supp. at 1366 (citing and relying on *Blanco,* 997 F.2d at 981). However, the *Delgado* opinion is distinguishable on at least two grounds ( *viz.* some of the plaintiffs resided in the United States, and a jurisdictional provision of the Texas Civil Practice and Remedies Code was also at issue that has not been raised in this proceeding), and the court specifically noted that it found no Fifth Circuit authority akin to *Blanco.* Moreover, the *Delgado* court's decision about the appropriate standard was

not outcome determinative, as the court found that the higher standard was easily satisfied. *Delgado,* 890 F.Supp. at 1369. More recently, other district courts within this circuit have rejected arguments that general treaty provisions guaranteeing equality "before the courts" compel deference to a foreign plaintiff's choice of forum in the *forum non conveniens* context. *See Dominguez-Cota v. Cooper Tire & Rubber Co.,* 284 F.Supp.2d 444, 450 (N.D.Miss.2003) ("By giving a foreign plaintiff's choice of an American forum less deference than an American plaintiff's choice of a domestic forum, a court is not violating treaty obligations, but rather performing the *forum non conveniens* balancing test approved by the Supreme Court."); *Zermeno v. McDonnell Douglas Corp.,* 246 F.Supp.2d 646, 661-62 (S.D.Tex.2003) (same).

Given the text of the treaty provision at issue and case law concerning not altogether dissimilar treaty provisions, [FN10] this court is dubious about the contention being advanced by the Plaintiffs. In addition, this court is somewhat skeptical that the treaty argument being plied by the Plaintiffs might have much bearing on a discretionary decisions concerning *forum non conveniens* even if accepted. *See Empresa Lineas Maritimas Argentinas, S.A.,* 955 F.2d at 373 (holding that district courts in this circuit need not state the degree of deference "accorded a plaintiff's forum choice" and refusing to find an abuse of discretion in an instance in which a court failed to do so). However, the court ultimately finds that it need not decide this issue, as the private interest factors, *see supra* Part III, clearly point towards trial in Venezuela. *See Vasquez,* 325 F.3d at 672 (holding that the appellate court need not decide same type of argument that is advanced in this case, albeit on the basis of different treaty, "because the private and public factors 'clearly point towards' trial" abroad); *see also James,* 777 F.2d at 194 n. 2 (noting that, even when courts have accepted arguments akin to those being advanced by the instant Plaintiffs, these "courts have dismissed the suits where the balance weighs in favor of another forum"). The decision in *Blanco,* on which the Plaintiffs heavily rely, reflects the accuracy of the *James* court's observation. *See Blanco,* 997 F.2d at 981 (holding that "that the presence of an adequate Venezuelan forum, and the strong adverse balance of *Gilbert* private and public factors, outweigh the initial choice of [the foreign plaintiff] of a New York forum").

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 12

## VI. CONCLUSION

*15 For the foregoing reasons, this court hereby finds that Venezuela provides an adequate and available alternative forum for this litigation. In addition, this court finds that the private interest factors uniformly favor dismissal of this case on the ground of *forum non conveniens*. The private interest factors point toward trial in Venezuela with sufficient force to obviate any need to consider the public interest factors. *Baumgart*, 981 F.2d at 835-36; *Empresa Lineas Maritimas Argentinas, S.A.*, 955 F.2d at 376. The foregoing determinations also render the parties' choice-of-law motions moot and the court hereby DENIES them on this ground. Accordingly, this court conditionally GRANTS Ford Motor Company's Motion to Dismiss on *Forum Non Conveniens* Grounds and conditionally DISMISSES this case. In keeping with the law of the circuit, this court conditions its dismissal as follows:

First, the court grants this dismissal subject to a return jurisdiction clause. *See Vasquez*, 325 F.3d at 675 (reversing and remanding because district court failed to include a clause "permitting parties to return to the dismissing court should the lawsuit become impossible in the foreign forum"); *see also In re Air Crash*, 821 F.2d at 1166 (requiring district courts to "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum"). Should legal proceedings in Venezuela prove impossible for any reason other than the Plaintiffs' unwillingness to fulfill the procedural niceties necessary for a Venezuelan court to assert jurisdiction with the consent of the parties, this court will reassert its jurisdiction over the matter. Similarly, failure to comply with any of the conditions elaborated below constitutes grounds for reassertion of jurisdiction by this court. *See Seguros Comercial Americas S.A. de C.V.*, 933 F.Supp. at 1315 (providing for resumption "of jurisdiction over this case if Defendant fails to meet any of the above conditions").

Second, the court conditions dismissal on the Defendant's agreement to appear and submit itself to the jurisdiction of the Venezuelan courts, waiving any jurisdictional defenses it might otherwise

possess. *See Great Prize, S.A.*, 967 F.2d at 159 (district court below so conditioned dismissal); *Urena-Taylor*, 196 F.Supp.2d at 434 (district court so conditioned dismissal).

Third, dismissal is similarly conditioned on Defendant's waiver of statute of limitations or laches-related defenses that it did not possess at the time the Plaintiffs' Original Petition was filed in state court. *See Great Prize, S.A.*, 967 F.2d at 159 (district court below so conditioned dismissal); *Urena-Taylor*, 196 F.Supp.2d at 434-35 (district court so conditioned dismissal).

Fourth, the court's order of dismissal is conditioned on the Defendant's agreement to submit to discovery in the Venezuelan forum per its procedural rules. *Urena-Taylor*, 196 F.Supp.2d at 435 (requiring defendants to "produce in Nuevo Leon, Mexico all reasonable discovery requests by the plaintiffs").

*16 Fifth, the court's order of dismissal is conditioned on the Defendant's agreement to make its witnesses and evidence available in the Venezuelan proceedings. *See Seguros Comercial Americas S.A. de C.V.*, 933 F.Supp. at 1315 (conditioning dismissal on defendant's obligation to "make available in the Mexican proceedings all relevant documents and witnesses within its control").

Sixth, the court's dismissal is conditioned on the Defendant's agreement to bear any translation-related expenses concerning the testimony of English- speaking witnesses at trial.

Seventh, the court's dismissal is conditioned on the Defendant's agreement to allow the use of all discovery obtained thus far in proceedings in the United States in the subsequent Venezuelan suit. *See Seguros Comercial Americas S.A. de C.V.*, 933 F.Supp. at 1315 (conditioning dismissal on defendant's obligation to "make available any discovery taken in this action in the Mexican proceeding").

Eighth, the court's dismissal is conditioned on the Defendant's agreement to satisfy any Venezuelan judgment, subject only to whatever appellate rights it may enjoy in that forum. The court's dismissal is further conditioned on the Defendant's agreement to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 13

the reassertion of jurisdiction by this court in the event that it fails to satisfy any final judgment. *See Baumgart,* 981 F.2d at 836 n. 13 (noting that district court had imposed such a satisfaction condition and required an agreement that the defendant would "submit to the district court's retention of jurisdiction over the matter in the event that any judgments were not satisfied"); *Great Prize, S.A.,* 967 F.2d at 159 (same).

In keeping with the conditional nature of this order of dismissal, dismissal of the case from this court's docket shall become effective once the Defendant has tendered a written statement assenting to be bound by the foregoing conditions. Should the Defendant fail to do so within ten (10) business days of the entry of this order, its *forum non conveniens* motion will be considered waived, and this case will proceed to trial in this court.

> FN1. Even in a diversity action, a federal court applies the federal law of *forum non conveniens* rather than any state-law counterpart. *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993); *see also Am. Dredging Co.,* 510 U.S. at 453 (stating of *forum non conveniens* that "the doctrine is one of procedure rather than substance"); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that federal courts sitting in diversity are to apply state substantive law but federal procedural law).

> FN2. Although the parties are in dispute as to the applicable law and are also in disagreement concerning the nature of Venezuelan substantive law on several points, *see Docket Nos. 14, 18, 22, 35,* the Defendant has argued that the Venezuelan body of law that it believes is applicable is "adequate" as that term is defined for purposes of federal *forum non conveniens* law. *Docket No. 13* at 7-9. The Plaintiffs do not contest this issue in their filings with this court. Although one subheading of "Plaintiffs' Response to Defendant's Motion to Dismiss For *Forum Non Conveniens* " is entitled "Plaintiffs' choice of forum should be upheld because an

adequate alternative forum does not exist under Venezuelan law," *Docket No. 19* at 7, this section of the Plaintiffs' argument solely addresses and disputes the availability of a Venezuelan forum rather than its adequacy. *See id.*at 7-10. Nowhere else do the Plaintiffs assert that Venezuela constitutes an inadequate forum. Indeed, the Plaintiffs elsewhere maintain that "there is no real difference between the laws of Venezuela and Texas," *Docket No. 35* at 1, which, of course, precludes any contention that Venezuelan courts are an inadequate forum for this litigation.

> FN3. The district court in *Canales Martinez* effectively did hold that the doctrine of *forum non conveniens* is nonexistent with reference to Costa Rican plaintiffs involved in lawsuits such as the instant one in the absence of the plaintiffs' consent to the foreign forum. *See Canales Martinez,* 219 F.Supp.2d at 728 ("Were this court to dismiss this action conditioned on plaintiffs' refiling it is Costa Rica and having the Costa Rican court accept the case ... the [c]ourt would be forcing the plaintiffs to try to file the lawsuit in Costa Rica in violation of articles 122 and 477."). This court has some doubts concerning the correctness of the *Canales Martinez* decision on this point. First, the applicability of articles 122 and 477, each of which merely specify that parties cannot be forced to bring lawsuits, is not self-evident from the face of *Canales Martinez* opinion. The plaintiffs in that case, like the plaintiffs herein, have, in fact, already voluntarily brought suit. The relevant question raised by the *forum non conveniens* inquiry is not whether plaintiffs may be forced to sue, but rather in what forum the litigation that they have initiated should proceed. Second, the *Canales Martinez* court arrived at the foregoing conclusion only after it had already accepted the Costa Rican plaintiffs' jurisdictional contention that "the action originates from acts undertaken, and decisions made, by the defendant companies at their highest levels

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

in their corporate headquarters in the United States." *Canales Martinez,* 219 F.Supp.2d at 726. The Fifth Circuit has since rejected this very argument. *Vasquez,* 325 F.3d at 673-74. Therefore, to whatever extent *Canales Martinez* was good law, it, perhaps, has little or no continuing vitality.

