IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

| | | |
|---|---|---|
| ELENA TORRUCO REYES, On Behalf of HORACIO DIAZ TORRUCO | § § § | **JUN 1 5 2004** |
| and | § § | **Michael N. Milby Clerk of Court** |
| OLIVER HERRERA GOMEZ, Individually *Plaintiffs*, | § § § | |
| vs. | § § | CIVIL ACTION NO.: 04-CV-43 JURY |
| FORD MOTOR COMPANY *Defendant.* | § § § | |

## FORD MOTOR COMPANY'S MOTION TO APPLY THE LAWS OF MEXICO AND BRIEF IN SUPPORT OF SAME

In the event that this case remains in this forum, defendant Ford Motor Company ("Ford") requests that the plaintiffs' claims be governed by and decided under the substantive law of Mexico. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Ford asks this Court to make a determination of the laws of Mexico and apply same to this case. Ford provides evidence of the law of Mexico in the form of the attached Declaration of Professor Jose M. Serna De La Garza Concerning the Laws of Puebla, Mexico. *See* Declaration attached hereto as **Exhibit "1"**. In support of this Motion, Ford relies upon the Declaration, the exhibits to the Declaration, and the proof previously filed with its "Brief in Support of Ford Motor Company's Motion to Dismiss for *Forum Non Conveniens*" filed contemporaneously with this Motion.

## I. INTRODUCTION

This is a diversity action. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *See Vasquez v. Bridgestone/Firestone*, 325 F.3rd 665, 674 (5th Cir.). Texas has adopted the "most significant relationship" test of the RESTATEMENT (SECOND)

1

OF CONFLICT OF LAWS (1971)(the "RESTATEMENT").  Under that test, the claims in this case should be governed by the law of Mexico.

The facts giving rise to this cause of action lack any relationship to Texas. Comparatively, this case has an overwhelming factual relationship to Mexico.  To that end:

(1)    The plaintiffs are Mexican citizens;

(2)    The accident made the basis of this lawsuit occurred on a Mexican highway;

(3)    The vehicle was purportedly owned by Mexican residents;

(4)    The vehicle was purportedly registered in Mexico;

(5)    The principle case specific witnesses and evidence in this action are located in Mexico, and the witnesses are beyond the subpoena powers of this Court;

(6)    The accident was investigated by Mexican authorities;

(7)    The injured passenger and driver were purportedly treated by Mexican medical providers; and

(8)    Defendant Ford is a Delaware corporation with its principal place of business in Michigan.

The factors set forth above are more than sufficient to support this motion.  The laws of Mexico should govern the claims in this case.

## II. ARGUMENT AND AUTHORITIES

Texas has adopted the "most significant relationship" approach of the RESTATEMENT to decided choice-of-law issues.  *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979), *see also Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2001).  Under this standard, the plaintiffs' claims should be decided under the substantive law of the jurisdiction with the "most significant relationship" to the occurrence and the parties related to that issue.  The RESTATEMENT lists several factors to consider in making that determination:

(1)    The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a)    the place where the injury occurred;
    (b)    the place where the conduct causing the injury occurred;
    (c)    the domicile, residence, nationality, place of incorporation and place of business of the parties; and
    (d)    the place where the relationship , if any, of the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 145 (1971). The RESTATEMENT's approach, and the factors listed therein, demonstrate that it is Mexico -- not Texas -- that has the most significant relationship to the claims and issues in this case.

**A.    The factual considerations of RESTATEMENT § 145 point to Mexican law.**

It is readily apparent that in this case the factual contacts the RESTATEMENT lists for consideration overwhelmingly point to Mexico. It is equally apparent that none of them point to Texas.

**1.    The injuries occurred in Mexico.**

The accident at issue here, and all resulting injuries, occurred entirely in Mexico. This is a starting point of great importance. Texas courts have recognized that the RESTATEMENT normally places significant weight on the place where the injury occurred. *See Torrington v. Stutzman*, 46 S.W.3d at 848; *see also CPS Int'l, Inc. v. Dresser Indust.., Inc.*, 911 S.W.2d 18, 29 (Tex.App. – El Paso 1995, writ denied); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex.App. – Corpus Christi 1990, writ denied). The recent development of the law which holds that the location of the injury is no longer the *only* fact that matters has hardly made that fact irrelevant. As Judge Posner has observed, even under the more flexible choice-of-law approach described in

the RESTATEMENT, the location of the plaintiff's injury is still "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship test'." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999). This makes good sense:

> [f]or that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. . . . [T]he law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents -- can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

*Id.* at 845.

The importance of the location of the injury is echoed in the RESTATEMENT. In fact, in a personal injury case, the RESTATEMENT maintains that the location of the injury is *dispositive* in deciding the choice-of-law unless there is some good reason why it should not be:

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 146, Personal Injuries. *See also* § 145 cmt. f ("[The place of injury is of particular importance in the case of personal injuries and of injuries to tangible things."). Indeed, this is a consistent theme throughout the RESTATEMENT. The appropriate law "will usually be the local law of the state where the injury occurred" to decide the following: whether the defendant's conduct was tortious, § 156(2); the standard of care, § 157(2); the interests entitled to legal protection, § 158(2); whether the actor owed a duty that was violated, § 159(2); legal cause, § 160(2); right of action for death, §175; and the measure of damages in a claim for wrongful death, § 178.

Here, the accident and all resulting injuries occurred in Mexico. As a result, there is no reason to apply the law of any other jurisdiction in deciding the outcome of this lawsuit.

### 2.    The conduct allegedly causing the injuries did not occur in Texas.

The plaintiffs contend that this accident was caused by defects in a vehicle that was designed in Michigan. Plaintiffs have not pleaded any facts that demonstrate anything related to this vehicle or this accident occurred in the <u>State of Texas</u>. *See* Plaintiffs' Original Petition.

The plaintiffs have no legitimate basis on which to insist that this Court consider only what they maintain was the cause this accident. In that vein, Ford contends that it was not caused by a defective product at all, but rather by driver error, improper maintenance and repair, dangerous road conditions, among other factors. Ford is entitled to have its contentions on the cause of this accident taken just as seriously, treated with just as much dignity, and given just as much weight as the contentions asserted by the plaintiffs. Mexico has the "most significant relationship" with the defensive allegations advanced by Ford.

The Fifth Circuit recognized this point in a recent decision concluding, under Texas choice-of-law rules, that Mexican law should govern the claims of Mexican plaintiffs suing for the deaths of Mexican nationals in a vehicular accident in Mexico that was allegedly caused by a defective tire and vehicle designed in the United States. *See Vasquez*, 325 F.3d. *Vasquez* is instructive. In that case, the plaintiffs could not require the court to ignore everything that happened in Mexico simply by stressing their theory that the accident was caused by defective products designed in the United States: "The linchpin of plaintiff's argument -- that the alleged wrongful act was the original design of the vehicle and tires -- reaches too far back in the causal chain." *Vasquez*, 325 F.3d at 674. The plaintiffs could not insist that everything that occurred later be treated as irrelevant -- such as the sale and use of the product, and the accident itself. *Id.* The same is also true here.

### 3.    The parties' residences point to the law of Mexico.

The plaintiffs in this case are presently Mexican nationals living in Mexico, and where Mexican nationals living in Mexico at the time the accident occurred. *See* Plaintiffs' Original Petition, page 1. Ford is a Delaware corporation with its principal place of business in Michigan. None of the parties are residents of Texas; therefore, the allegations pleaded by plaintiffs in this case should be decided under the laws of Mexico.

### 4.    The relationship between the parties, if relevant at all, is centered in Mexico.

The only relationship between the plaintiffs and the defendant is based on this particular vehicle and this specific accident. The vehicle was owned in Mexico, licensed in Mexico, operated in Mexico, and serviced in Mexico. At the time of the accident, the vehicle was being driven on a highway in Mexico by a Mexican national. Mexico is where the alleged injuries occurred. If there is any relationship at all between these parties, it is centered in Mexico.

### B.    The policy considerations of RESTATEMENT § 6 point to Mexican law.

Under the RESTATEMENT's approach, the factual considerations discussed above should be weighed in conjunction with the following policy factors:

    (a)    the needs of the interstate and international systems;
    (b)    the relevant policies of the forum;
    (c)    the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue;
    (d)    the protection of justified expectations;
    (e)    the basic policies underlying the particular field of law;
    (f)    certainty, predictability, and uniformity of result; and
    (g)    ease in the determination and application of the law to be applied.