Setting aside the foregoing doubts, the case at hand is also distinguishable from the decision in *Canales Martinez* in a couple of critical respects. First, in arriving at its decision, the *Canales Martinez* court relied on a specific Costa Rican case that construed its country's jurisdictional provisions and found jurisdiction wanting after a United States court had dismissed it on the basis of the *forum non conveniens* doctrine. *Canales Martinez,* 219 F.Supp.2d at 726-27, 729. No such equivalent Venezuelan case law has been proffered to this court. In the absence of such case law, this court's inclusion of a return jurisdiction clause is sufficient to safeguard against a subsequent determination by the Venezuelan courts that they lack the jurisdiction to hear this case. *See Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1356-57 (S.D.Tex.1995) (rejecting argument that defendants' consent was insufficient to render foreign forums available in a case that involved some Costa Rican plaintiffs on account of the court's inclusion of a return jurisdiction clause in its *forum non conveniens* dismissal), *aff'd,* 231 F.3d 165 (5th Cir.2000), *cert. denied sub nom. Rodriguez-Delgado v. Shell Oil Co.,* 537 U.S. 1229, 123 S.Ct. 1350, 154 L.Ed.2d 1095 (2003); *see also Canales Martinez,* 219 F.Supp.2d at 729 (discussing the procedural history of the *Delgado* case after the *forum non conveniens* dismissal). Second, the Venezuelan jurisdictional provisions at issue in this case are distinguishable from the Costa Rican provisions discussed in *Canales Martinez.* Plaintiffs in this case do not raise the precise arguments addressed by the *Canales Martinez* court; nor have the parties brought to this court's attention any Venezuelan legal provisions equivalent to Costa Rican articles 122 and 477.

Similarly, the parties in this case have not brought to this court's attention any provisions akin to article 31 of the Costa Rican Code of Civil Procedure, upon which the *Canales Martinez* court heavily relies. *See Canales Martinez,* 219 F.Supp.2d at 728.

FN4. The parties have filed multiple documents concerning the choice of law issue. *See Docket Nos. 14, 18, 22, 35.* In summary, the Defendant argued that Venezuelan law should be applied in the event that this court decided to retain this case. The Plaintiffs contended that Texas law should apply in this diversity action. As the court has decided to dismiss the lawsuit on the basis of the *forum non conveniens* doctrine, the issue is superfluous and the court hereby denies all motions relating thereto as being moot. The court has given the choice of law issue little consideration in arriving at its decision on Defendant's motion to dismiss on the basis of *forum non conveniens. See Piper Aircraft Co.,* 454 U.S. at 251 ("If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions ."). The Supreme Court went on to note with reference to the public interest factors that, "[t]he doctrine of *forum non conveniens* ... is designed in part to help courts avoid conducting complex exercises in comparative law." *Id.*

FN5. The Plaintiffs attempt to counteract this fact by noting that both "Sgt. Elias Pena, the officer who investigated the accident, and Dr. Torres Macho, the attending physician of Clinica San Jose" have declared "under penalty of perjury ... their willingness to present themselves and provide testimony regarding this case in either Venezuela or Aruba." *Docket No. 19* at 13; *see also Docket No.27* (English

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

translation of the declarations in question). Plaintiffs feel that "[t]hese declarations should allay the Defendant's concern with regard to compelling key witnesses to testify at trial." *Docket No. 19* at 13. However, the declarations do not actually commit the persons in question to appear at trial. Moreover, even were they to do so, the declarations are not binding in the Southern District of Texas. These persons are beyond the reach of this court, and this court is powerless to compel these individuals to live up to their declarations. In addition, it is telling that the Plaintiffs do not in any fashion obligate themselves to ensure that the persons in question will be available for trial in the United States. Rather, these declarations bind only Pena and Macho--who are each located far from this court's jurisdiction. This is not the only district court in Texas that is skeptical of such assurances. *See Urena-Taylor*, 196 F.Supp.2d at 433 ("The plaintiffs have asserted that they, the plaintiffs, will be available and present in a U.S. court. However, they cannot guarantee the availability of any of the necessary witnesses who might be unwilling to appear and this court cannot summon them.").

FN6. It should be noted that the *Bhatnager* court did not consider the delay at issue in that case in weighing the private interest factors. As in *Delgado*, the *Bhatnager* court considered the state of the foreign judiciary as it related to the Indian courts' availability as an alternate forum. The Third Circuit held "that delay of the magnitude described in the Bhatnagers' experts' affidavits can render an alternative forum inadequate as a matter of law." *Bhatnager*, 52 F.3d at 1228. Having failed to demonstrate that Venezuela's judicial situation should be taken into account in weighing the private interest factors, Plaintiffs have likewise failed to make the more demanding showing that Venezuela is an inadequate forum as a matter of law on this basis.

FN7. The Third Circuit's opinion in *Bhatnager* is worth quoting at length on this point:
We should not be read to conclude that the courts of India are always inadequate fora, making *forum non conveniens* dismissal inappropriate whenever an Indian national sues in the United States. That is neither the thrust nor the end point of our analysis. In reaching its conclusion that India was an inadequate alternative forum in this case, the district court was essentially concluding that Surrendra had not met its burden of proof on that threshold issue. We agree. It may well be that the next defendant to face the same issue faced by Surrendra would reach a different result because it would marshal more--or better--proof. Furthermore, another district court presented with the same raw evidence might reach different factual conclusions, and we might be constrained under our lenient standards of review to affirm in that case, as well.
52 F.3d at 1230.

FN8. The interrogatories state that the vehicle in question "was not assembled in the United States." *Docket No. 34* at Exhibit C (Interrogatory Nos. 7-8). It appears to have been "finally assembled in Venezuela." *Id.* (Interrogatory Nos. 11-12). Ford played some part in the vehicle's assembly, but did so outside of the United States. *Id.* (Request for Admission No. 9). Ford admits that the vehicle was "designed, in part, ... in the United States." *Id.* (Request for Admission Nos. 3, 7). It also admits that the vehicle was "tested, in part, ... in the United States" as well. *Id.* (Request for Admission Nos. 4, 7). Supplemental discovery responses provide more detail, but they do not alter the complexion of the case. *See, e.g., Docket No. 42* at Exhibit B (Interrogatory Nos. 7-8) ("The subject 2001 Ford Explorer was not finally assembled in the United States--it was finally assembled at Ford of Venezuela's Valencia plant. It is Ford's reasonable belief that seventy- two [72] percent of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

parts installed in the 2001 Explorer assembled in Venezuela were supplied by a U.S. manufacturer, although some of those parts may have in fact been manufactured or assembled at facilities outside of the United States."). At most, the interrogatories and requests for admissions at issue establish a connection to the United States that has been held to be insufficient to defeat a motion to dismiss based on the *forum non conveniens* doctrine. *Vasquez,* 325 F.3d at 673-74. They do not gainsay the Defendant's otherwise uncontradicted contentions that this case's circumstances are overwhelmingly connected with Venezuela.

FN9. The *Gonzalez* court went on to reiterate and underscore the foregoing observations in its conclusion. The court of appeals wrote that:
The district court found that almost all of the private and public interest factors pointed away from Texas and toward Mexico as the appropriate forum. It is clear to us that this finding does not represent an abuse of discretion. After all, the tort victim was a Mexican citizen, the driver of the Chrysler HLS (Gonzalez's wife) is a Mexican citizen, and the plaintiff is a Mexican citizen. The accident took place in Mexico. Gonzalez purchased the car in Mexico. Neither the car nor the air bag was designed or manufactured in Texas. In short, there are no public or private interest factors that would suggest that Texas is the appropriate forum for the trial of this case.
301 F.3d at 383-84. Given the circuit's subsequent determination that design within the United States is an insufficient basis for controverting an otherwise valid *forum non conveniens* motion, *Vasquez,* 325 F.3d at 673-74, the fact that some design took place in this country is also irrelevant.
Moreover, even if the location of the product's design was relevant, it is worth noting that the Plaintiffs have not even suggested let alone demonstrated that the vehicle at issue was designed in Texas.

Apart from the location of Plaintiffs' lawyers, there does not appear to be any documented connection to this forum. In making their design-oriented *forum non conveniens* argument, Plaintiffs routinely refer to generic connections with the United States. *See, e.g.,* Docket No. 34 at 13-14 (noting that documents and potential witnesses are located in the United States); *Docket No. 42* at 3-6 (arguing that the relevant documents and experts are located in the United States). There is literally no indication whatever in the record that explains why this Defendant, a Delaware corporation with its principal place of business located in Dearborn, Michigan, *Docket No. 1* at ¶ 7, is being sued in this particular forum. The Plaintiffs have "pointed to no specific interests favoring retention of jurisdiction. None of the parties, witnesses or sources of proof reside in the [Southern District of Texas]." *Veba-Chemie, A.G.,* 711 F.2d at 1249; *see also Urena-Taylor,* 196 F.Supp.2d at 434 ("[C]ertain evidence that may prove germane to the instant action is located in the United States. None of this evidence, as far as the court is aware, is stored in Texas and accordingly some inconvenience will necessarily be involved in transporting it for trial in this court."); *Torreblanca de Aguilar,* 806 F.Supp. at 144 ("The fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum.").

FN10. Both of the lower court decisions cited construed article 14(1) of the International Covenant on Civil and Political Rights, which provides that "[a]ll persons shall be equal before the courts and tribunals" of the signatories. *Dominguez-Cota,* 284 F.Supp.2d at 450 & n. 2; *Zermeno,* 246 F.Supp.2d at 661 & n. 7 . In dicta, a panel of the Fifth Circuit has indicated that it did not view the aforementioned treaty provision as being similar enough to the instant treaty

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

provision to be instructive in terms of how to construe the former with reference to the *forum non conveniens* doctrine. *Vasquez,* 325 F.3d at 672 n. 5.

2004 WL 825641, 2004 WL 825641 (S.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

FILED

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| CIRIACO GONZALEZ, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | P-02-CA-137 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

*CONSOLIDATED WITH*

| | | |
|---|---|---|
| ROSAURA LINARES CARMONA | § | |
| GUTIERREZ, Individually and as Wife | § | |
| of EDGAR GUTIERREZ, Deceased, and | § | |
| as Mother of EDWARD GUTIERREZ, | § | |
| and FANNY ESPERANZA SANDOVAL, | § | |
| Individually and as Parent of EDGAR | § | |
| GUTIERREZ, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | P-02-CA-016 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

**ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Before the Court is Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*, filed on June 6, 2003 in the above-captioned matter. The Plaintiffs' Memorandum in Response to the Motion of Defendant Ford Motor Company to Dismiss on the Grounds of *Forum Non Conveniens* was filed on August 14, 2003. Defendant Ford Motor Company's Reply to Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss on the

K:\A grawar\civil\Gutierrez [4-02-CV-016]\sc.wpd                    1



15

Grounds of *Forum Non Conveniens* was filed on August 20, 2003. Finally, a hearing on the Motion to Dismiss was held on August 20, 2003. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendant's Motion should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This consolidated case arose out of an accident that occurred on February 20, 2000 in Venezuela. On that day, Edgar Gutierrez was driving a 1998 Ford Explorer when he lost control of the vehicle. As a result of the ensuing accident, Gutierrez lost his life and Plaintiff Ciriaco Gonzalez, one of the passengers in the vehicle, was injured. Mr. Gutierrez's wife, Plaintiff Rosaura Linares Carmona Gutierrez, as well as his parent, Plaintiff Fanny Esperanza Sandoval, brought suit on his behalf against Ford Motor Company (Ford), Border Transfer Services, Inc., and Del Rio Test Center, Inc. in the 143rd Judicial District Court of Reeves County, Texas on February 4, 2002. Ford subsequently removed the case to this Court on March 13, 2002, and the case was assigned Cause Number P-02-CA-016. In contrast, Plaintiff Ciriaco Gonzalez's lawsuit against Ford was originally filed in this Court on December 27, 2002 under Cause Number P-02-CA-137. Both lawsuits alleged strict liability and negligence claims against Ford arising out of the February 20, 2000 accident.