RESTATEMENT § 6.

Not all of the aforementioned factors can be meaningfully applied here. But those that can be applied unambiguously point to Mexico.

1.    **Mexico has the strongest policy interest in the outcome of this controversy**.

Mexico has an undeniable interest in regulating the conduct of its citizens and residents when they operate vehicles on Mexican highways.  It has a corresponding interest in regulating the conduct of those who build the vehicles that are sold to its citizens and residents, and in protecting the interests of those citizens and residents when they are injured by defective products.  *See, e.g., Vasquez*, 325 F.3d at 673 ("Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there."); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000)(the countries from which the plaintiffs were from and where they were injured "obviously have an interest in protecting the rights and welfare of their citizens.").

In civil matters, the detailed Mexican code reflects the balance that Mexico has chosen to protect the interests of its citizens in light of Mexican legal principles, culture, and economy. That nation's choices should not be lightly dismissed.  As the Fifth Circuit observed concerning similar claims from an accident in Mexico stemming from a case filed in this very Court:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action.  In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate-- even patronizing--for us to denounce this legitimate policy choice. . . .

*Gonzalez, et al v. Chrysler Corporation, et al.*, 301 F.3d 377, 381-82 (5th Cir. 2002).

Of course, the same is true here.  In adopting laws to govern claims such as these, the Mexican government made deliberate choices to resolve trade-offs among the competing objectives and costs of tort law.   Where its values, its vehicles, its highways, and its residents and citizens are concerned, Mexico is entitled to have that balance and its laws respected. Antithetically, Texas has no discernible interest in the claims of these non-resident foreign

7

nationals injured in another country who are suing for alleged defects in products that were neither designed, nor manufactured, nor sold, nor used in the State of Texas. *See Vasquez*, 325 F.3d at 675 ("Given that all decedents and plaintiffs are Mexican . . . there is little justification for applying Texas law, which seeks to protect the rights of its *citizens* to adequate compensation.")(emphasis in original, internal citations omitted).

Indeed, applying Texas law to claims against Ford under these circumstances would be an unconstitutional exercise of extraterritorial jurisdiction to control and regulate conduct occurring wholly outside the borders of this state. *See State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513 (2003); *see also Phillips Petroleum Co. v. Shunts*, 472 U.S. 797 (1985); *BMW v. Gore*, 517 U.S. 559 (1996).

### 2.    The expectations of the parties point to the law of Mexico.

These plaintiffs cannot reasonably expect to avail themselves of Texas law for an accident that occurred in Mexico. The plaintiffs are Mexican nationals. The vehicle was owned in Mexico, serviced in Mexico, used in Mexico, and at the time of the accident was being driven on a Mexican highway by a Mexican resident and citizen. If the justified expectations of the parties are relevant here, this factor points to the laws of Mexico. To quote Justice Holmes: "[It should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts." *Cuba Railroad Co. v. Crosby*, 222 U.S. 473, 479 (1912).

### 3.    Certainty, predictability, and uniformity of result point to Mexico.    The

only sensible way to achieve certainty, predictability, and uniformity of result is to decide this case under the law of Mexico. Considering the alternative drives the point home. If cases involving vehicular accidents in foreign countries were decided under the local laws wherever the cases were filed in the United States, there would be multiple standards of recovery applied to the claims of similar plaintiffs suing the same defendants -- even when the accidents occurred in the

same foreign country, involved the same product, and allegedly happened in the same way. For accidents such at this one that occurred in Mexico, one substantive law would apply to the plaintiffs who sue in Mexico, another law would apply to those who sue in Florida, a third to those who sue in Texas, etc. The results would be uncertain, unpredictable, and far from uniform. Clearly, to avoid such inconsistencies, Mexican law should apply in the immediate case.

### III. RELEVANT PROVISIONS OF MEXICAN LAW

The attached Declaration contains an explanation of the Mexican law that should govern this case. Ford will not repeat that discussion here, but will briefly note a few salient points. Under the law of the Mexico:

A.   American corporations can be sued in Mexican courts.

B.   The laws of the state where the accident occurred will govern the case under the *Lex Loci Delicti* rule and the territoriality principle.

C.   The Civil Code of Puebla (the state where the present accident occurred) provides two causes of action to individuals who claim injuries from an automobile accident that happened in Puebla. The first cause of action corresponds to the notion of "civil liability" found in article 1955 (fault/negligence based liability). The second cause of action relates to the concept of "strict liability" found in articles 2088 and 2090 (non-fault/negligence liability). The 2088 action, however, is available only against the "user" (i.e., the driver); the 2090 action would be available against the "owner" or the "original or derivative possessor" of the vehicle.

D.   Individuals who claim injuries from an automobile accident that happened in Mexico may also bring a claim under the Federal Consumer Protection law.

E.   The Civil Code of Puebla allows plaintiffs to recover economic and moral damages.

F.   Puebla' courts permit judges to receive both foreign public documents and foreign private documents as evidence in a trial.

## IV. PRAYER

Defendant Ford Motor Company requests that the plaintiffs' claims in this case be governed by and decided under the substantive law of Mexico and the state of Puebla. Ford also requests that the Court determine and apply the laws of Mexico under Rule 44.1 of the Federal Rules of Civil Procedure.

Respectfully submitted,

By

Evan N. Kramer
Attorney in Charge
Texas Bar No.: 11704650

OF COUNSEL:

BROWN McCARROLL, L.L.P.
William R. Moye
Texas Bar No. 24027553
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110
(713) 525-6295 Fax

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Ford Motor Company's Motion to Apply the Laws of Mexico and Brief in Support of Same has been forwarded to all known counsel of record as set forth below by U.S. Certified Mail, Return Receipt Requested, on this __11__ day of June, 2004.

_____
WILLIAM R. MOYE

Juan A. Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, Texas 78501
*Attorneys for Plaintiffs*

## AFFIDAVIT OF PROFESSOR JOSE M. SERNA DE LA GARZA CONCERNING THE LAWS OF PUEBLA, MEXICO

Before me, the undersigned authority, personally appeared Jose Maria Serna de la Garza, whose identity was verified by his passport, and who, after being duly sworn, upon oath deposed as follows:

### I.    INTRODUCTION

My name is Jose Maria Serna de la Garza, a Mexican citizen, born in Acapulco, State of Guerrero, Mexico. I am over the age of 18, have never been convicted of a crime, and am competent to make this affidavit. The statements in this affidavit are based on my personal knowledge (except as otherwise stated) and expertise regarding Mexican law and are true and correct. My address is:

> Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
> Del. Benito Juarez, C.P. 03920, Mexico, D.F., MEXICO

Attached hereto as Exhibit "A" is a true and correct copy of my current curriculum vitae, which reflects my professional affiliations, experience and publications. I have been retained to draft an affidavit regarding the following issues:

(a)    whether an American corporation can be sued in Mexican courts;

(b)    whether the laws of the Republic of Mexico provide a cause of action to individuals who claim injuries from an automobile accident that happened in Mexico in the state of Puebla;

(c)    whether the laws of the Republic of Mexico allow individuals to recover monetary compensation for injuries allegedly sustained in an automobile accident that happened in Mexico; and

(d)    whether Mexican courts allow the introduction of discovery obtained in the United States.

In preparing this affidavit, I reviewed primary and secondary sources of Mexican law. I have made the following conclusions:

A.    American corporations can be sued in Mexican courts.

1

B.   The laws of the state where the accident occurred will govern the case under the *Lex Loci Delicti* rule and the territoriality principle.

C.   The Civil Code of Puebla (the state where the present accident occurred) provides two causes of action to individuals who claim injuries from an automobile accident that happened in Puebla. The first cause of action corresponds to the notion of "civil liability" found in article 1955 (fault/negligence based liability). The second cause of action relates to the concept of "strict liability" found in articles 2088 and 2090 (non-fault/negligence liability). The 2088 action, however, is available only against the "user" (i.e., the driver); the 2090 action would be available against the "owner" or " original or derivative possessor" of the vehicle.

D.   Individuals who claim injuries from an automobile accident that happened in Mexico may also bring a claim under the Federal Consumer Protection law.

E.   The Civil Code of Puebla allows plaintiffs to recover economic and moral damages.

F.   Puebla's courts permit judges to receive both foreign public documents and foreign private documents as evidence in a trial.