On June 16, 2003, the Court ordered the two lawsuits consolidated under Cause Number P-02-CA-016. Prior to consolidation, the case filed on behalf of Edgar Gutierrez had an extensive procedural history which bears recounting here. As mentioned before, Plaintiffs Rosaura Linares Carmona Gutierrez and Fanny Esperanza Sandoval originally sued Ford, Border Transfer Services, Inc. (Border Transfer), and Del Rio Test Center, Inc. (Del Rio) in state court. After the case was removed to this Court, the Plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice on

April 22, 2002 as to the entire cause of action. Accordingly, the Court entered an Order on Voluntary Dismissal Without Prejudice on April 24, 2002 and the case was closed. Then, on July 9, 2002, the parties filed a Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. In response, the Court issued an Order to Show Cause on August 14, 2002. After the parties failed to respond to the Order to Show Cause, the Court entered an Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on September 5, 2002.

One week later, on September 12, 2002, the Plaintiffs filed an Emergency Motion for Reconsideration of Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. The Court therefore entered an Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on November 6, 2002. The case was thus resurrected, and a Scheduling Order was entered on February 10, 2003.

The history of this case continues. Due to ambiguity in the language of the Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice, it was not clear whether the Plaintiffs wished to maintain their causes of action against Border Transfer and Del Rio in addition to Ford subsequent to the reopening of the lawsuit. Thus, on May 27, 2003, the Plaintiffs filed a Notice of Voluntary Dismissal of Defendants Border Transfer Services, Inc. and Del Rio Test Center, Inc. The Court

accordingly entered an Agreed Order of Voluntary Dismissal of Defendants Del Rio Test Center, Inc. and Border Transfer Services, Inc. on May 28, 2003. Shortly thereafter, on June 16, 2003, the case was consolidated with Plaintiff Ciriaco Gonzalez's lawsuit against Ford arising out of the same accident in Venezuela. As such, the parties presently before the Court for the purpose of this Order are Defendant Ford Motor Company and Plaintiffs Ciriaco Gonzalez, Rosaura Linares Carmona Gutierrez, and Fanny Esperanza Sandoval.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of

K:\A\gonzalez\civil\Gutierrez [4-02-CV-015]\fnc.wpd

4

these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

### I.  Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. All of the Plaintiffs are citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there.  Furthermore, the Defendant has stipulated and represented to the Court that it will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis).  Therefore, availability of an alternative forum does not preclude dismissal.

### II.  Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum

for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendant. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

### III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary,

and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendant's alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful act in this case was the original design of the vehicle "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the product at issue in this case was sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and

the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle was purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuelan law is better suited than Texas law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of

burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that Defendant Ford Motor Company must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of Venezuela. This Court will not designate which court is proper because that question is for the courts of the country of Venezuela to decide.

It is FURTHER ORDERED that the Defendant must agree to pay any judgment rendered against it when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendant must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendant has obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendant shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if

any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendant, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendant is precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this _22_ day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

**FILED**

**SEP 2 3 2003**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| ELSA BEATRIZ LOPEZ GUEDEZ et al., | § |
|     Plaintiffs | § |
| | § |
| v. | § |
| | § |
| BRIDGESTONE/FIRESTONE, INC., | § |
| DEL RIO TEST CENTER, INC., | § |
| and FORD MOTOR COMPANY, | § |
|     Defendants | § |

P-03-CA-032

## ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Before the Court is Firestone's Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 21, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 24, 2003. On August 26, 2003, the Plaintiffs filed their Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\A\Bravu\Jcivil\M-03-CV-032\fnc.wpd

1

42



EXHIBIT
5

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on April 8, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on March 3, 2003. The Plaintiffs are residents of Venezuela, and the case stems from an accident that occurred in Venezuela when one of the tires on a Ford Explorer allegedly failed.  The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In their Original Petition filed in state court, the Plaintiffs sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company.  As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on May 27, 2003 in this matter.  At a hearing on July 30, 2003 in Midland, Texas, the Plaintiffs represented that they were unopposed to this Motion.  Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process.  All of the Plaintiffs' claims against Defendant Bridgestone Corporation were thus dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on July 28, 2003. At a hearing on September 10, 2003, the Plaintiffs represented that they were unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiffs' claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiffs and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include:

the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

## I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. The Plaintiffs are all citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that they will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's submission to jurisdiction of alternative forum renders that forum available for purposes

of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendants. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and

expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at issue in this case were sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuela's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application

7

of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of the country of Venezuela. This Court will not designate which court is proper because that question is for the courts of Venezuela to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered

K:\AAgsame\Nelv\IM-03-CV-032\fnc.wpd                    8

against them, or any of them, when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this 22 day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT    **FILED**
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By _____ 1115 _____
DEPUTY SEE....

ADRIANA CANALES RODRIGUEZ,          §
    Plaintiff                       §
                                    §
v.                                  §        P-03-CA-057
                                    §
BRIDGESTONE/FIRESTONE, INC.,        §
DEL RIO TEST CENTER, INC.,          §
and FORD MOTOR COMPANY,             §
    Defendants                      §

## ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

    Before the Court is Firestone's Brief and Exhibits in Support of its Motion to Dismiss for *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 24, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 25, 2003. On August 26, 2003, the Plaintiff filed her Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss for *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\AA\grwa\civil\4-03-CV-057\foc.wpd                    1



34

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on May 23, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on April 23, 2003. The Plaintiff is a resident of Mexico, and the case involves an accident that occurred in Mexico on April 23, 2001. On that day, the Plaintiff was traveling in a Ford Explorer when one of the tires on the vehicle allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In her Original Petition filed in state court, the Plaintiff sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on May 30, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiff represented that she was unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiff's claims against Defendant Bridgestone Corporation were thus

dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on August 18, 2003. At a hearing on September 10, 2003, the Plaintiff represented that she was unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiff's claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiff and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide

whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include:
the relative ease of access to sources of proof; the availability of compulsory process for attendance
of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility
of viewing the premises, if such viewing would be appropriate to the action; and all other practical
problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of
these private interest factors counsels against dismissal, the court should turn to an evaluation of
public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant
public interest factors include: administrative difficulties flowing from court congestion; the local
interest in having localized controversies decided at home; the interest in having the trial of a
diversity case in a forum that is at home with the law that must govern the action; the avoidance of
unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of
burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and
*Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case.
The Court will then turn its attention to the relevant private and public interest factors.

### I. Availability of Alternative Forum

In this case, the courts of Mexico supply an available alternative forum to this Court. The
Plaintiff is a citizen of Mexico and can obviously file suit in the courts of that country for an accident
that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that
they will submit to the authority of any Mexican court having jurisdiction over this case. *See Veba-
Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's

submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Mexico provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiff has not argued that the courts of Mexico provide no remedy whatsoever for her causes of action against the Defendants. Assuming *arguendo* that Mexican law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Mexico would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Mexico. Second, the vehicle at issue was purchased and maintained in Mexico. Third, a court of appropriate jurisdiction in Mexico could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Mexican citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Mexico. Fifth, all of the events leading up to the accident took place in Mexico. Sixth, all of the reports dealing with the accident in this case are in Spanish, and

the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Mexico.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the sovereign Republic of Mexico has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiff that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at

K:\AA\gonwan\civil\04-03-CV-0576sc.wpd                                    6

issue in this case were sold in Mexico and allegedly failed in that country.

Third, the Court finds that Mexican law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Mexican law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiff is a resident of Mexico, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Mexico's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Mexico would be in the best position to apply the relevant substantive law. Indeed, a Mexican court would necessarily be more at home than this Court in a trial involving Mexican law. Dismissal of the case under *forum non conveniens* thus serves the

public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Mexico.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss for *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Mexican court having jurisdiction under the applicable laws of the Republic of Mexico. This Court will not designate which court is proper because that question is for the courts of the Republic of Mexico to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered

against them, or any of them, when required by the appropriate court in the Republic of Mexico.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiff in the appropriate Mexican court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Mexico, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Mexican court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of the Republic of Mexico fail or refuse to grant access to either the Plaintiff or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of the Republic of Mexico. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this *22* day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

*FILED*

SEP 23 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| AEIDA ELATRACH HANGE et al., | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | P-03-CA-043 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| DEL RIO TEST CENTER, INC., | § | |
| and FORD MOTOR COMPANY, | § | |
|     Defendants | § | |

**ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Before the Court is Firestone's Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 21, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 24, 2003. On August 26, 2003, the Plaintiffs filed their Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\AAgrawal\civil\M-03-CV-043\fnc.wpd

1



EXHIBIT

1

34

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and-styled cause of action was removed to this Court on April 17, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on March 20, 2003. The Plaintiffs are residents of Venezuela, and the case involves an accident that occurred in Venezuela on March 20, 2001. On that day, Louaiy Alatrach was traveling in a Ford Explorer when one of the tires on the vehicle allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In their Original Petition filed in state court, the Plaintiffs sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on April 25, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiffs represented that they were unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiffs' claims against Defendant Bridgestone Corporation were

thus dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on July 28, 2003. At a hearing on September 10, 2003, the Plaintiffs represented that they were unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiffs' claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiffs and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

### STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide

whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

## I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. The Plaintiffs are all citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that they will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that

defendant's submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendants. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are

in Spanish, and the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV.  Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at issue in this

case were sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuela's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus

serves the public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of the country of Venezuela. This Court will not designate which court is proper because that question is for the courts of Venezuela to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered against them, or any of them, when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this 22 day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 2 2003

CLERK, U.S. DISTRICT COURT
By _____ Deputy

MARIA AIDE GARCIA ZAMUDIO,           §
ET AL.,                              §
                                     §
          Plaintiffs,                §
                                     §
VS.                                  §    NO. 4:02-CV-929-A
                                     §
GENERAL MOTORS CORPORATION,          §
ET AL.,                              §
                                     §
          Defendants.                §