## II.   STRUCTURE OF MEXICAN LAW

A.   <u>**General Structure: The Mexican Constitution Reserves to Each of the Mexican States the Power to Make Laws Except to the Extent Allocated to the Federation.**</u>

Mexico is a federation, and, like the United States, each of the thirty-one (31) Mexican states and the Federal District has its own codes and laws with respect to matters not expressly declared federal by the Federal Constitution. The basis for the division of powers in Mexico's federal system is found in the residual clause of article 124 of the 1917 Mexican Constitution. Partially inspired by the Tenth Amendment of the United States Constitution, article 124 states that "it shall be understood that the powers not expressly attributed by this Constitution to the federal authorities, are

reserved to the states."[1]  The similarity between article 124 of the Mexican Constitution and the Tenth Amendment of the United States Constitution is readily apparent; however, the clauses are not identical, and therefore their meaning and impact upon the allocation of powers is somewhat different.

One such difference is the use that article 124 of the Mexican Constitution makes of the adverb "expressly."  The antecedent of article 124 of the Mexican Constitution is article 117 of the Mexican Constitution of 1857.  The Mexican constituent  assembly of 1856-57 borrowed part of the United States' Tenth Amendment formulation, but decided to include the adverb "expressly."  It was not a casual circumstance but a manifestation of intent.  The intention was to create a more rigid system of division of powers between the federation and the states in such a way as to make it perfectly possible to distinguish which limited set of powers belonged to the federal system and which belonged to the states.[2]

B.      **Tort Law Is a Matter Generally Reserved to Each of the Mexican States.**

Most of the powers allocated to the federal government are found in articles 73-107 of the Mexican Constitution.[3]  Notably, none of these articles address civil matters, including tort matters.  As noted by the Mexican legal scholar Carlos Arellano Garcia, "concerning civil matters, the state of the Republic have the reserved power to legislate."  Arellano Garcia, Carlos, "Exegesis del Article 12 del Districto Federal," Estudios Juridicos en Memoria de Alfonso Noriega, Porrua, p. 26 (Mexico 1991).  And,

---

[1] The Tenth Amendment of the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. CONST. amend. X.

[2] It is worth noting that the federal and state governments have "concurrent powers" in a limited set of policy areas, but not as to the general tort claims involved here.

[3] Article 73 refers to the powers of the federal Congress; Article 74 refers to the powers of the Chamber of Deputies; Article 76 refers to the powers of the Senate; Article 89 refers to the powers of the President; Articles 103-07 enumerates the powers of the federal courts.

although some provisions in the Federal Civil Code apply to tort cases, the application of these articles is limited to instances where the federation as a party is asserting a national interest – for example, when: (1) the sovereignty of the nation itself is affected; (2) when the patrimony or credit of the nation is affected; or (3) when an entity acting in representation of the United Mexican States is involved. *See, e.g.*, Juicio Ordinario Federal; 6/52, Castro Jose Agustin, 2 de diciembre de 1953, Semanario Judicial de la Federacion, Pleno, Quinta Epoca, Parte CXX, p. 2141; *see also* Competencia Civil 31/91, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte 59, Noviembre 1992, Tesis 3ª/J.22/92, p. 18; Varios 289/53, Comercial Textil del Centro, Semanario Judicial de la Federacion, Pleno, Qiunta Epoca, Parte CXXV, p. 1244. Simply put, federal law would apply when there is a federal party asserting or representing a national interest – both of these requirements must be met.

Tort claims, such as claims for personal injuries arising out of an automobile accident, are governed by the civil codes of the various Mexican states. For example, Fernando Vazquez Pando notes in his article regarding civil liability in Mexico that tort law is a matter of state law:

> The subject of civil liability, [which] is the Civil Law equivalent of torts, which in the case of Mexico is a matter of state jurisdiction and as such is governed by the Civil Code of each of the components [the states] of the federation."

Vazqauez Pando, Fernando, "De la Responsabilidad Civil," El Foro, p. 25, Octava Epoca, Tomo IV, No. 1. Likewise, comparative law professor Boris Kozolchyk, in his article on Mexican damages published in the Arizona Journal of International and Comparative Law, properly states that an automobile accident between private parties evokes no federal interest and is therefore governed by Mexican state law. Kozolchyk, Boris, "Mexican Law of Damages for Automobile Accidents: Damages or

4

Restitution?", Arizona Journal of International and Comparative Law, p. 195, Vol. 1,

1982. In this article, Professor Kozolchyk states:

> Mexico is a federal nation, and each Mexican state has its own set of
> codes in non-federal matters.   Accidents involving privately-owned
> vehicles which occur within state boundaries are generally treated as
> subject to state law.  The Supreme Court of Mexico has stated in five
> consecutive decisions that, where there is an automobile accident, the
> interests involved are private in nature, i.e., one private party suing the
> other, and there is no prejudicial effect to the security or integrity of
> federal roads.  Thus, the subject matter is non-federal, or state, in nature.

*Id.*

### C.    Under the *Lex Loci Delicti* Rule, The Laws of Puebla Would Govern the Tort Claims for an Automobile Accident That Occurred in Puebla.

The reason why tort claims are governed by the civil code of the various

Mexican states is the *lex loci delicti* rule.  This rule is derived from the territoriality

principle, which is followed by most Civil Codes of the Mexican States.[4]  In the state of

Puebla, the *lex loci delicti* principle can be derived from articles 1, 14 and 21 of the

Puebla Civil Code. Article 1 states that, "This Code shall govern, in the territory of the

State of Puebla, relations and situations that are a matter of civil law".[5] Article 14 states

that  "the laws of the State of Puebla are applicable to all the persons who are in its

territory, and to all the acts and facts that occur in its jurisdiction or territory, and to all

those who validly subject themselves to said laws; but in those cases in which the

application of the law of another state or of foreign law is proper, or in accordance with

what is foreseen in international treaties of which Mexico is a party. Article 21 further

states, "real and personal property located in the territory of the State of Puebla  shall be

---

[4] For a general discussion why the territoriality principle has prevailed in Mexico, see  page 35 of the article of Arellano Garcia, cited within, which states that "the bitter experiences derived from numerous claims by foreign powers . . . broadly justified the preservation of the territoriality principle in Mexican law."

[5] Under Mexican law, tort related situations are a matter of civil law, governed by the corresponding Civil Code.

governed by the rules of this Code, even when the owners are not from Puebla or residents in said State."

I understand that certain plaintiffs may suggest that, because an accident occurs on a federal highway (and in some cases involve damage to the federal highway), their claims are governed by federal law. This is incorrect. The Supreme Court of Mexico has rejected this argument. In a case involving an accident occurring on a federal road, the Supreme Court held that state law would apply to resolve the tort claims of the parties. The Supreme Court of Mexico stated in its decision:

> Connecting article 104 with 124 of the Constitution, it must be understood that state courts, including those of the Federal District, have jurisdiction to hear cases that spring from the fulfillment and application of state laws. This is so because this matter [objective liability] is not reserved to the courts of the federation. In this way, if the subject matter of the dispute is one limited to liability for a created risk imputed to a company of general means of communication, because one of its buses participated in an accident in which a person died, and in which the vehicle owned by an individual was harmed, **the applicable law is the civil code of the place in which the accident occurred**.

Competencia Civil, 97/81, Semanario Judicial de la Federacion, Septima Epoca, vols. 163-68, Cuarta Parte, p. 114 (emphasis added).

In cases where the accident results in damage to a federal highway, the result would be no different *for the personal injury claims of tort plaintiffs*. The federation would have its own cause of action under federal law to sue for damages caused to the federal road; this would be the only federal interest that could support application of federal law. Of course, in tort lawsuits brought by private parties, there is no national interest to invoke the application of federal law. Therefore, private individuals would only have a separate action to recover personal injury damages under the civil code of the state where the accident occurred.

In the same manner, the method for quantifying or computing tort damages is governed by the civil codes of the various Mexican states. For example, the civil codes

for some states establish their own formulas for determining the appropriate measure of damages. *See, e.g.*, articles 1988-1992 of the Puebla Civil Code; *see also* article 2086 of the Sonora Civil Code; *see also* articles 2055-2058 of the Tabasco Civil Code. Others, however, refer to the rules of the Federal Labor Act to determine the appropriate measure of compensation.[6] *See, e.g.*, article 1390 of the Jalisco Civil Code and article 1891 of the Coahuila Civil Code. This does not mean the issue of damages is governed by federal law. Rather, some Mexican states' civil codes have merely adopted, as part of their own state law, the formulas for compensation of damages established by the Federal Labor Act.