## ORDER

Came on for consideration the motion of defendants Michelin
North America, Inc., Michelin America's Research Corporation,
Michelin Tire Corporation, and Uniroyal Goodrich Tire Company
("Michelin defendants") to dismiss on forum non conveniens
grounds. Plaintiffs, Maria Aide Garcia Zamudio, individually and
as representative of the Estate of Salvador Munguia Gonzalez,
Deceased, and for and on behalf of all those entitled to recover
for his death under the Texas Wrongful Death Act, the Texas
Survival Act, and as Next Friend of Andrea Munguia Garcia and
Salvador Munguia Garcia, minors, Montserrat Melania Munguia
Garcia, Melania Gonzalez, Fernando Orihuela Carmona, and Luis
Miguel Orihuela Estefan, have failed to respond to the motion,
which is ripe for ruling. The court, having considered the
motion, the record, and applicable authorities, finds that the
motion should be granted. As the Michelin defendants have shown,



EXHIBIT
9

all of the facts giving rise to plaintiffs' claims in this action occurred in Mexico.  Thus, Mexico has the most significant relationship with plaintiffs' claims.  Vasquez v. Bridgestone/Firestone, Inc., 325 F.3d 665, 674 (5th Cir. 2003). The Michelin defendants have agreed to submit to jurisdiction in Mexico, making it an available alternative forum.  Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1245 (5th Cir. 1983).  And, Mexico is an adequate alternative forum.  Gonzalez v. Chrysler Corp., 301 F.3d 377 (5th Cir. 2002).  Both the private and public factors weigh strongly in favor of Mexico as the proper forum for this action.  Gulf Oil, Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  Accordingly,

The court ORDERS that the Michelin defendants' motion to dismiss be, and is hereby, granted, and that plaintiffs' claims against the Michelin defendants be, and are hereby, dismissed on forum non conveniens grounds so that they may be pursued in Mexico.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiffs' claims against the Michelin defendants.

SIGNED August 22, 2003.

JOHN McBRYDE
United States District Judge

2

## AFFIDAVIT OF PROFESSOR JOSE M. SERNA DE LA GARZA CONCERNING THE LAWS OF PUEBLA, MEXICO

Before me, the undersigned authority, personally appeared Jose Maria Serna de la Garza, whose identity was verified by his passport, and who, after being duly sworn, upon oath deposed as follows:

### I.    INTRODUCTION

My name is Jose Maria Serna de la Garza, a Mexican citizen, born in Acapulco, State of Guerrero, Mexico. I am over the age of 18, have never been convicted of a crime, and am competent to make this affidavit. The statements in this affidavit are based on my personal knowledge (except as otherwise stated) and expertise regarding Mexican law and are true and correct.  My address is:

> Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
> Del. Benito Juarez, C.P. 03920, Mexico, D.F., MEXICO

Attached hereto as Exhibit "A" is a true and correct copy of my current curriculum vitae, which reflects my professional affiliations, experience and publications. I have been retained to draft an affidavit regarding the following issues:

(a)    whether an American corporation can be sued in Mexican courts;

(b)    whether the laws of the Republic of Mexico provide a cause of action to individuals who claim injuries from an automobile accident that happened in Mexico in the state of Puebla;

(c)    whether the laws of the Republic of Mexico allow individuals to recover monetary compensation for injuries allegedly sustained in an automobile accident that happened in Mexico; and

(d)    whether Mexican courts allow the introduction of discovery obtained in the United States.

In preparing this affidavit, I reviewed primary and secondary sources of Mexican law.  I have made the following conclusions:

A.    American corporations can be sued in Mexican courts.

1



EXHIBIT 9

B.     The laws of the state where the accident occurred will govern the case under the *Lex Loci Delicti* rule and the territoriality principle.

C.     The Civil Code of Puebla (the state where the present accident occurred) provides two causes of action to individuals who claim injuries from an automobile accident that happened in Puebla. The first cause of action corresponds to the notion of "civil liability" found in article 1955 (fault/negligence based liability). The second cause of action relates to the concept of "strict liability" found in articles 2088 and 2090 (non-fault/negligence liability). The 2088 action, however, is available only against the "user" (i.e., the driver); the 2090 action would be available against the "owner" or " original or derivative possessor" of the vehicle.

D.     Individuals who claim injuries from an automobile accident that happened in Mexico may also bring a claim under the Federal Consumer Protection law.

E.     The Civil Code of Puebla allows plaintiffs to recover economic and moral damages.

F.     Puebla's courts permit judges to receive both foreign public documents and foreign private documents as evidence in a trial.

## II.   STRUCTURE OF MEXICAN LAW

A.     <u>**General Structure: The Mexican Constitution Reserves to Each of the Mexican States the Power to Make Laws Except to the Extent Allocated to the Federation.**</u>

Mexico is a federation, and, like the United States, each of the thirty-one (31) Mexican states and the Federal District has its own codes and laws with respect to matters not expressly declared federal by the Federal Constitution. The basis for the division of powers in Mexico's federal system is found in the residual clause of article 124 of the 1917 Mexican Constitution. Partially inspired by the Tenth Amendment of the United States Constitution, article 124 states that "it shall be understood that the powers not expressly attributed by this Constitution to the federal authorities, are

reserved to the states."[1]  The similarity between article 124 of the Mexican Constitution and the Tenth Amendment of the United States Constitution is readily apparent; however, the clauses are not identical, and therefore their meaning and impact upon the allocation of powers is somewhat different.

One such difference is the use that article 124 of the Mexican Constitution makes of the adverb "expressly."  The antecedent of article 124 of the Mexican Constitution is article 117 of the Mexican Constitution of 1857.  The Mexican constituent  assembly of 1856-57 borrowed part of the United States' Tenth Amendment formulation, but decided to include the adverb "expressly."  It was not a casual circumstance but a manifestation of intent.  The intention was to create a more rigid system of division of powers between the federation and the states in such a way as to make it perfectly possible to distinguish which limited set of powers belonged to the federal system and which belonged to the states.[2]

**B.      Tort Law Is a Matter Generally Reserved to Each of the Mexican States.**

Most of the powers allocated to the federal government are found in articles 73-107 of the Mexican Constitution.[3]  Notably, none of these articles address civil matters, including tort matters.  As noted by the Mexican legal scholar Carlos Arellano Garcia, "concerning civil matters, the state of the Republic have the reserved power to legislate."  Arellano Garcia, Carlos, "Exegesis del Article 12 del Districto Federal," Estudios Juridicos en Memoria de Alfonso Noriega, Porrua, p. 26 (Mexico 1991).  And,

---

[1] The Tenth Amendment of the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. CONST. amend. X.

[2] It is worth noting that the federal and state governments have "concurrent powers" in a limited set of policy areas, but not as to the general tort claims involved here.

[3] Article 73 refers to the powers of the federal Congress; Article 74 refers to the powers of the Chamber of Deputies; Article 76 refers to the powers of the Senate; Article 89 refers to the powers of the President; Articles 103-07 enumerates the powers of the federal courts.

although some provisions in the Federal Civil Code apply to tort cases, the application of these articles is limited to instances where the federation as a party is asserting a national interest – for example, when: (1) the sovereignty of the nation itself is affected; (2) when the patrimony or credit of the nation is affected; or (3) when an entity acting in representation of the United Mexican States is involved. *See, e.g.,* Juicio Ordinario Federal; 6/52, Castro Jose Agustin, 2 de diciembre de 1953, Semanario Judicial de la Federacion, Pleno, Quinta Epoca, Parte CXX, p. 2141; *see also* Competencia Civil 31/91, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte 59, Noviembre 1992, Tesis 3ª/J.22/92, p. 18;  Varios 289/53, Comercial Textil del Centro, Semanario Judicial de la Federacion, Pleno, Qiunta Epoca, Parte CXXV, p. 1244. Simply put, federal law would apply when there is a federal party asserting or representing a national interest – both of these requirements must be met.

Tort claims, such as claims for personal injuries arising out of an automobile accident, are governed by the civil codes of the various Mexican states.  For example, Fernando Vazquez Pando notes in his article regarding civil liability in Mexico that tort law is a matter of state law:

> The subject of civil liability, [which] is the Civil Law equivalent of torts, which in the case of Mexico is a matter of state jurisdiction and as such is governed by the Civil Code of each of the components [the states] of the federation."

Vazqauez Pando, Fernando, "De la Responsabilidad Civil," El Foro, p. 25, Octava Epoca, Tomo IV, No. 1.  Likewise, comparative law professor Boris Kozolchyk, in his article on Mexican damages published in the Arizona Journal of International and Comparative Law, properly states that an automobile accident between private parties evokes no federal interest and is therefore governed by Mexican state law.  Kozolchyk, Boris, "Mexican Law of Damages for Automobile Accidents: Damages or

Restitution?", Arizona Journal of International and Comparative Law, p. 195, Vol. 1,

1982. In this article, Professor Kozolchyk states:

> Mexico is a federal nation, and each Mexican state has its own set of codes in non-federal matters.  Accidents involving privately-owned vehicles which occur within state boundaries are generally treated as subject to state law.  The Supreme Court of Mexico has stated in five consecutive decisions that, where there is an automobile accident, the interests involved are private in nature, i.e., one private party suing the other, and there is no prejudicial effect to the security or integrity of federal roads.  Thus, the subject matter is non-federal, or state, in nature.

*Id.*

### C.  Under the *Lex Loci Delicti* Rule, The Laws of Puebla Would Govern the Tort Claims for an Automobile Accident That Occurred in Puebla.

The reason why tort claims are governed by the civil code of the various

Mexican states is the *lex loci delicti* rule.  This rule is derived from the territoriality

principle, which is followed by most Civil Codes of the Mexican States.[4]  In the state of

Puebla, the *lex loci delicti* principle can be derived from articles 1, 14 and 21 of the

Puebla Civil Code. Article 1 states that, "This Code shall govern, in the territory of the

State of Puebla, relations and situations that are a matter of civil law".[5] Article 14 states

that  "the laws of the State of Puebla are applicable to all the persons who are in its

territory, and to all the acts and facts that occur in its jurisdiction or territory, and to all

those who validly subject themselves to said laws; but in those cases in which the

application of the law of another state or of foreign law is proper, or in accordance with

what is foreseen in international treaties of which Mexico is a party. Article 21 further

states, "real and personal property located in the territory of the State of Puebla  shall be

---

[4] For a general discussion why the territoriality principle has prevailed in Mexico, see page 35 of the article of Arellano Garcia, cited within, which states that "the bitter experiences derived from numerous claims by foreign powers . . . broadly justified the preservation of the territoriality principle in Mexican law."

[5] Under Mexican law, tort related situations are a matter of civil law, governed by the corresponding Civil Code.

governed by the rules of this Code, even when the owners are not from Puebla or residents in said State."