**D.    Conclusion**

The applicable tort laws in the present case are in the Civil Code of the State of Puebla (the state where the present accident occurred), and specifically, as we shall discuss, the applicable compensation laws for material damages are supplied by that same Code. The text of the Puebla Civil Code coincides with that of the Civil Code for Federal District and with the civil codes of other Mexican states; thus, federal case law on torts might also provide criteria for the interpretation of Puebla's tort rules.

**III.    MEXICAN TORT LAW**

**A.    Products Liability**

The notion of "products liability" has had a limited development in the Mexican legal system. There is no case law on the subject, and legislatures have been reluctant in introducing statutes on this matter. The law of Puebla, however, provides two potential causes of action to individuals who claim injuries from an automobile accident that happened in Mexico.

---

[6] The Federal Labor Act ("FLA") gives workers a cause of action against their employer for accidents and illnesses that occurred during their scope of employment. It provides an indexed award of damages owed by employers to employees based upon the degree of injury or due to death. To the extent that the labor code has been adopted by a particular state, these rules would apply to tort cases under such state law to determine the compensation that can be claimed by plaintiffs. Kozolchyk, p. 194.

### B.    Negligence Claims:  Article 1955 Actions

#### 1.    Generally

Under article 1955 of the Puebla Civil Code, "The author of an illicit act that causes damages or losses to another person, has to repair both." Yet, article 1960 of said Code states that there is no duty to make such reparation if defendant proves that the damage "…was produced as a consequence of the fault or inexcusable negligence of the victim." These articles could provide a negligence-based cause of action for the allegations made in this type of case.

#### 2.    Illicit Defined

Under Mexican tort law, the general understanding of an "illicit act" is an act, positive or negative, performed with fault or negligence that causes damage to another. *See* also Rojina Villegas, Rafael, "Derecho Civil Mexicano, Obligaciones," Tomo II, Porrua, Mexico, 1998. Fault is defined as intent to cause damage. *Id*. at 95. Negligence is defined as imprudence, lack of expertise, lack of prevision and care. *Id*. Whether an act is negligent will be evaluated under the circumstances of the case. In sum, defendants, in tort cases, are responsible for the harmful consequences of their behavior, if the plaintiff proves that the defendant intentionally produced harm or failed to conduct himself with the proper degree of care and precaution normally expected under the circumstances.

#### 3.    Causation

Additionally, the plaintiff must prove a causal relation between the defendant's behavior and the harm that was produced. Puebla' Civil Code does provide a specific definition of causation in tort law in its article 1959, which is equal to the definition provided by article 2110 of the Federal District's Civil Code: "[d]amages and losses

must be a direct and immediate consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur."

Mexican federal courts have provided some standards to determine the existence of direct and immediate causation. For example, the Second Collegiate Court of the First Circuit has found that directness between cause and consequence in strict liability cases means that between cause and effect there should be no other factor that breaks that link. In this case, the defendant was required by plaintiff to pay damages that resulted from a fire that occurred in the premises of the defendant's business, where flammable substances were stored. The federal court said that to prove direct and immediate link it should be proved which was the origin of the fire: a) the use or manipulation of flammable substances; or b) an external factor.[7]

Moreover, in a more recent decision, the Second Collegiate Court of the Second Circuit stated that in a strict liability action, the relation of causality must be proved with precision, showing how harm was produced, who provoked it and providing evidence to prove direct causation by the author of harm.[8]

### 4.    Burden of Proof

The burden of proving harm, causation and negligence in an article 1955 action is on the plaintiff. This is so, in accordance with a general principle of Mexico's procedural law, according to which the party who asserts a fact about the other party has the duty to prove it.

### 5.    Defenses to 1955 Actions

Defenses to an article 1955 action include:

---

[7] Amparo Directo 2027/89, Ultraespuma de Mexico, S.A., Semanario Judicial de la Federacion, Tribunales Colegiados de Circuito, Octava Epoca, III Segunda Parte-2, p. 690.

[8] Amparo Directo 319/2002 Jacobo Valdez Gonzalez et al., Semanario Judicial de la Federacion, Tribunales Colegiados de Circuito, Novena Epoca, Tomo XVI, Septiembre de 2002, Tesis II.2o.C.368, page 1438.

(a)    failure by the plaintiff to show fault on the part of the defendant;

(b)    a showing by the defendant that the plaintiff was "inexcusably" negligent;

(c)    failure by the plaintiff to show causation between the defendant's behavior and the injury;

(d)    acts of God;

(e)    where the action is brought more than one year from the moment the injury occurred (*see* article 1907-IV of the Puebla Civil Code);

### 6.    "Inexcusable Negligence"

Article 1955 of the Puebla Civil Code states that the defendant is not liable at all when the plaintiff was also at fault or was inexcusably negligent. Neither the Puebla Civil Code nor case law provide an explicit definition of "inexcusable negligence." From the various cases that address this issue, however, it is my opinion that inexcusable negligence occurs when a person puts himself in a situation he knew or should have known was dangerous or risky. *See* Amparo Directo 1960/53, Semanario Judicial de la Federacion, Primera Sala, Quinta Epoca, Parte CXXIX, p. 69 (finding inexcusable negligence where the victim was run over because the victim placed himself in the zone where the paving machines were working, disregarding the signals put by workers); Amparo Penal Directo 2643/47 Cepeda Millan Venancio, Semanario Judicial de la Federacion, Primera Sala, Quinta Epoca, Parte XCV, p. 1777 (finding inexcusable negligence on the part of a bus driver who was hit by a trolley when the bus driver failed to yield the right-of-way to the trolley, thus, running an unnecessary and unavoidable risk); Amparo Directo 7850/43, Cia. Limitada de Ferrocarril Mexicano, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte LXXXIV, p. 369 (finding inexcusable negligence on the part of a person who got down from a train

10

while the train was still moving, thus exposing himself to the imminent danger of being destroyed by the train); Carmona Ocotlan, 21 de febrero de 1945, Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte LXXXIII, p. 2953 (finding inexcusable negligence on the part of a person who was hanging by the side of a trolley (i.e. as a "mosca" [fly]); *compare with* Amparo Civil Directo 1871/52, Cia. Mexicana de Luz y Fuerza Motriz, S.A., Semanario Judicial de la Federacion, Tercera Sala, Quinta Epoca, Parte CXXV, p. 2480 (finding no inexcusable negligence where the victim was electrocuted when the posts he was carrying touched an electrical cord). Whether a certain act or combination of acts rises to the level of "inexcusable negligence" is a question for the trier of fact to decide.[9]

I reviewed the definition of "assumption of the risk" in Dorsaneo's Civil Litigation Guide where he states that "the plaintiff will be found to have assumed a risk if he or she knew, understood, appreciated and consented to the exposure to the danger."[10]    It is my opinion that the concept of "assumption of the risk" is equivalent to the Mexican concept of "inexcusable negligence."

C.     **Strict Liability Claims: Article 2088 Actions Against the "User" of a Dangerous Product and Article 2090 Actions Against the "owner" or "possessors" of Machines that Move.**

Article 2088 of the Puebla Civil Code recognizes strict liability (no-fault responsibility ("*responsabilidad objetiva*") on the part of the *user* of dangerous items and substances. Specifically, article 2088 states that "when a person as an owner, or as original possessor or derivative possessor[11], either by himself or through his dependents,

---

[9] Note, in Mexico there are no trials by jury; hence, the judge is the trier of fact.

[10] William V. Dorsaneo III, Texas Litigation Guide § 320.09(1)(c) (citing *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex. 1975), *and Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 458 (Tex. 1972)).

[11] The phrase "original possessor" generally refers to he who holds possession of property with ownership of title. A perfect example of this understanding is found in article 1791 of the Federal Civil Code, which states: "If the owner of property delivers it to another pursuant to a juridical arrangement whereby he grants to the other the right to temporarily retain it and reap its fruits, or occupy it as a tenant, or hold it as a pledge in guarantee for an indebtedness, or as a bailee or under analogous conditions, both parties have

makes use of mechanical devices, instruments, items, substances or things which are dangerous per se, for instance on account of the speed they develop, their explosive or flammable nature, the energy of the electrical current that they conduct, or other analogous causes, he is responsible for the damage such objects or substances may cause." For its part, article 2089 states that this liability does not require fault or negligence of defendant, but ceases to exist when there was inexcusable negligence or fault of the victim.