I understand that certain plaintiffs may suggest that, because an accident occurs on a federal highway (and in some cases involve damage to the federal highway), their claims are governed by federal law. This is incorrect. The Supreme Court of Mexico has rejected this argument. In a case involving an accident occurring on a federal road, the Supreme Court held that state law would apply to resolve the tort claims of the parties. The Supreme Court of Mexico stated in its decision:

> Connecting article 104 with 124 of the Constitution, it must be understood that state courts, including those of the Federal District, have jurisdiction to hear cases that spring from the fulfillment and application of state laws. This is so because this matter [objective liability] is not reserved to the courts of the federation. In this way, if the subject matter of the dispute is one limited to liability for a created risk imputed to a company of general means of communication, because one of its buses participated in an accident in which a person died, and in which the vehicle owned by an individual was harmed, **the applicable law is the civil code of the place in which the accident occurred**.

Competencia Civil, 97/81, Semanario Judicial de la Federacion, Septima Epoca, vols. 163-68, Cuarta Parte, p. 114 (emphasis added).

In cases where the accident results in damage to a federal highway, the result would be no different *for the personal injury claims of tort plaintiffs*. The federation would have its own cause of action under federal law to sue for damages caused to the federal road; this would be the only federal interest that could support application of federal law. Of course, in tort lawsuits brought by private parties, there is no national interest to invoke the application of federal law. Therefore, private individuals would only have a separate action to recover personal injury damages under the civil code of the state where the accident occurred.

In the same manner, the method for quantifying or computing tort damages is governed by the civil codes of the various Mexican states. For example, the civil codes

for some states establish their own formulas for determining the appropriate measure of damages. *See, e.g.*, articles 1988-1992 of the Puebla Civil Code; *see also* article 2086 of the Sonora Civil Code; *see also* articles 2055-2058 of the Tabasco Civil Code. Others, however, refer to the rules of the Federal Labor Act to determine the appropriate measure of compensation.[6] *See, e.g.*, article 1390 of the Jalisco Civil Code and article 1891 of the Coahuila Civil Code. This does not mean the issue of damages is governed by federal law. Rather, some Mexican states' civil codes have merely adopted, as part of their own state law, the formulas for compensation of damages established by the Federal Labor Act.

**D.    Conclusion**

The applicable tort laws in the present case are in the Civil Code of the State of Puebla (the state where the present accident occurred), and specifically, as we shall discuss, the applicable compensation laws for material damages are supplied by that same Code. The text of the Puebla Civil Code coincides with that of the Civil Code for Federal District and with the civil codes of other Mexican states; thus, federal case law on torts might also provide criteria for the interpretation of Puebla's tort rules.

**III.    MEXICAN TORT LAW**

**A.    Products Liability**

The notion of "products liability" has had a limited development in the Mexican legal system. There is no case law on the subject, and legislatures have been reluctant in introducing statutes on this matter. The law of Puebla, however, provides two potential causes of action to individuals who claim injuries from an automobile accident that happened in Mexico.

---

[6] The Federal Labor Act ("FLA") gives workers a cause of action against their employer for accidents and illnesses that occurred during their scope of employment. It provides an indexed award of damages owed by employers to employees based upon the degree of injury or due to death. To the extent that the labor code has been adopted by a particular state, these rules would apply to tort cases under such state law to determine the compensation that can be claimed by plaintiffs. Kozolchyk, p. 194.

## B.    Negligence Claims:  Article 1955 Actions

### 1.    Generally

Under article 1955 of the Puebla Civil Code, "The author of an illicit act that causes damages or losses to another person, has to repair both." Yet, article 1960 of said Code states that there is no duty to make such reparation if defendant proves that the damage "…was produced as a consequence of the fault or inexcusable negligence of the victim."   These articles could provide a negligence-based cause of action for the allegations made in this type of case.

### 2.    Illicit Defined

Under Mexican tort law, the general understanding of an "illicit act" is an act, positive or negative, performed with fault or negligence that causes damage to another. *See* also Rojina Villegas, Rafael, "Derecho Civil Mexicano, Obligaciones," Tomo II, Porrua, Mexico, 1998.   Fault is defined as intent to cause damage.   *Id*. at 95. Negligence is defined as imprudence, lack of expertise, lack of prevision and care.  *Id*. Whether an act is negligent will be evaluated under the circumstances of the case.   In sum, defendants, in tort cases, are responsible for the harmful consequences of their behavior, if the plaintiff proves that the defendant intentionally produced harm or failed to conduct himself with the proper degree of care and precaution normally expected under the circumstances.

### 3.    Causation

Additionally, the plaintiff must prove a causal relation between the defendant's behavior and the harm that was produced.  Puebla' Civil Code does provide a specific definition of causation in tort law in its article 1959, which is equal to the definition provided by article 2110 of the Federal District's Civil Code: "[d]amages and losses

must be a direct and immediate consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur."

Mexican federal courts have provided some standards to determine the existence of direct and immediate causation. For example, the Second Collegiate Court of the First Circuit has found that directness between cause and consequence in strict liability cases means that between cause and effect there should be no other factor that breaks that link. In this case, the defendant was required by plaintiff to pay damages that resulted from a fire that occurred in the premises of the defendant's business, where flammable substances were stored. The federal court said that to prove direct and immediate link it should be proved which was the origin of the fire: a) the use or manipulation of flammable substances; or b) an external factor.[7]

Moreover, in a more recent decision, the Second Collegiate Court of the Second Circuit stated that in a strict liability action, the relation of causality must be proved with precision, showing how harm was produced, who provoked it and providing evidence to prove direct causation by the author of harm.[8]

### 4.   Burden of Proof

The burden of proving harm, causation and negligence in an article 1955 action is on the plaintiff. This is so, in accordance with a general principle of Mexico's procedural law, according to which the party who asserts a fact about the other party has the duty to prove it.

### 5.   Defenses to 1955 Actions

Defenses to an article 1955 action include:

---

[7] Amparo Directo 2027/89, Ultraespuma de Mexico, S.A., Semanario Judicial de la Federacion, Tribunales Colegiados de Circuito, Octava Epoca, III Segunda Parte-2, p. 690.

[8] Amparo Directo 319/2002 Jacobo Valdez Gonzalez et al., Semanario Judicial de la Federacion, Tribunales Colegiados de Circuito, Novena Epoca, Tomo XVI, Septiembre de 2002, Tesis II.2o.C.368, page 1438.

(a)    failure by the plaintiff to show fault on the part of the defendant;

(b)    a showing by the defendant that the plaintiff was "inexcusably" negligent;

(c)    failure by the plaintiff to show causation between the defendant's behavior and the injury;

(d)    acts of God;

(e)    where the action is brought more than one year from the moment the injury occurred (*see* article 1907-IV of the Puebla Civil Code);

### 6.    "Inexcusable Negligence"

Article 1955 of the Puebla Civil Code states that the defendant is not liable at all when the plaintiff was also at fault or was inexcusably negligent. Neither the Puebla Civil Code nor case law provide an explicit definition of "inexcusable negligence." From the various cases that address this issue, however, it is my opinion that inexcusable negligence occurs when a person puts himself in a situation he knew or should have known was dangerous or risky. *See* Amparo Directo 1960/53, Semanario Judicial de la Federacion, Primera Sala, Quinta Epoca, Parte CXXIX, p. 69 (finding inexcusable negligence where the victim was run over because the victim placed himself in the zone where the paving machines were working, disregarding the signals put by workers); Amparo Penal Directo 2643/47 Cepeda Millan Venancio, Semanario Judicial de la Federacion, Primera Sala, Quinta Epoca, Parte XCV, p. 1777 (finding inexcusable negligence on the part of a bus driver who was hit by a trolley when the bus driver failed to yield the right-of-way to the trolley, thus, running an unnecessary and unavoidable risk); Amparo Directo 7850/43, Cia. Limitada de Ferrocarril Mexicano, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte LXXXIV, p. 369 (finding inexcusable negligence on the part of a person who got down from a train

while the train was still moving, thus exposing himself to the imminent danger of being destroyed by the train); Carmona Ocotlan, 21 de febrero de 1945, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte LXXXIII, p. 2953   (finding inexcusable negligence on the part of a person who was hanging by the side of a trolley (i.e. as a "mosca" [fly]); *compare with* Amparo Civil Directo 1871/52, Cia. Mexicana de Luz y Fuerza Motriz, S.A., Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte CXXV, p. 2480 (finding no inexcusable negligence where the victim was electrocuted when the posts he was carrying touched an electrical cord). Whether a certain act or combination of acts rises to the level of "inexcusable negligence" is a question for the trier of fact to decide.[9]

I reviewed the definition of "assumption of the risk" in Dorsaneo's Civil Litigation Guide where he states that "the plaintiff will be found to have assumed a risk if he or she knew, understood, appreciated and consented to the exposure to the danger."[10]   It is my opinion that the concept of "assumption of the risk" is equivalent to the Mexican concept of "inexcusable negligence."

C.    **Strict Liability Claims: Article 2088 Actions Against the "User" of a Dangerous Product and Article 2090 Actions Against the "owner" or "possessors" of Machines that Move.**

Article 2088 of the Puebla Civil Code recognizes strict liability (no-fault responsibility ("*responsabilidad objetiva*") on the part of the *user* of dangerous items and substances.  Specifically, article 2088 states that "when a person as an owner, or as original possessor or derivative possessor[11], either by himself or through his dependents,

---

[9] Note, in Mexico there are no trials by jury; hence, the judge is the trier of fact.

[10] William V. Dorsaneo III, Texas Litigation Guide § 320.09(1)(c) (citing *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex. 1975), *and Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 458 (Tex. 1972)).

[11] The phrase "original possessor" generally refers to he who holds possession of property with ownership of title. A perfect example of this understanding is found in article 1791 of the Federal Civil Code, which states: "If the owner of property delivers it to another pursuant to a juridical arrangement whereby he grants to the other the right to temporarily retain it and reap its fruits, or occupy it as a tenant, or hold it as a pledge in guarantee for an indebtedness, or as a bailee or under analogous conditions, both parties have

makes use of mechanical devices, instruments, items, substances or things which are dangerous per se, for instance on account of the speed they develop, their explosive or flammable nature, the energy of the electrical current that they conduct, or other analogous causes, he is responsible for the damage such objects or substances may cause." For its part, article 2089 states that this liability does not require fault or negligence of defendant, but ceases to exist when there was inexcusable negligence or fault of the victim.

In sum, in an article 2088 action, it must first be determined if the things or substances qualify as those explicitly mentioned by said article, or as analogous causes. Then the defendant has the burden of proving that they did not actually cause the damages. One exception is where the user of such items and substances proves that such damage has been produced by the fault or inexcusable negligence of the victim. Note that an article 2088  action is limited in its application to users (e.g., drivers of automobiles) who may be "owners" or "original or derivative possessors" of inherently dangerous things.

For its part, article 2090 of the Puebla Civil Code also recognizes strict liability actions against the "owners" or "original or derivative possessors" of "machines that move." Specifically, article 2090 states that:

"Art. 2090.- The owners or original or derivative possessors of personal or real property shall be liable for damages caused:

I...V.