In sum, in an article 2088 action, it must first be determined if the things or substances qualify as those explicitly mentioned by said article, or as analogous causes. Then the defendant has the burden of proving that they did not actually cause the damages. One exception is where the user of such items and substances proves that such damage has been produced by the fault or inexcusable negligence of the victim. Note that an article 2088  action is limited in its application to <u>users</u> (e.g., drivers of automobiles) who may be "owners" or "original or derivative possessors" of inherently dangerous things.

For its part, article 2090 of the Puebla Civil Code also recognizes strict liability actions against the "owners" or "original or derivative possessors" of "machines that move." Specifically, article 2090 states that:

"Art. 2090.- The owners or original or derivative possessors of personal or real property shall be liable for damages caused:

I...V.

VI.    By the weight or movement of machines..."

The civil codes of other Mexican states also recognize this expansion of strict liability. The Supreme Court of Mexico interpreted one such code in this manner in a case in

---

possession of the property, the one holding title has original possession, and the other has derivative possession."

which two vehicles crashed harming a third party. *See* Amparo Directo 6542/56, Maria Morales de Ceballos, Semanario Judicial de la Federacion, Tercera Sala, Sexta Epoca, X, Cuarta Parte, page 218.. Specifically, the Supreme Court found that the owner of one of the vehicles was jointly liable (without fault), together with the drivers (users) of the vehicles involved in the collision even though the owner was not one of the drivers. *Id*.

In sum, the strict liability principle found in article 2088 and article 2090-VI do not apply to the manufacturer, the designer or even the seller of certain products (e.g., a tire). Rather, liability under these articles applies only to the **user** of objects, techniques or substances that are inherently or potentially dangerous, and to the **owner** or **original or derivative possessors** of machines that move.

Finally, according to article 2094 of Puebla's Civil Code, the statute of limitations for no-fault/no-negligence actions is of two years, which start to run since the day in which the harm was produced.

**D.    Warranty Claims for the "Consumer" of a Good Or Service:   The Federal Consumer Protection Act.** .

Mexican law also recognizes breach of warranty claims involving products or services. Warranties in the field of commercial transactions in Mexico are governed by the Federal Consumer Protection Act (FACP). This statute covers the two kinds of actionable warranties: legal warranties and conventional warranties. These warranty claims are only in favor of a "consumer," which according to article 2 of the FACP, is a physical or juristic person that acquires or enjoys as a final recipient of goods, products

13

or services.[12]  It also creates a duty to warn on the part of a "supplier" of goods at the time of sale.

### 1.    Legal (or "Implied") Warranties

The FACP provides that "legal warranties" shall govern the sale of goods or products.  These legal warranties "imply" certain minimum warranties regarding a product.  These legal warranties are created by the legislature, and exist independently from the will of the parties to a sales contract.  There are two types of legal warranties, which can be found in articles 82 and 92 of the Federal Consumer Protection Act.

Article 82 provides an implied warranty for a consumer covering hidden defects and the customary use of the product or service. Article 82 provides:

> The consumer may chose either to rescission of the contract or a reduction, and, in any case, he can claim a monetary compensation for damages and losses, whenever the goods sold or the subject of the contract have hidden defects that make them improper for their habitual use or that diminish their quality or the possibility of using them. Whenever the consumer choose rescission, the supplier has a duty to return the purchase price.

It is important to note that this warranty obligation derives from contract.  Thus, the remedies allowed under article 82 would be contractual in nature.  Article 82 would not provide a basis to recover tort damages.

Moreover, the implied warranty found in article 82 is subject to the one year limitation period established by article 14 of the FACP.  Article 14 provides:

> The statute of limitations concerning the rights and obligations established in this statute law shall be of one year, unless stated otherwise in this statute law.

There are no specific provisions of the FACP that provide a different limitation period for the implied warranty provided by article 82.  Thus, the implied warranty under article 82 is provided for one year.

---

[12] The common understanding of this "consumer" provision is one who actually purchases, rents, or leases goods products or services.

There is also another legal, or implied, warranty found in article 92 of the FACP.

Article 92 provides:

> The consumer shall be entitled to the replacement of the product, or to an allowance, offset or refund of the amount paid, at the consumer's sole election, in any of the following cases:

> I.    If the net weight or quantity of the product is lower than that displayed on the container or package thereof, after considering tolerance levels permitted by the applicable norms;

> II.   If the quality, brand, specifications or any other material element of the product are not consistent with the quality, brand, or specifications being offered; and

> III.  If the product is repaired, but becomes unfit for its intended use within the warranty period.

> As to any devices, appliances, and products that due to the features thereof require a certain technical knowledge, the opinion of an expert or the results of tests conducted by a duly authorized laboratory shall prevail.

Thus, the implied warranty provided under article 92 would only result in the replacement of a product or the refund, in whole or in part, of the purchase price.

Unlike the warranty provided by article 82, the FACP expressly provides for a lesser limitation period governing warranties created under article 92. This limitation period is found in article 93 of the FACP, which provides in relevant part:

> The claim established in the preceding article [article 92] may be brought either against the seller or the manufacturer, at the consumer's choice, within two months after the date on which the product was received, unless the alteration of the product is the consumer's fault.

Thus, while the warranty in article 82 would last for a year, the implied warranty found in article 92 is time barred two months after the consumer has received the good in question.

The FACP provides that the implied warranties provided by articles 82 and 92 would extend beyond the supplier of the good or service. In particular, article 79 of the Federal Consumer Protection Act states that these two warranties can be claimed either

from the manufacturer, the importer, or the distributor, unless any of them or a third party solely accepts for himself such duty, in writing.

### 2.    Conventional (or "Express") Warranties.

Article 79 of the FACP recognizes that a party may agree to provide a "conventional warranty," or an "express" warranty, that differs from the implied warranties provided by articles 82 and 92 of the FACP.  However, article 79 makes clear that a conventional warranty may not be used to reduce the consumer's rights corresponding to the minimum implied warranty provided under articles 82 and 92.

### 3.    A Supplier's Duty to Warn.

The FACP also imposes a limited duty to warn regarding the proper and safe use of a product.  Article 41 provides:

> In relation to products or services that according to the applicable rules, are considered as potentially dangerous for the consumer or damaging to the environment or when their dangerousness is foreseeable, the supplier shall include instructions that warn about the damaging characteristics and explain clearly the recommended use or purpose and the possible effects of use, application, or purpose beyond the recommended guidelines.  The supplier shall be liable for damages and losses caused to the consumer by the breach of this obligation.

Thus, under article 41, a supplier must include with the provision of a good or service instructions or warnings concerning safe and proper use of the product or service.

It is important to note that the duty to warn provided in article 41 applies only to a "supplier" of the good or service that is the subject of the sales contract.  The FACP defines the term "supplier" to include dealers of a good or service, not the manufacturer.  Specifically, article 2 of the FACP states that a supplier is "the physical or juristic person that habitually or periodically offers, distributes, sells, rents or grants the use or enjoyment of goods, products and services."  Thus, the manufacturer and/or designer of the product are not considered suppliers for purposes of the FACP.  In any event, the

16

warning and instructions required by article 41 are at the time of sale of, or the consumer's receipt of, the product of service.

## IV.     Mexico's Compensation System

### A.     Generally

The Civil Code of Puebla provides that the plaintiff can choose between the reparation of damages (i.e., reestablishing the status quo), whenever that is possible, or the payment of compensation.  *See* article 1987 of the Puebla Civil Code.  If the plaintiff selects the second option, he or she is entitled to "economic" and "moral" damages.  *Id.*; *see also* article 1993 of the Puebla Civil Code (discussing "moral" damages).