VI.    By the weight or movement of machines..."

The civil codes of other Mexican states also recognize this expansion of strict liability. The Supreme Court of Mexico interpreted one such code in this manner in a case in

possession of the property, the one holding title has original possession, and the other has derivative possession."

which two vehicles crashed harming a third party. *See* Amparo Directo 6542/56, Maria Morales de Ceballos, Semanario Judicial de la Federacion, Tercera Sala, Sexta Epoca, X, Cuarta Parte, page 218.. Specifically, the Supreme Court found that the owner of one of the vehicles was jointly liable (without fault), together with the drivers (users) of the vehicles involved in the collision even though the owner was not one of the drivers. *Id.*

In sum, the strict liability principle found in article 2088 and article 2090-VI do not apply to the manufacturer, the designer or even the seller of certain products (e.g., a tire). Rather, liability under these articles applies only to the **user** of objects, techniques or substances that are inherently or potentially dangerous, and to the **owner** or **original or derivative possessors** of machines that move.

Finally, according to article 2094 of Puebla's Civil Code, the statute of limitations for no-fault/no-negligence actions is of two years, which start to run since the day in which the harm was produced.

**D.**   **Warranty Claims for the "Consumer" of a Good Or Service: The Federal Consumer Protection Act.**

Mexican law also recognizes breach of warranty claims involving products or services. Warranties in the field of commercial transactions in Mexico are governed by the Federal Consumer Protection Act (FACP). This statute covers the two kinds of actionable warranties: legal warranties and conventional warranties. These warranty claims are only in favor of a "consumer," which according to article 2 of the FACP, is a physical or juristic person that acquires or enjoys as a final recipient of goods, products

13

or services.[12]  It also creates a duty to warn on the part of a "supplier" of goods at the time of sale.

### 1.    Legal (or "Implied") Warranties

The FACP provides that "legal warranties" shall govern the sale of goods or products.  These legal warranties "imply" certain minimum warranties regarding a product.  These legal warranties are created by the legislature, and exist independently from the will of the parties to a sales contract.  There are two types of legal warranties, which can be found in articles 82 and 92 of the Federal Consumer Protection Act.

Article 82 provides an implied warranty for a consumer covering hidden defects and the customary use of the product or service. Article 82 provides:

> The consumer may chose either to rescission of the contract or a reduction, and, in any case, he can claim a monetary compensation for damages and losses, whenever the goods sold or the subject of the contract have hidden defects that make them improper for their habitual use or that diminish their quality or the possibility of using them. Whenever the consumer choose rescission, the supplier has a duty to return the purchase price.

It is important to note that this warranty obligation derives from contract.  Thus, the remedies allowed under article 82 would be contractual in nature.  Article 82 would not provide a basis to recover tort damages.

Moreover, the implied warranty found in article 82 is subject to the one year limitation period established by article 14 of the FACP.  Article 14 provides:

> The statute of limitations concerning the rights and obligations established in this statute law shall be of one year, unless stated otherwise in this statute law.

There are no specific provisions of the FACP that provide a different limitation period for the implied warranty provided by article 82.  Thus, the implied warranty under article 82 is provided for one year.

---

[12] The common understanding of this "consumer" provision is one who actually purchases, rents, or leases goods products or services.

There is also another legal, or implied, warranty found in article 92 of the FACP.

Article 92 provides:

> The consumer shall be entitled to the replacement of the product, or to an allowance, offset or refund of the amount paid, at the consumer's sole election, in any of the following cases:
>
> I.    If the net weight or quantity of the product is lower than that displayed on the container or package thereof, after considering tolerance levels permitted by the applicable norms;
>
> II.    If the quality, brand, specifications or any other material element of the product are not consistent with the quality, brand, or specifications being offered; and
>
> III.    If the product is repaired, but becomes unfit for its intended use within the warranty period.
>
> As to any devices, appliances, and products that due to the features thereof require a certain technical knowledge, the opinion of an expert or the results of tests conducted by a duly authorized laboratory shall prevail.

Thus, the implied warranty provided under article 92 would only result in the replacement of a product or the refund, in whole or in part, of the purchase price.

Unlike the warranty provided by article 82, the FACP expressly provides for a lesser limitation period governing warranties created under article 92. This limitation period is found in article 93 of the FACP, which provides in relevant part:

> The claim established in the preceding article [article 92] may be brought either against the seller or the manufacturer, at the consumer's choice, within two months after the date on which the product was received, unless the alteration of the product is the consumer's fault.

Thus, while the warranty in article 82 would last for a year, the implied warranty found in article 92 is time barred two months after the consumer has received the good in question.

The FACP provides that the implied warranties provided by articles 82 and 92 would extend beyond the supplier of the good or service. In particular, article 79 of the Federal Consumer Protection Act states that these two warranties can be claimed either

from the manufacturer, the importer, or the distributor, unless any of them or a third party solely accepts for himself such duty, in writing.

## 2.    Conventional (or "Express") Warranties.

Article 79 of the FACP recognizes that a party may agree to provide a "conventional warranty," or an "express" warranty, that differs from the implied warranties provided by articles 82 and 92 of the FACP. However, article 79 makes clear that a conventional warranty may not be used to reduce the consumer's rights corresponding to the minimum implied warranty provided under articles 82 and 92.

## 3.    A Supplier's Duty to Warn.

The FACP also imposes a limited duty to warn regarding the proper and safe use of a product. Article 41 provides:

> In relation to products or services that according to the applicable rules, are considered as potentially dangerous for the consumer or damaging to the environment or when their dangerousness is foreseeable, the supplier shall include instructions that warn about the damaging characteristics and explain clearly the recommended use or purpose and the possible effects of use, application, or purpose beyond the recommended guidelines. The supplier shall be liable for damages and losses caused to the consumer by the breach of this obligation.

Thus, under article 41, a supplier must include with the provision of a good or service instructions or warnings concerning safe and proper use of the product or service.

It is important to note that the duty to warn provided in article 41 applies only to a "supplier" of the good or service that is the subject of the sales contract. The FACP defines the term "supplier" to include dealers of a good or service, not the manufacturer. Specifically, article 2 of the FACP states that a supplier is "the physical or juristic person that habitually or periodically offers, distributes, sells, rents or grants the use or enjoyment of goods, products and services." Thus, the manufacturer and/or designer of the product are not considered suppliers for purposes of the FACP. In any event, the

16

warning and instructions required by article 41 are at the time of sale of, or the consumer's receipt of, the product of service.

IV.    **Mexico's Compensation System**

A.    <u>**Generally**</u>

The Civil Code of Puebla provides that the plaintiff can choose between the reparation of damages (i.e., reestablishing the status quo), whenever that is possible, or the payment of compensation. *See* article 1987 of the Puebla Civil Code. If the plaintiff selects the second option, he or she is entitled to "economic" and "moral" damages. *Id.*; *see also* article 1993 of the Puebla Civil Code (discussing "moral" damages).

With respect to the appropriate measure of material damages, the Supreme Court of Mexico recognizes that, because the measure of damages for the family of a deceased individual cannot be proven in every case, asking the relatives of the victim to prove the measure of damages they have suffered would be impossible and would amount to leaving them without protection – which goes against the goals of the law and the legislature; hence, the legislature has established a method for calculating the amount of compensation. Thus, the Supreme Court has held that this legislation is the measure of damages:

> REPARATION OF DAMAGE IN CASE OF DEATH. TO CALCULATE THE AMOUNT OF DAMAGES THE CIVIL CODE MUST BE APPLIED (FEDERAL LEGISLATION). The Federal Criminal Code states that the reparation of damages shall be calculated taking into account the harm that has to be repaired and the evidence offered in the proceedings, yet, it is well known, and experience shows, that damages that affect the victim's family, as a consequence of which the latter has died, cannot truly be a matter of proof in each and every case, due to the fact that it is very difficult to calculate the probable age of the victim, his health condition (after some time has passed since the burial), his will to provide support for the family, and the proportion of his income that he used to allocate for that purpose, etc.; ***therefore, this***

17

> *difficulty, which derives from the very nature of things, has always been overcome by an empirical determination made by the legislator itself, and thus, Mexican federal legislation of the Federal Civil Code refers to the rules of the Federal Labor Act, and also determines the income or wage that has to be taken into account to calculate the damages that can be recovered.* In this way, and according to a sound interpretation of article 31 of the Federal Criminal Code, which does not state the precise way to calculate damages in cases of death, such loophole must be filled in with the criteria provided by the Civil Code, because both laws spring from the same Federal legislator and must complement each other; this is more so, whenever one is dealing with a civil action to make effective the purely civil liability of third parties; this criteria is compatible with a scientific and rational interpretation of the law, because the social aim of criminal law is the protection of those who have been the victims of a crime and if it was left to the family of the victims to determine with different pieces of evidence the amount of damages that could be recovered as a consequence of the victim's death, in practical terms that would amount to leave them without protection, something which would contradict the goal of the law and of the Legislator; *for these reasons, in cases of civil liability that can be claimed by third parties, it is only logical that the amount of damages has to be calculated according to the rules set by the legislator itself for similar cases in which the family must be compensated for the death of the person that provided for the family's economic support.*

Direct amparo, 8580/67, Materiales Triturados, S.A., August 13, 1969, *Semanario Judicial de la Federacion*, Primera Sala, Septima Epoca, Segunda Parte, p. 27 (emphasis added).

As for "moral damages," their purpose "is to *compensate* the victim." Friedler, Edith, "Moral Damages in Mexican Law: A Comparative Approach," Loyola of Los Angelos Intern'l and Comparative Law Journal, p. 263, vol. 8, no. 2, 1986. In other words, a moral damages recovery is not awarded for the purpose of punishing the wrong-doer. *Id.*

In essence, the paramount principle governing the recovery of material and moral damages is the restoration of the victim to pre-accident status – the *status quo*. This principle has been aptly appreciated by comparative law professor Kozolchyk in his article on the measure of damages in Mexico:

Mexican courts would prefer to restore the victim to what he was prior to the accident rather than compensate him for what he would have been had the accident not taken place. This would provide a possible explanation to what appears to a United States observer to be Mexico's meager standards of compensation. Underlying the Mexican approach to damages is the notion that the future is basically unpredictable or predictable only by the grossest of approximations, whereas the parties' past, who they were when the accident occurred as contrasted with what they were likely to become, is much more certain.

Kozolchyk, Boris, "Mexican Law of Damages for Automobile Accidents: Damages or Restitution?", Arizona Journal of International and Comparative Law, p. 203, Vol. 1, 1982.

### B.     "Economic" Damages

As a matter of principle, when damage is caused to persons in their physical integrity, article 1991 of Puebla Civil Code states that the measure of damages consist of:

(a) all hospital and medical expenses incurred into as a consequence of the harm; *see* article 1991; and

(b) funeral expenses (in cases of death);

These sums shall be paid to the person who incurred into said expenses (see art. 1991).