With respect to the appropriate measure of material damages, the Supreme Court of Mexico recognizes that, because the measure of damages for the family of a deceased individual cannot be proven in every case, asking the relatives of the victim to prove the measure of damages they have suffered would be impossible and would amount to leaving them without protection – which goes against the goals of the law and the legislature; hence, the legislature has established a method for calculating the amount of compensation.   Thus, the Supreme Court has held that this legislation is the measure of damages:

> REPARATION OF DAMAGE IN CASE OF DEATH.   TO CALCULATE THE AMOUNT OF DAMAGES THE CIVIL CODE MUST BE APPLIED (FEDERAL LEGISLATION).   The Federal Criminal Code states that the reparation of damages shall be calculated taking into account the harm that has to be repaired and the evidence offered in the proceedings, yet, it is well known, and experience shows, that damages that affect the victim's family, as a consequence of which the latter has died, cannot truly be a matter of proof in each and every case, due to the fact that it is very difficult to calculate the probable age of the victim, his health condition (after some time has passed since the burial), his will to provide support for the family, and the proportion of his income that he used to allocate for that purpose, etc.; *therefore, this*

*difficulty, which derives from the very nature of things, has always been overcome by an empirical determination made by the legislator itself, and thus, Mexican federal legislation of the Federal Civil Code refers to the rules of the Federal Labor Act, and also determines the income or wage that has to be taken into account to calculate the damages that can be recovered.* In this way, and according to a sound interpretation of article 31 of the Federal Criminal Code, which does not state the precise way to calculate damages in cases of death, such loophole must be filled in with the criteria provided by the Civil Code, because both laws spring from the same Federal legislator and must complement each other; this is more so, whenever one is dealing with a civil action to make effective the purely civil liability of third parties; this criteria is compatible with a scientific and rational interpretation of the law, because the social aim of criminal law is the protection of those who have been the victims of a crime and if it was left to the family of the victims to determine with different pieces of evidence the amount of damages that could be recovered as a consequence of the victim's death, in practical terms that would amount to leave them without protection, something which would contradict the goal of the law and of the Legislator; *for these reasons, in cases of civil liability that can be claimed by third parties, it is only logical that the amount of damages has to be calculated according to the rules set by the legislator itself for similar cases in which the family must be compensated for the death of the person that provided for the family's economic support.*

Direct amparo, 8580/67, Materiales Triturados, S.A., August 13, 1969, *Semanario Judicial de la Federacion*, Primera Sala, Septima Epoca, Segunda Parte, p. 27 (emphasis added).

As for "moral damages," their purpose "is to *compensate* the victim." Friedler, Edith, "Moral Damages in Mexican Law: A Comparative Approach," Loyola of Los Angelos Intern'l and Comparative Law Journal, p. 263, vol. 8, no. 2, 1986. In other words, a moral damages recovery is not awarded for the purpose of punishing the wrong-doer. *Id.*

In essence, the paramount principle governing the recovery of material and moral damages is the restoration of the victim to pre-accident status – the *status quo*. This principle has been aptly appreciated by comparative law professor Kozolchyk in his article on the measure of damages in Mexico:

Mexican courts would prefer to restore the victim to what he was prior to the accident rather than compensate him for what he would have been had the accident not taken place. This would provide a possible explanation to what appears to a United States observer to be Mexico's meager standards of compensation. Underlying the Mexican approach to damages is the notion that the future is basically unpredictable or predictable only by the grossest of approximations, whereas the parties' past, who they were when the accident occurred as contrasted with what they were likely to become, is much more certain.

Kozolchyk, Boris, "Mexican Law of Damages for Automobile Accidents: Damages or Restitution?", Arizona Journal of International and Comparative Law, p. 203, Vol. 1, 1982.

## B.    "Economic" Damages

As a matter of principle, when damage is caused to persons in their physical integrity, article 1991 of Puebla Civil Code states that the measure of damages consist of:

(a) all hospital and medical expenses incurred into as a consequence of the harm; *see* article 1991; and

(b) funeral expenses (in cases of death);

These sums shall be paid to the person who incurred into said expenses (see art. 1991).

### 1. Death and total permanent disability cases

Besides, and more specifically, article 1988 states that when damage is caused to persons, producing death or total permanent disability, the following rules shall be applied:

I.    Economic damages shall consist of a sum equal to 1,200 days of the victim's salary.

19

II. If the salary of the victim exceed an amount equivalent to the general minimum salary valid in the region multiplied by four, the excess shall not be taken into account to determine the measure of damages, unless defendant has economic capacity enough to fully compensate the victim.

III. If it is not possible to determine the victim's salary, the sum shall be calculated by expert witnesses, who shall take into account the capacities and abilities of the victim in relation to his profession, job, work or kind of activity he used to perform.

IV. If the expert witnesses have no solid basis to produce an opinion, and whenever the victim earned no salary or performed no work, the basis to calculate the indemnity shall be the general minimum salary valid in the region where the damage was caused.[13]

In these cases, the compensation shall correspond to the victim, if the harm produced total permanent disability; but if the victim dies, it shall correspond to the persons who were economically dependent on the victim. Yet, if no person depended economically on the victim, it will go to the persons on whom the victim was economically dependent. If no such persons exist, then the compensation shall correspond to the victim's heirs (see article 1989 of Puebla's Civil Code).

### 2.    Partial-permanent, partial-temporary or total-temporary Disability Cases

These cases involve injuries that result in a decrease to the injured person's ability to work. According to article 1990 of Puebla's Civil Code, in these cases the

---

[13] For the purposes of minimum salaries, Mexico is divided into different regions.

measure of damages shall be calculated by the judge, who will have to follow the rules set forth in article 1988 of said Code (*see above,* Section IV-B.1 of this affidavit).

Further, article 1990 states that expert witnesses shall determine the duration and degree of the disability and that, under no circumstances shall the measure of damages thus determined exceed the sum that would have corresponded in case the victim had died.

### C.    Moral Damages

The Civil Code for the State of Puebla (article 1993) also recognizes the right to seek compensation for "moral damages." The Civil Code of Puebla gives no definition of which items are protected by the concept of "moral damages." However, it would be proper to cite here what other Civil Codes of Mexico define as this kind of damages. In most of those codes, moral damages  protect a person's "moral patrimony," which includes a person's feelings, affections, beliefs, honor, reputation, private life, physical aspect, or the opinion that others have about him (these are considered as "personality rights"). This understanding of moral damages is perfectly applicable in Puebla.

Article 1993 of the Puebla Civil Code further states that the amount of "moral damages" is determined by the judge "in a discretional and prudent way", taking into account the seriousness of the injuries caused to the victim in his personality rights".  In addition, article 1994 states that in cases of personal injuries that do not produce a total or partial inability to work, the judge shall take into account the visibility of the injury, the duration of the visible injury and, given the case, the age and specific conditions of the victim, in order to determine the indemnity for moral damages.

Finally, article 1995 states that the measure of moral damages is independent of the existence or not of "economic" damages, but it also makes clear that it shall not exceed of an amount equivalent to one-thousand days of the general minimum salary valid in the region where the harm was produced.

There is one important point worth highlighting with respect to the moral damages permitted under articles 1993-1995 and with respect to moral damages generally in Mexico. Mexico does not recognize the recovery of moral damages in a "survival" type of claim.[14] In fact, some commentators have referred to this concept as "absurd." *See* Cienfuegos, David, "Interpretacion Jurisprudencial de la Responsibilidad Civil por Daño Moral", Revista de la Facultad de Derecho, UNAM, Tomo LI, No. 235, 2001, p. 19. The reason why a claim for moral damages does not survive the death of a person/individual is because moral damages seek to protect a person's "moral patrimony" – i.e., a person's feelings, affections, beliefs, honor, reputation, privacy, physical aspect, physical aspects or the opinions others have of him. *See* Cienfuegos, David, "Responsabilidad civil por dano moral, Revista de Derecho Privado ano 9, no. 27, Sept-Dic., 1998, Mexico, p. 60. These attributes are inherently of a personal nature and an action to recover damages to such attributes "cannot be transferred to third parties by inter-vivos acts, in other words, it is non-transferable, and can only pass to the victim's heirs when the victim brought the action himself." *See* Lopez Monroy, Jesus, Codigo Civil para el Distrito Federal en material comun y para toda la Republica en material federal, Comentado, Tomo IV, UNAM/Miguel Angel Porrua, Mexico,

---

[14] I have reviewed Section 71.021 of the Texas Civil Practice and Remedies Code regarding a survival cause of action under Texas law. I have also reviewed Texas Pattern Jury Charge § 10.2 regarding how damages for a survival claim would be quantified under Texas law. I understand a survival action to be, generally, a claim for the decedent's own damages that were suffered prior to his death.

1993, p. 70. Hence, if the victim did not file the corresponding action before dying, there is no action that can be transmitted to the heirs and pursued by them in a court of law. The reason behind this rule is that the Code supposes that, given the subjective nature of "moral damages," the victim is the only person who can determine whether or not there has been a harm on his/her "moral patrimony" (feelings, affections, reputation, honor, etc.).[15] Therefore, the Code assumes that if the victim did not bring the suit for moral damages while still alive, that was because he or she determined that there was no actual harm.[16]  On the other hand, if the victim sued to recover moral damages and afterward died, the action passes to his estate and can be pursued by his heirs.