### 1. Death and total permanent disability cases

Besides, and more specifically, article 1988 states that when damage is caused to persons, producing death or total permanent disability, the following rules shall be applied:

I.     Economic damages shall consist of a sum equal to 1,200 days of the victim's salary.

19

II. If the salary of the victim exceed an amount equivalent to the general minimum salary valid in the region multiplied by four, the excess shall not be taken into account to determine the measure of damages, unless defendant has economic capacity enough to fully compensate the victim.

III. If it is not possible to determine the victim's salary, the sum shall be calculated by expert witnesses, who shall take into account the capacities and abilities of the victim in relation to his profession, job, work or kind of activity he used to perform.

IV. If the expert witnesses have no solid basis to produce an opinion, and whenever the victim earned no salary or performed no work, the basis to calculate the indemnity shall be the general minimum salary valid in the region where the damage was caused.[13]

In these cases, the compensation shall correspond to the victim, if the harm produced total permanent disability; but if the victim dies, it shall correspond to the persons who were economically dependent on the victim. Yet, if no person depended economically on the victim, it will go to the persons on whom the victim was economically dependent. If no such persons exist, then the compensation shall correspond to the victim's heirs (see article 1989 of Puebla's Civil Code).

### 2.    Partial-permanent, partial-temporary or total-temporary Disability Cases

These cases involve injuries that result in a decrease to the injured person's ability to work. According to article 1990 of Puebla's Civil Code, in these cases the

---

[13] For the purposes of minimum salaries, Mexico is divided into different regions.

measure of damages shall be calculated by the judge, who will have to follow the rules set forth in article 1988 of said Code (*see above,* Section IV-B.1 of this affidavit).

Further, article 1990 states that expert witnesses shall determine the duration and degree of the disability and that, under no circumstances shall the measure of damages thus determined exceed the sum that would have corresponded in case the victim had died.

### C.    **Moral Damages**

The Civil Code for the State of Puebla (article 1993) also recognizes the right to seek compensation for "moral damages." The Civil Code of Puebla gives no definition of which items are protected by the concept of "moral damages." However, it would be proper to cite here what other Civil Codes of Mexico define as this kind of damages. In most of those codes, moral damages protect a person's "moral patrimony," which includes a person's feelings, affections, beliefs, honor, reputation, private life, physical aspect, or the opinion that others have about him (these are considered as "personality rights"). This understanding of moral damages is perfectly applicable in Puebla.

Article 1993 of the Puebla Civil Code further states that the amount of "moral damages" is determined by the judge "in a discretional and prudent way", taking into account the seriousness of the injuries caused to the victim in his personality rights". In addition, article 1994 states that in cases of personal injuries that do not produce a total or partial inability to work, the judge shall take into account the visibility of the injury, the duration of the visible injury and, given the case, the age and specific conditions of the victim, in order to determine the indemnity for moral damages.

Finally, article 1995 states that the measure of moral damages is independent of the existence or not of "economic" damages, but it also makes clear that it shall not exceed of an amount equivalent to one-thousand days of the general minimum salary valid in the region where the harm was produced.

There is one important point worth highlighting with respect to the moral damages permitted under articles 1993-1995 and with respect to moral damages generally in Mexico. Mexico does not recognize the recovery of moral damages in a "survival" type of claim.[14] In fact, some commentators have referred to this concept as "absurd." *See* Cienfuegos, David, "Interpretacion Jurisprudencial de la Responsibilidad Civil por Daño Moral", Revista de la Facultad de Derecho, UNAM, Tomo LI, No. 235, 2001, p. 19. The reason why a claim for moral damages does not survive the death of a person/individual is because moral damages seek to protect a person's "moral patrimony" – i.e., a person's feelings, affections, beliefs, honor, reputation, privacy, physical aspect, physical aspects or the opinions others have of him. *See* Cienfuegos, David, "Responsabilidad civil por dano moral, Revista de Derecho Privado ano 9, no. 27, Sept-Dic., 1998, Mexico, p. 60. These attributes are inherently of a personal nature and an action to recover damages to such attributes "cannot be transferred to third parties by inter-vivos acts, in other words, it is non-transferable, and can only pass to the victim's heirs when the victim brought the action himself." *See* Lopez Monroy, Jesus, Codigo Civil para el Distrito Federal en material comun y para toda la Republica en material federal, Comentado, Tomo IV, UNAM/Miguel Angel Porrua, Mexico,

---

[14] I have reviewed Section 71.021 of the Texas Civil Practice and Remedies Code regarding a survival cause of action under Texas law. I have also reviewed Texas Pattern Jury Charge § 10.2 regarding how damages for a survival claim would be quantified under Texas law. I understand a survival action to be, generally, a claim for the decedent's own damages that were suffered prior to his death.

1993, p. 70. Hence, if the victim did not file the corresponding action before dying, there is no action that can be transmitted to the heirs and pursued by them in a court of law. The reason behind this rule is that the Code supposes that, given the subjective nature of "moral damages," the victim is the only person who can determine whether or not there has been a harm on his/her "moral patrimony" (feelings, affections, reputation, honor, etc.).[15] Therefore, the Code assumes that if the victim did not bring the suit for moral damages while still alive, that was because he or she determined that there was no actual harm.[16] On the other hand, if the victim sued to recover moral damages and afterward died, the action passes to his estate and can be pursued by his heirs.

### D.    Punitive Damages Are Not Permitted.

There are no punitive damages in Mexican law. The notion of punitive damages (which according to one Mexican author only exist in the United States and England)[17] is repugnant to a principle of paramount importance in the Mexican legal system—that the sole purpose of damages is to restore the equilibrium that was altered by the tortuous behavior of the wrongdoer. In Mexico, it is said that when a damage occurs, the victim's patrimony loses its equilibrium. Cinefuegos, David Salgado, "Responsabilidad

---

[15] It is simply impossible to argue that when the victim dies there is a harm in his "moral patrimony" and therefore that his estate would have an action to claim moral damages. This is not possible because "life" is not considered as part of the "moral patrimony" of a person under Mexican law. Once again, the only items protected by the concept of moral damages are a person's feelings, affections, beliefs, honor, reputation, private life (that is, privacy, which is different from "life"), physical aspect, or the opinion that others have about him. If "life" is not part of that concept, then "death" cannot give rise to a cause of action for moral damages.

[16] See commentaries of Prof. Jose de Jesús López Monroy to article 1916 of the Civil Code for the Federal District. Various authors, *Código Civil para el Distrito Federal en materia común y para toda la República en materia federal, Comentado*, vol. IV, UNAM/Miguel Angel Porrúa, México, 1993, pp. 69-70.

[17] Davalos Mejia, Carlos, "Apunte comparativo de los "punitive damages," el "pain and suffer," la estroctura de los "jurados," y otros conceptos del derecho procesal estadounidense, con sus equivalentes en el procesal mexicano," Juridica, No. 19, 1988-89, pagina 114.

civil por dano moral," Revista de Derecho Privado, ano 9, numero 27, septiembre-diciembre, 1998, pagina 54. (noting that "damage produces an alteration in the equilibrium of the victim's patrimony that must be repaired by the wrongdoer."). To restore the equilibrium of the victim's patrimony, the damages a judge awards must (1) put the victim in the same situation he enjoyed before the harm was produced and (2) not result in enrichment of the victim.[18] An award that intends to punish the tortfeasor and, hence, results in an award of damages that puts the victim in a *better* position than he was before the harm was produced disturbs the equilibrium of the victim's patrimony much the same way that an award that leaves the victim in a *worse* position than before the damage was produced. Mexican law does not permit this. As the Mexican Supreme Court noted with respect to moral damages:

> Equity supposes . . . that the defendant should not suffer excessively in his patrimony to the benefit of the victim's patrimony, considering that the latter shall also be paid an indemnity for damages and losses that result from a successful action for civil liability.[19]

*See also* Friedler at 263, (noting that "[m]oral damages recovery is not awarded for the purpose of punishing the wrongdoer. . . .   The purpose of moral damages recovery in civil law tort actions is to compensate the victim.") and Kozolchyk at 203 (noting that ". . . the idea of restoration of the victim's pre-accident status is still paramount. . . .").

In sum, Mexican law does not permit for the recovery of punitive damages because that would disturb the equilibrium of both the victim's and the defendant's patrimonies, by producing an enrichment in the former, and an excessive decrease in the latter.

---

[18] "Compensation or indemnification is the equivalent of monetary payment of the primary obligation. The principle that inspires compensation is not the enrichment of the victim, but to give him a fair satisfaction for the harm suffered.  This principle is valid not just for the judge, but for the legislator." Cinefuegos, David Salgado, "Responsabilidad civil por dano moral," Revista de Derecho Privado, ano 9, numero 27, septiembre-diciembre, 1998, pagina 55.

[19] Queja 179/66, Iparino Fernandez, Semanario Judicial de la Federacion, Sala Auxiliar, Septima Epoca, 33 Septima Parte, pagina 23.

**E.**    **Accounting for Collateral Sources of Plaintiff's Compensation.**

It is my understanding that plaintiffs may attempt to recovery monetary compensation for damages already paid for by a collateral source—e.g. insurance proceeds. Mexican law does not permit this type of double recovery. It must be remembered that the principle governing the recovery of damages in Mexico is to put the victim in the same position he was in before the accident—a return to the "status quo."[20] Enrichment is not permitted. *Id.* Allowing an injured party to recover twice for the same injury would amount to enrichment and, therefore, violate the "status quo" principle. Kozolchyk, p. 192-93 (". . . there is no collateral source rule under Mexican law."). Therefore, if an injured individual has had his medical costs paid for by private insurance or by public insurance ("Seguro Social"), then he is not entitled to receive damages to pay for his medical costs.

**F.** **Measure of damages in "strict liability" actions**

The rules to determine the measure of damages in strict liability actions are the same as those applicable to negligence-based actions (*see* Article 2093 of Puebla's Civil Code).

**V.**    **JURY QUESTIONS BASED ON MEXICAN LAW**

In Mexico, these claims would be adjudicated by a judge as the trier of fact. I understand, however, that in Texas a jury would instead be the trier of fact. With this in mind, I have attempted to supply some questions, instructions and definitions that could be used to charge a Texas jury on Mexican law.

**A.**    **Negligence Question.**

I reviewed the following definitions of "negligence" and "ordinary care" contained in the Texas Pattern Jury Charges:

> "Negligence" means the failure to use ordinary care, that is, failing to do
> that which a person of ordinary prudence would have done under the

---

[20] See Cienfuegos, op.cit., p. 54; see also Friedler, op. cit., p. 263.

same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Texas Pattern Jury Charges § 2.1. These concepts of "negligence" and "ordinary care" are virtually identical to the concepts of negligence I described in Section III.B.2 of this affidavit. Thus, the negligence and ordinary care definitions found in the Texas Pattern Jury Charges could be used in a case in Texas that applies Mexican law.