### D.      Punitive Damages Are Not Permitted.

There are no punitive damages in Mexican law. The notion of punitive damages (which according to one Mexican author only exist in the United States and England)[17] is repugnant to a principle of paramount importance in the Mexican legal system—that the sole purpose of damages is to restore the equilibrium that was altered by the tortuous behavior of the wrongdoer.  In Mexico, it is said that when a damage occurs, the victim's patrimony loses its equilibrium.  Cinefuegos, David Salgado, "Responsabilidad

---

[15] It is simply impossible to argue that when the victim dies there is a harm in his "moral patrimony" and therefore that his estate would have an action to claim moral damages. This is not possible because "life" is not considered as part of the "moral patrimony" of a person under Mexican law.  Once again, the only items protected by the concept of moral damages are a person's feelings, affections, beliefs, honor, reputation, private life (that is, privacy, which is different from "life"), physical aspect, or the opinion that others have about him. If "life" is not part of that concept, then "death" cannot give rise to a cause of action for moral damages.

[16] See commentaries of Prof. Jose de Jesús López Monroy to article 1916 of the Civil Code for the Federal District.  Various authors, *Código Civil para el Distrito Federal en materia común y para toda la República en materia federal, Comentado*, vol. IV, UNAM/Miguel Angel Porrúa, México, 1993, pp. 69-70.

[17] Davalos Mejia, Carlos, "Apunte comparativo de los "punitive damages," el "pain and suffer," la estructura de los "jurados," y otros conceptos del derecho procesal estadounidense, con sus equivalentes en el procesal mexicano," Juridica, No. 19, 1988-89, pagina 114.

civil por dano moral," Revista de Derecho Privado, ano 9, numero 27, septiembre-diciembre, 1998, pagina 54. (noting that "damage produces an alteration in the equilibrium of the victim's patrimony that must be repaired by the wrongdoer."). To restore the equilibrium of the victim's patrimony, the damages a judge awards must (1) put the victim in the same situation he enjoyed before the harm was produced and (2) not result in enrichment of the victim.[18] An award that intends to punish the tortfeasor and, hence, results in an award of damages that puts the victim in a *better* position than he was before the harm was produced disturbs the equilibrium of the victim's patrimony much the same way that an award that leaves the victim in a *worse* position than before the damage was produced. Mexican law does not permit this. As the Mexican Supreme Court noted with respect to moral damages:

> Equity supposes . . . that the defendant should not suffer excessively in his patrimony to the benefit of the victim's patrimony, considering that the latter shall also be paid an indemnity for damages and losses that result from a successful action for civil liability.[19]

*See also* Friedler at 263, (noting that "[m]oral damages recovery is not awarded for the purpose of punishing the wrongdoer. . . . The purpose of moral damages recovery in civil law tort actions is to compensate the victim.") and Kozolchyk at 203 (noting that ". . . the idea of restoration of the victim's pre-accident status is still paramount. . . .").

In sum, Mexican law does not permit for the recovery of punitive damages because that would disturb the equilibrium of both the victim's and the defendant's patrimonies, by producing an enrichment in the former, and an excessive decrease in the latter.

---

[18] "Compensation or indemnification is the equivalent of monetary payment of the primary obligation. The principle that inspires compensation is not the enrichment of the victim, but to give him a fair satisfaction for the harm suffered. This principle is valid not just for the judge, but for the legislator." Cinefuegos, David Salgado, "Responsabilidad civil por dano moral," Revista de Derecho Privado, ano 9, numero 27, septiembre-diciembre, 1998, pagina 55.

[19] Queja 179/66, Iparino Fernandez, Semanario Judicial de la Federacion, Sala Auxiliar, Septima Epoca, 33 Septima Parte, pagina 23.

### E.   Accounting for Collateral Sources of Plaintiff's Compensation.

It is my understanding that plaintiffs may attempt to recovery monetary compensation for damages already paid for by a collateral source—e.g. insurance proceeds.  Mexican law does not permit this type of double recovery.  It must be remembered that the principle governing the recovery of damages in Mexico is to put the victim in the same position he was in before the accident—a return to the "status quo."[20] Enrichment is not permitted.  *Id.*  Allowing an injured party to recover twice for the same injury would amount to enrichment and, therefore, violate the "status quo" principle.  Kozolchyk, p. 192-93 (". . . there is no collateral source rule under Mexican law.").  Therefore, if an injured individual has had his medical costs paid for by private insurance or by public insurance ("Seguro Social"), then he is not entitled to receive damages to pay for his medical costs.

### F. Measure of damages in "strict liability" actions

The rules to determine the measure of damages in strict liability actions are the same as those applicable to negligence-based actions (*see* Article 2093 of Puebla's Civil Code).

## V.   JURY QUESTIONS BASED ON MEXICAN LAW

In Mexico, these claims would be adjudicated by a judge as the trier of fact.  I understand, however, that in Texas a jury would instead be the trier of fact.  With this in mind, I have attempted to supply some questions, instructions and definitions that could be used to charge a Texas jury on Mexican law.

### A.   Negligence Question.

I reviewed the following definitions of "negligence" and "ordinary care" contained in the Texas Pattern Jury Charges:

> "Negligence" means the failure to use ordinary care, that is, failing to do
> that which a person of ordinary prudence would have done under the

---

[20] See Cienfuegos, op.cit., p. 54; see also Friedler, op. cit., p. 263.

> same or similar circumstances or doing that which a person of ordinary
> prudence would not have done under the same or similar circumstances.
>
> "Ordinary care" means that degree of care that would be used by a
> person of ordinary prudence under the same or similar circumstances.

Texas Pattern Jury Charges § 2.1. These concepts of "negligence" and "ordinary care"
are virtually identical to the concepts of negligence I described in Section III.B.2 of this
affidavit. Thus, the negligence and ordinary care definitions found in the Texas Pattern
Jury Charges could be used in a case in Texas that applies Mexican law.

I also reviewed the definition of "proximate cause" in the Texas Pattern Jury
Charges. This definition will have to be modified because Mexican law requires that
"[d]amages and losses be a *direct and immediate* consequence of the failure to comply
with the obligation, whether they have already occurred or will necessarily occur." *See*
Section III.B.3. of this affidavit (emphasis added).

In conclusion, a negligence question based on Mexican law would read as
follows:

> Was the negligence, if any, of those named below, a direct and
> immediate cause of the accident in question?

**B.      Inexcusable Negligence.**

As explained in Section III.B.6 of this affidavit, if a Plaintiff is found to have
been "inexcusably negligent" there is a complete bar to that Plaintiffs' claims. Whether
the Plaintiff is "inexcusably negligent" is a question for the trier of fact to decide.
Given the similarity between "inexcusable negligence" and "assumption of the risk," an
"inexcusable negligence" question based on Mexican law would read as follows:

> "Was the plaintiff's inexcusable negligence, if any, a direct and immediate cause
> of the accident in question?"
>
> "Inexcusable negligence" occurs when a person puts himself in a situation he
> knew or should have known was dangerous or risky.

## VI.    JURISDICTION

The Puebla courts would have jurisdiction ("competencia") over this case under article 121 of the Puebla Code of Civil Procedure. Article 121 of the Code of Civil Procedure of Puebla allows the parties to a dispute to subject themselves, either expressly or tacitly, to the jurisdiction of a judge from that state.

## VII.    DISCOVERY

There is no "discovery" in Mexico, as understood in the American legal system. Yet, most Codes of Civil Procedure of the Mexican States provide for "preliminary measures" (e.g. depositions, interrogatories) that can be ordered by the judge who is hearing the case, whenever a party lacks a document on which the claim is based because it is in possession of the future defendant or of a third party. Moreover, discovery in this case would be governed by two international instruments signed and ratified by Mexico: the Hague Convention on the taking of evidence abroad in civil or commercial matters (concluded March 18, 1970); and the Inter-American Convention on the taking of evidence abroad (ratified by Mexico on March 27, 1978).

Mexican courts, and specifically the courts of Puebla, can examine documents produced in a foreign country in the process of making their minds in order to decide a case. First of all, it is important to note that Mexico´s legal tradition allows judges broader powers to conduct the litigation process. That is why article 262 of the Code of Civil Procedure of Puebla states that the judge can order the examination of all evidence that he considers appropriate to know the facts under discussion.