I also reviewed the definition of "proximate cause" in the Texas Pattern Jury Charges. This definition will have to be modified because Mexican law requires that "[d]amages and losses be a *direct and immediate* consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur." *See* Section III.B.3. of this affidavit (emphasis added).

In conclusion, a negligence question based on Mexican law would read as follows:

Was the negligence, if any, of those named below, a direct and immediate cause of the accident in question?

**B.    Inexcusable Negligence.**

As explained in Section III.B.6 of this affidavit, if a Plaintiff is found to have been "inexcusably negligent" there is a complete bar to that Plaintiffs' claims. Whether the Plaintiff is "inexcusably negligent" is a question for the trier of fact to decide. Given the similarity between "inexcusable negligence" and "assumption of the risk," an "inexcusable negligence" question based on Mexican law would read as follows:

"Was the plaintiff's inexcusable negligence, if any, a direct and immediate cause of the accident in question?"

"Inexcusable negligence" occurs when a person puts himself in a situation he knew or should have known was dangerous or risky.

## VI.   JURISDICTION

The Puebla courts would have jurisdiction ("competencia") over this case under article 121 of the Puebla Code of Civil Procedure. Article 121 of the Code of Civil Procedure of Puebla allows the parties to a dispute to subject themselves, either expressly or tacitly, to the jurisdiction of a judge from that state.

## VII.   DISCOVERY

There is no "discovery" in Mexico, as understood in the American legal system. Yet, most Codes of Civil Procedure of the Mexican States provide for "preliminary measures" (e.g. depositions, interrogatories) that can be ordered by the judge who is hearing the case, whenever a party lacks a document on which the claim is based because it is in possession of the future defendant or of a third party. Moreover, discovery in this case would be governed by two international instruments signed and ratified by Mexico: the Hague Convention on the taking of evidence abroad in civil or commercial matters (concluded March 18, 1970); and the Inter-American Convention on the taking of evidence abroad (ratified by Mexico on March 27, 1978).

Mexican courts, and specifically the courts of Puebla, can examine documents produced in a foreign country in the process of making their minds in order to decide a case. First of all, it is important to note that Mexico's legal tradition allows judges broader powers to conduct the litigation process. That is why article 262 of the Code of Civil Procedure of Puebla states that the judge can order the examination of all evidence that he considers appropriate to know the facts under discussion.

Moreover, article 336 of Puebla's Code of Civil Procedure indicates that to give foreign "public documents" full-faith and credit in Mexico, they have be legalized in the way order by federal laws. Yet, this "legalization" requirement came to an end when

27

Mexico signed in 1995 the "Hague Convention that eliminates the requirement of legalization of foreign public documents (The Hague, October 5, 1961). Thanks to this Convention, to give full-faid and credit to "foreign public documents" in Mexico, what is required is to get an "Apostille"issued on the respective document.

The Apostille is a form of certification that certifies the authenticity of the signature, the capacity in which the person signing the document has acted and identifies the seal/stamp that the document bears. Under the Hague Convention of 1961, each State may designate those authorities which may issue Apostilles for their jurisdiction. For example, in Texas, the Secretary of State of Texas may issue an Apostille on documents issued by persons on file with this agency, including county clerks, notaries public, statewide officials. Moreover, the competent authority in the USA for issuance of Apostilles on documents issued by the federal government are the clerks of the federal courts. Finally, under the Hage Convention of 1961, the "public documents" that need an Apostille are: a. Those originating in a court, clerk of a court, public prosecutor or process server; b. Administrative documents; c. Notarial acts; d. official certificates placed on documents.

As for foreign private documents, the Code of Civil Procedure of Puebla foresees no specific rule. This leads us to the conclusion that foreign private documents are admissible as evidence in Durango's courts, and are subject to the rules of private documents: their authenticity can be objected to by the counter-party and there is a procedure to resolve that objection.

## VIII.  CONCLUSIONS

A.    American corporations can be sued in Mexican courts.

B.    The laws of the state where the accident occurred will govern the case under the *Lex Loci Delicti* rule and the territoriality principle.

C.    The Civil Code of Puebla (the state where the present accident occurred) provides two causes of action to individuals who claim injuries from an automobile accident that happened in Puebla. The first cause of action corresponds to the notion of "civil liability" found in article 1955 (fault/negligence based liability). The second cause of action relates to the concept of "strict liability" found in articles 2088 and 2090 (non-fault/negligence liability).  The 2088 action, however, is available only against the "user" (i.e., the driver); the 2090 action would be available against the "owner" or the "original or derivative possessor" of the vehicle.

D.    Individuals who claim injuries from an automobile accident that happened in Mexico may also bring a claim under the Federal Consumer Protection law.

E.    The Civil Code of Puebla  allows plaintiffs to recover economic and moral damages.

F.    Puebla's courts permit judges to receive both foreign public documents and foreign private documents as evidence in a trial.

FURTHER AFFIANT SAYETH NOT.

_____
JOSE M. SERNA DE LA GARZA

JUN 1 0 2004

Suscribed to before me, the undersigned authority, on this the____ day of June, 2004.


*Donna Michaels*
Notary Public

**Donna Michaels
Consul**

THE U.S EMBASSY ASSUMES NO RESPONSIBILITY FOR

THE TRUTH OR FALSITY OF THE REPRESENTATIONS

WHICH APPEAR IN THIS (OR, ANNEXED) DOCUMENT

PRESIDENTIAL COMMISSIONS ARE PERMANENT

29

**Exhibit "A"**

**CURRICULUM VITAE**

Name: José María Serna de la Garza

Place and date of birth: Acapulco, State of Guerrero, México, March 27, 1965

Address: Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
Del. Benito Juárez, México, D.F., C.P. 03920, MEXICO (Home)

Instituto de Investigaciones Jurídicas (UNAM)
Cto. Mtro. Mario de la Cueva, Cd. Universitaria,
Coyoacán, México, D.F., C.P. 04510 MEXICO(Office)

Tel. (52-55) 56 98 16 47 (Home)
(52-55) 56 22 74 68/69, ext. 413 (Office)

Fax. (52-55) 56 65 21 93

Email: josemar@servidor.unam.mx

Current professional activity: Full-time researcher at the *Instituto de Investigaciones Jurídicas* of the National University of México (UNAM).

**I.- Academic background:**

a) BA in Law ("*Licenciatura en Derecho*"), School of Law of the UNAM (*Universidad Nacional Autónoma de México*), 1983-1988.

b) MA in Latin American Politics and Government, University of Essex (England), 1990-1991.

c) PhD in Government, University of Essex, 1991-1995.

**II.- Published works:**

**a) Books:**

- *Derecho Parlamentario*, within the collective work: "Panorama del Derecho Mexicano", McGraw-Hill, Serie Jurídica, UNAM, México, 1997.

- *La Reforma del Estado en América Latina: los casos de Brasil, Argentina y México,* UNAM, México, 1998.

- *El gobierno en América Latina: ¿presidencialismo o parlamentarismo?,* (coordinador) UNAM, México, 2000.

- *Federalismo y regionalismo, Memoria del VII Congreso Iberoamericano de Derecho Constitucional,* (compilador), UNAM, México, 2002.

- *Estado de Derecho y transición jurídica* (co-editor), UNAM, México, 2002.

**b) Articles:**

- "El Sistema Presidencial en la Evolución Política de México", *Revista Jurídica Jaliciense,* Año 1, Número 1, Sept-Dic, 1991.

- "El Servicio civil de carrera: un elemento de la posible reforma del Estado", *Revista de la Universidad Nacional Autónoma de México,* Julio-Agosto, 1995, Núms. 534-535.

- "Constitutional Federalism in Latin America", *California Western International Law Journal,* vol. 30, no. 2, spring, 2000.

- "Transiciones en América Latina: reflexiones sobre la reforma político-institucional en Brasil y Argentina", en González, Ma. del Refugio y López Ayllón, Sergio (eds.), *Transiciones y diseños institucionales,* UNAM, México, 2000.

- "Reflexiones en torno a las resoluciones del Tribunal Electoral del Poder Judicial de la Federación, relativas a los casos Tabasco y Yucatán", *Boletín Mexicano de Derecho Comparado,* año XXXIV, no. 100, enero-abril, 2001.

- "Federalismo y sistemas de distribución de competencias legislativas", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 12, abril de 2001.

- "Los aspectos constitucionales de una posible reforma del federalismo fiscal mexicano", en Valadés, Diego y Gutiérrez, Rodrigo (coords.), *Economía y Constitución, Memoria del IV Congreso Nacional de Derecho Constitucional,* tomo IV, UNAM, México, 2001.

- "Federalismo judicial: revisión crítica de los distintos argumentos del debate sobre el amparo casación en México", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 26, junio de 2002.

- "Federalismo y sistemas de distribución de competencias legislativas" en la obra colectiva editada por Serna, José María y Caballero, José Antonio, *Estado de Derecho y transición jurídica* (editor), UNAM, México, 2002.

- "Apuntes sobre el debate relativo al amparo casación en México", *Reforma Judicial, Revista Mexicana de Justicia*, no. 1, ene-junio, 2003.

- "Apuntes sobre las opciones de cambio en la metodología de la enseñanza del derecho en México, Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 35, abril de 2003.

**III.- Lectures:**

a) Lecture on: <u>Current Developments in South America</u>, Cranfield Institute of Technology (England), October 23, 1992.

b) Lecture at the *Centro de Estudios Superiores Navales*. Title of the Lecture: <u>Proyecto Nacional: Determinación de Intereses, Objetivos y Políticas Nacionales</u>, México, March 23, 1995.

c) Lecture at the <u>Mexican Center</u> del *Institute of Latin American Studies,* University of Texas at Austin.  Title of the lecture: "El Debate sobre la Reforma Institucional en México", October 3, 1995.

d) Lecture at the "Ier. Encuentro Internacional sobre Protección Jurídica de los Derechos Ciudadanos". Title of the lecture: <u>Legislación agraria y Derechos Ciudadanos</u>, La Habana, Cuba, November 9, 1995.

**IV.- Teaching Experience:**

a) In charge of the following courses organized by the *Instituto de Investigaciones Jurídicas* of the UNAM: Constitutional theory, Comparative constitutional law, and comparative government.

b) Visiting professor at the Law School of the University of Texas at Austin. Courses: Introduction to Mexican Law and Latin American law (Survey), 1997-2001.

**V.- Academic awards:**

- C.B. Smith Scholarship, awarded by the *Mexican Center* of the *Institute of Latin American Studies*, University of Texas at Austin, September 23-October 4, 1995.

**VI.- Others:**

- Director of the legal review: *Boletín Mexicano de Derecho Comparado*, published by the Instituto de Investigaciones Jurídicas of the UNAM (since 2000).