Moreover, article 336 of Puebla's Code of Civil Procedure indicates that to give foreign "public documents" full-faith and credit in Mexico, they have be legalized in the way order by federal laws. Yet, this "legalization" requirement came to an end when

Mexico signed in 1995 the "Hague Convention that eliminates the requirement of legalization of foreign public documents (The Hague, October 5, 1961). Thanks to this Convention, to give full-faid and credit to "foreign public documents" in Mexico, what is required is to get an "Apostille"issued on the respective document.

The Apostille is a form of certification that certifies the authenticity of the signature, the capacity in which the person signing the document has acted and identifies the seal/stamp that the document bears.  Under the Hague Convention of 1961, each State may designate those authorities which may issue Apostilles for their jurisdiction. For example, in Texas, the Secretary of State of Texas may issue an Apostille on documents issued by persons on file with this agency, including county clerks, notaries public, statewide officials. Moreover, the competent authority in the USA for issuance of Apostilles on documents issued by the federal government are the clerks of the federal courts.  Finally, under the Hage Convention of 1961, the "public documents" that need an Apostille are: a. Those originating in a court, clerk of a court, public prosecutor or process server; b. Administrative documents; c. Notarial acts; d. official certificates placed on documents.

As for foreign private documents, the Code of Civil Procedure of Puebla foresees no specific rule. This leads us to the conclusion that foreign private documents are admissible as evidence in Durango's courts, and are subject to the rules of private documents: their authenticity can be objected to by the counter-party and there is a procedure to resolve that objection.

## VIII.  CONCLUSIONS

A.    American corporations can be sued in Mexican courts.

B.    The laws of the state where the accident occurred will govern the case under the *Lex Loci Delicti* rule and the territoriality principle.

C.    The Civil Code of Puebla (the state where the present accident occurred) provides two causes of action to individuals who claim injuries from an automobile accident that happened in Puebla. The first cause of action corresponds to the notion of "civil liability" found in article 1955 (fault/negligence based liability). The second cause of action relates to the concept of "strict liability" found in articles 2088 and 2090 (non-fault/negligence liability). The 2088 action, however, is available only against the "user" (i.e., the driver); the 2090 action would be available against the "owner" or the "original or derivative possessor" of the vehicle.

D.    Individuals who claim injuries from an automobile accident that happened in Mexico may also bring a claim under the Federal Consumer Protection law.

E.    The Civil Code of Puebla  allows plaintiffs to recover economic and moral damages.

F.    Puebla's courts permit judges to receive both foreign public documents and foreign private documents as evidence in a trial.

FURTHER AFFIANT SAYETH NOT.

JOSE M. SERNA DE LA GARZA

JUN 1 0 2004

Suscribed to before me, the undersigned authority, on this the____ day of June, 2004.

*Donna Michaels*
Notary Public

**Donna Michaels**
**Consul**

THE U.S EMBASSY ASSUMES NO RESPONSIBILITY FOR
THE TRUTH OR FALSITY OF THE REPRESENTATIONS
WHICH APPEAR IN THIS (OR, ANNEXED) DOCUMENT

PRESIDENTIAL COMMISSIONS ARE PERMANENT

Exhibit "A"

## CURRICULUM VITAE

Name: José María Serna de la Garza

Place and date of birth: Acapulco, State of Guerrero, México, March 27, 1965

Address: Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
   Del. Benito Juárez, México, D.F., C.P. 03920, MEXICO (Home)

   Instituto de Investigaciones Jurídicas (UNAM)
   Cto. Mtro. Mario de la Cueva, Cd. Universitaria,
   Coyoacán, México, D.F., C.P. 04510 MEXICO(Office)

Tel. (52-55) 56 98 16 47 (Home)
   (52-55) 56 22 74 68/69, ext. 413 (Office)

Fax. (52-55) 56 65 21 93

Email: josemar@servidor.unam.mx

Current professional activity: Full-time researcher at the *Instituto de Investigaciones Jurídicas* of the National University of México (UNAM).

## I.- Academic background:

a) BA in Law ("*Licenciatura en Derecho*"), School of Law of the UNAM (*Universidad Nacional Autónoma de México*), 1983-1988.

b) MA in Latin American Politics and Government, University of Essex (England), 1990-1991.

c) PhD in Government, University of Essex, 1991-1995.

## II.- Published works:

### a) Books:

- *Derecho Parlamentario*, within the collective work: "Panorama del Derecho Mexicano", McGraw-Hill, Serie Jurídica, UNAM, México, 1997.

- *La Reforma del Estado en América Latina: los casos de Brasil, Argentina y México*, UNAM, México, 1998.

- *El gobierno en América Latina: ¿presidencialismo o parlamentarismo?*, (coordinador) UNAM, México, 2000.

- *Federalismo y regionalismo, Memoria del VII Congreso Iberoamericano de Derecho Constitucional*, (compilador), UNAM, México, 2002.

- *Estado de Derecho y transición jurídica* (co-editor), UNAM, México, 2002.

**b) Articles:**

- "El Sistema Presidencial en la Evolución Política de México", *Revista Jurídica Jaliciense*, Año 1, Número 1, Sept-Dic, 1991.

- "El Servicio civil de carrera: un elemento de la posible reforma del Estado", *Revista de la Universidad Nacional Autónoma de México*, Julio-Agosto, 1995, Núms. 534-535.

- "Constitutional Federalism in Latin America", *California Western International Law Journal*, vol. 30, no. 2, spring, 2000.

- "Transiciones en América Latina: reflexiones sobre la reforma político-institucional en Brasil y Argentina", en González, Ma. del Refugio y López Ayllón, Sergio (eds.), *Transiciones y diseños institucionales*, UNAM, México, 2000.

- "Reflexiones en torno a las resoluciones del Tribunal Electoral del Poder Judicial de la Federación, relativas a los casos Tabasco y Yucatán", *Boletín Mexicano de Derecho Comparado*, año XXXIV, no. 100, enero-abril, 2001.

- "Federalismo y sistemas de distribución de competencias legislativas", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 12, abril de 2001.

- "Los aspectos constitucionales de una posible reforma del federalismo fiscal mexicano", en Valadés, Diego y Gutiérrez, Rodrigo (coords.), *Economía y Constitución, Memoria del IV Congreso Nacional de Derecho Constitucional*, tomo IV, UNAM, México, 2001.

- "Federalismo judicial: revisión crítica de los distintos argumentos del debate sobre el amparo casación en México", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 26, junio de 2002.

- "Federalismo y sistemas de distribución de competencias legislativas" en la obra colectiva editada por Serna, José María y Caballero, José Antonio, *Estado de Derecho y transición jurídica* (editor), UNAM, México, 2002.

- "Apuntes sobre el debate relativo al amparo casación en México", *Reforma Judicial, Revista Mexicana de Justicia*, no. 1, ene-junio, 2003.

- "Apuntes sobre las opciones de cambio en la metodología de la enseñanza del derecho en México, Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 35, abril de 2003.

## III.- Lectures:

a) Lecture on: <u>Current Developments in South America</u>, Cranfield Institute of Technology (England), October 23, 1992.

b) Lecture at the *Centro de Estudios Superiores Navales*. Title of the Lecture: <u>Proyecto Nacional: Determinación de Intereses, Objetivos y Políticas Nacionales</u>, México, March 23, 1995.

c) Lecture at the <u>Mexican Center</u> del *Institute of Latin American Studies,* University of Texas at Austin. Title of the lecture: "El Debate sobre la Reforma Institucional en México", October 3, 1995.

d) Lecture at the "Ier. Encuentro Internacional sobre Protección Jurídica de los Derechos Ciudadanos". Title of the lecture: <u>Legislación agraria y Derechos Ciudadanos</u>, La Habana, Cuba, November 9, 1995.

## IV.- Teaching Experience:

a) In charge of the following courses organized by the *Instituto de Investigaciones Jurídicas* of the UNAM: Constitutional theory, Comparative constitutional law, and comparative government.

b) Visiting professor at the Law School of the University of Texas at Austin. Courses: Introduction to Mexican Law and Latin American law (Survey), 1997-2001.

**V.- Academic awards:**

- C.B. Smith Scholarship, awarded by the *Mexican Center* of the *Institute of Latin American Studies*, University of Texas at Austin, September 23-October 4, 1995.

**VI.- Others:**

- Director of the legal review: *Boletín Mexicano de Derecho Comparado*, published by the Instituto de Investigaciones Jurídicas of the UNAM (since 2000).